United States District Court
Northern District of California

1

2

3

4                              UNITED STATES DISTRICT COURT

5                            NORTHERN DISTRICT OF CALIFORNIA

6

7    KAYODE POWELL,                              Case No.  14-cv-04248-MEJ

            Plaintiff,                           **ORDER GRANTING IN PART AND**
8                                                **DENYING IN PART MOTIONS TO**
        v.                                       **DISMISS**
9
     WELL FARGO HOME MORTGAGE, et                Re: Dkt. Nos. 8, 12
10   al.,

11          Defendants.

12

13                                  **INTRODUCTION**

14          Pro se Plaintiff Kayode Powell brings this case against Wells Fargo Bank, N.A. ("Wells

15   Fargo"), HSBC USA, N.A. ("HSBC"), and First American Trustee Servicing Solutions, LLC

16   ("First American") (collectively "Defendants"), challenging the foreclosure on real property

17   located at 4770-4776 Tompkins Avenue, Oakland, California 94619 (the "Property").  Compl.,

18   Dkt. Nos. 1-1 and 1-2.[1]  Pending before the Court is Wells Fargo and HSBC's Motion to Dismiss

19   pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  Dkt. No. 12 ("WF Mot.").

20   Plaintiff filed an Opposition (Dkt. No. 42),[2] and Wells Fargo and HSBC filed a Reply (Dkt. No.

21   45).  First American also filed a Motion to Dismiss under Rule 12(b)(6) (Dkt. No. 8, "FA Mot."),

22   to which Plaintiff filed an Opposition (Dkt. No. 41), and First American filed a Reply (Dkt. No.

23   _____

24   [1] Several copies of the Complaint were filed with the Notice of Removal.  At the hearing, the
     parties indicated that these were all copies of the same Complaint, and the Court has not identified
25   any differences between the various versions copies.  For purposes of this Order, the Court uses
     the first version available in the Notice of Removal, available at Dkt. Nos. 1-1 and 1-2.
26
     [2] Plaintiff filed his first Opposition at Dkt. No. 41 and then filed an Errata at Dkt. No. 42.  The
27   Errata appears to contain the same substance as his initial Opposition, with changes only to the
     formatting.  The Court asked the parties whether they had any objections to the Court's use of
28   Plaintiff's Errata in lieu of the original Opposition, and no objections were raised.  Accordingly,
     the Court refers to the Errata as Plaintiff's Opposition brief.

43).  The Court held a hearing on the matters on April 30, 2015.  Dkt. No. 50.  The Court subsequently ordered supplemental briefing related to Defendants' argument that judicial estoppel barred Plaintiff's claims.  Dkt. Nos. 53, 69.  Now having reviewed those responses and considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motions for the reasons stated below.

## BACKGROUND

Around October 17, 2005, Plaintiff obtained a loan from Wells Fargo in the amount of $473,400.00 (the "Loan").  Compl. ¶ 13.  The Loan was secured by a deed of trust ("Deed of Trust"), which was secured by the Property.  WF Req. for Judicial Notice, Ex. A, Dkt. No. 13 ("WF RJN"); FA Req. for Judicial Notice, Ex. A, Dkt. No. 9 ("FA RJN").[3]  Fidelity National Title Insurance Company was the original trustee, but First American was appointed the successor trustee under the Deed of Trust pursuant to a Substitution of Trustee recorded on January 6, 2009.  FA RJN, Ex. C.  Wells Fargo assigned the Deed of Trust to HSBC on January 9, 2009, which was recorded in the real estate records of Alameda County on January 14, 2009.  WF RJN, Ex. B; FA RJN, Ex. B.  Wells Fargo remained as the servicer of the Loan.  Compl. ¶¶ 36, 36.

On December 3, 2008, First American recorded a notice of default as Plaintiff was behind on his payments.  WF RJN, Ex. C; FA RJN, Ex. D.  This notice of default led to a foreclosure on March 25, 2010, but on the same day, Plaintiff filed for bankruptcy; consequently, First American rescinded the trustee's sale and trustee's deed on April 21, 2010.  *See* WF RJN, Ex. D (Notice of Recession) & Ex. J (Bankruptcy Docket).  First American recorded a second notice of default on December 1, 2010, indicating Plaintiff was in default as of February 1, 2008.  *Id.*, Ex. E.  Notices of sale were then recorded on March 2, 2011, July 2, 2012, and May 20, 2014.  *Id.*, Exs. F, G, H.

Plaintiff has filed five bankruptcy petitions: a Chapter 7 bankruptcy on June 5, 2008; a Chapter 7 bankruptcy on March 25, 2010; a Chapter 13 bankruptcy on May 23, 2011; a Chapter 13 bankruptcy on August 23, 2011; and a Chapter 13 bankruptcy on December 2, 2011.  *Id.*, Exs. I-M.  At the hearing, Plaintiff confirmed that all these bankruptcy filings were dismissed for

---

[3] The Court previously granted judicial notice to these documents.  *See* Dkt. No. 69 at 2-3.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   failure to file required information.  *See id.* (all); Dkt. No. 50.

2          More recently, First American issued a notice of trustee sale, which was recorded in the

3   Alameda County real estate records on May 20, 2014.  WF RJN, Ex. H.  On June 10, 2014, First

4   American sent Plaintiff a Notice of Postponement of Trustee's Sale, which was postponed until

5   September 8, 2014.  Dkt. No. 1-4 at 4.

6          Plaintiff filed this action in Alameda Superior Court around September 2, 2014, seeking

7   "equitable relief and damages precipitated by the events and acts of Defendants resulting in an

8   imminent threat of wrongful foreclosure."  Compl. ¶ 1.  Plaintiff brings 17 claims: (1) Negligence;

9   (2) Declaratory Relief; (3) Temporary Restraining Order and Preliminary Injunction; (4)

10  Intentional Infliction of Emotional Distress ("IIED"); (5) Breach of Good Faith and Fair Dealing;

11  (6) Quiet Title; (7) Accounting; (8) violation of California's Rosenthal Act; (9) Fraud; (10)

12  Specific Performance by Promissory or Equitable Estoppel; (11) Breach of Written and Oral

13  Contract; (12) Quia Timet; (13) Racketeering Influenced Corrupt Organizations Act; (14)

14  Rescission of Note and Deed of Trust and Restitution; (15) violation of California Civil Code

15  section 789.3; (16) violation of the Fair Credit Reporting Act; and (17) Discrimination.  Plaintiff

16  simultaneously filed an ex parte motion for a temporary restraining order ("TRO"), and on

17  September 3, 2014, the Superior Court held a hearing on Plaintiff's request.  Dkt. No. 1-1 at 2-22.

18  The Superior Court subsequently issued the TRO, enjoining various defendants, including Wells

19  Fargo, HSBC, and First American, from foreclosing on the Property.  Dkt. No. 1-4 at 16-20.[4]

20  Additionally, the court issued an order to show cause, requiring defendants to show cause as to

21  why they should not be enjoined from proceeding with the trustee's sale of the Property.  *Id.*

22         On September 19, 2014, Wells Fargo and HSBC removed the action to this Court.  Not. of

23  Removal, Dkt. No. 1.  Since then, the parties have attended several ADR mediation phone

24  conferences, but have been unable to resolve their disputes.

25         Wells Fargo and HSBC bring their Motion to Dismiss challenging Plaintiff's 17 claims on

26

27  _____

28  [4] Defendants provided briefing arguing that the Alameda Superior Court's TRO is no longer in
    effect since Defendants removed the case to federal court.  *See* Dkt. No. 54 (First American's
    response); Dkt. No. 60 (Wells Fargo and HSBC's response).

various grounds.  WF Mot. at 1.  In particular, they contend that judicial estoppel bars Plaintiff's

maintenance of this action because Plaintiff previously failed to disclose his claims against

Defendants in all five of his bankruptcy cases and as required in his bankruptcy schedule of assets.

*Id.*  Wells Fargo and HSBC argue Plaintiff benefitted from automatic stays granted with the filing

of his bankruptcy petitions, which postponed their foreclosure on the Property.  *Id.* at 3.  They

contend that because Plaintiff failed to disclose the claims he had against Defendants in his

bankruptcy petitions, the doctrine of judicial estoppel now prevents Plaintiff from asserting them

in this action.  *Id.* at 3-5.  First American did not challenge Plaintiff's claims on judicial estoppel

grounds, but rather argues there are other problems with Plaintiff's 17 claims.  *See generally* FA

Mot.  Nonetheless, Wells Fargo and HSBC's judicial estoppel arguments similarly apply to First

American as it was impacted by Plaintiff's bankruptcy proceedings.

        Following the hearing, the Court ordered supplemental briefing on the judicial estoppel

issue, requiring the parties to explain whether the bankruptcy court imposed a stay on Plaintiff's

creditors in his last bankruptcy proceeding, commenced on December 5, 2011, and if so, whether

it was an automatic stay or whether Plaintiff was required to demonstrate good cause or meet some

other prerequisite before the stay was entered.  *See* Dkt. No. 53.  First American timely responded

(Dkt. No. 55), as did Wells Fargo and HSBC (Dkt. No. 58).  They contend there was an automatic

stay, but Plaintiff disagrees, noting "[a]n automatic stay was NOT imposed on the creditors of

Plaintiff after his filing a bankruptcy case on December 2, 2011 . . . due to operation of law

relative to filing more than two within a twelve (12) month period."  Pl.'s Suppl. Resp. at 2, Dkt.

No. 68 (citing 11 U.S.C. § 362(c)(4)).  As the December 2011 filing was his "third filing within a

twelve month period, the automatic stay was not in place."  *Id.*  It is not clear from the bankruptcy

docket whether the court ordered the stay, but it does reveal that Plaintiff's creditors sought relief

from a stay in January 2012.  Dkt. No. 13-1 at 84.  Defendants submitted the bankruptcy court's

order granting creditors' request for relief from a stay.  *See* Dkt. No. 59-1.[5]

        On June 29, 2015, the Court issued an order deferring its ruling on Defendants' Motions

---

[5] The Court takes judicial notice of the bankruptcy court's order pursuant to Federal Rule of
Evidence 201(b).  First American submitted the same document at Dkt. No. 55, Ex. 1.

pending resolution of the judicial estoppel issue.  Dkt. No. 69.  Specifically, the Court ordered Plaintiff to file a declaration explaining why he failed to disclose claims against Defendants in his bankruptcy petitions.  *Id.* at 17.

Plaintiff filed his Declaration on July 14, 2015.  Dkt. No. 70.  He explains that he "did not understand the [bankruptcy] forms to be asking [him] to list as property anything related to a future recovery on a claim, notwithstanding I did not even realize that any existed."  *Id.* ¶ 3.  He states he "did not understand that there could be any potential damages or claims, or anything that could be considered an asset of [his], relating to the lock out(s), nor to the unmaterialized loan modification anticipated post [his and his wife's] compliance with the Trial Period Plan."  *Id.* ¶ 4.  Plaintiff "assumed that through direct negotiations with Wells Fargo, [he and his wife] would receive a loan modification, and not that [he] could potentially sue Wells Fargo."  *Id.* ¶ 5.  Plaintiff asserts his "failure to identify claims against Wells Fargo was due to my unintentional mistake and inadvertence in not realizing that my concerns with getting a loan modification and being locked out of my house were actually 'property' in the bankruptcy."  *Id.* ¶ 9.  Finally, Plaintiff states that in his latest bankruptcy case, the court never issued a ruling on his Motion to Impose a Stay, there was no stay in place, and that his creditors sought relief from the a stay as a "comfort order" to "safeguard against potentially violating the Bankruptcy Code or due to the Local Rules."  *Id.* ¶ 10.

## LEGAL STANDARD

Under Rule 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted.  A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of

United States District Court
Northern District of California

1    sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*,

2    534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v.*

3    *Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the

4    basis of a dispositive issue of law.").

5         Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only

6    required to make "a short and plain statement of the claim showing that the pleader is entitled to

7    relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of

8    a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

9    "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

10   dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652

11   F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply

12   recite the elements of a cause of action, but must contain sufficient allegations of underlying facts

13   to give fair notice and to enable the opposing party to defend itself effectively"). The court must

14   be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged."

15   *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief . . .

16   [is] a context-specific task that requires the reviewing court to draw on its judicial experience and

17   common sense." *Id.* at 679.

18        Moreover, allegations of fraud must meet the heightened pleading standard of Federal Rule

19   of Civil Procedure 9(b). *See Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th

20   Cir. 2011). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with

21   particularity the circumstances constituting fraud or mistake." An allegation of fraud must be

22   "specific enough to give defendants notice of the particular misconduct which is alleged to

23   constitute the fraud so that they can defend against the charge and not just deny that they have

24   done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) (citation omitted).

25   To satisfy Rule 9(b)'s heightened pleading standard, "[a]verments of fraud must be accompanied

26   by 'the who, what, when, where, and how' of the misconduct charged." *Yess v. Ciba -Geigy Corp.*

27   *USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation omitted)).

28        If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## DISCUSSION

As an initial matter, the Court notes that Plaintiff's Complaint suffers from a general lack of clarity. It is often unclear who he alleges committed what acts and this creates problems under Rule 8(a)(2) and Rule 9(b) as described above. Defendants have a right know which acts Plaintiff alleges they committed and what facts support Plaintiff's contentions. The following Order first finds that judicial estoppel does not bar Plaintiff's claims at this time; however, in the following sections, it dismisses Plaintiff's 17 claims on a variety of other grounds, frequently related to Plaintiff's failure to (1) articulate facts supporting the elements of his claims, and (2) show why he is not barred from maintaining some claims that appear untimely or otherwise legally untenable. As discussed below, the Court has granted Plaintiff leave to amend several of his claims, but if Plaintiff chooses to amend, he is admonished only to do so where he can in good faith support his claims and their elements with plausible factual allegations.

### A.   Judicial Estoppel

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). The doctrine is invoked "not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts." *Id.* (quotation omitted; alteration in original).

7

United States District Court
Northern District of California

1    The Supreme Court has articulated three factors that "typically inform the decision whether

2    to apply the doctrine[.]"  *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).  "First, a party's

3    later position must be clearly inconsistent with its earlier position."  *Id.* (quotation omitted).

4    "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept

5    that party's earlier position, so that judicial acceptance of an inconsistent position in a later

6    proceeding would create the perception that either the first or the second court was misled."  *Id.*

7    (quotation omitted).  "A third consideration is whether the party seeking to assert an inconsistent

8    position would derive an unfair advantage or impose an unfair detriment on the opposing party if

9    not estopped."  *Id.* at 751; *see also Hamilton*, 270 F.3d at 783 (adopting *New Hampshire* factors).

10    "In the bankruptcy context, the federal courts have developed a basic default rule: If a

11    plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and

12    obtains a discharge (or plan confirmation), judicial estoppel bars the action."  *Ah Quin v. Cnty. of*

13    *Kauai Dep't of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013).  "The reason is that the plaintiff-debtor

14    represented in the bankruptcy case that no claim existed, so he or she is estopped from

15    representing in the lawsuit that a claim *does* exist."  *Id.* (emphasis in original).  The Bankruptcy

16    Code subjects debtors to a continuing duty to disclose all pending and potential claims.  *See* 11

17    U.S.C. § 521(a)(1); *see also Hamilton*, 270 F.3d at 785 ("The Bankruptcy Code and Rules impose

18    upon the bankruptcy debtors an express, affirmative duty to disclose all assets, including

19    contingent and unliquidated claims." (citations omitted)).  "Judicial estoppel will be imposed

20    when the debtor has knowledge of enough facts to know that a potential cause of action exists

21    during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements

22    to identify the cause of action as a contingent asset."  *Id.* at 784.  The basic default rule thus

23    "comports fully with the policy reasons underlying the doctrine of judicial estoppel: to prevent

24    litigants from playing fast and loose with the courts and to protect the integrity of the judicial

25    system."  *Ah Quin*, 733 F.3d at 271 (quotation omitted).[6]

26    _____

27    [6] Courts have interpreted judicial estoppel to apply where a plaintiff had knowledge of a *potential* claim but failed to disclose it in his bankruptcy case.  *See, e.g.*, *Sharp v. Nationstar Mortg., LLC*,

28    2015 WL 106844, at *5 (N.D. Cal. Jan. 7, 2015) (finding claims estopped because "[d]espite being on notice of the existence of facts that purportedly support a cause of action against Defendants,

There is an exception to the rule, however, "when a party's prior position was based on inadvertence or mistake." *Id.* In *Ah Quin*, the plaintiff initiated an employment discrimination suit in the district court and soon after filed for bankruptcy but failed to list her discrimination suit as an asset in her bankruptcy schedules. *Id.* at 269. The plaintiff's attorney in the discrimination suit became aware of the bankruptcy discrepancy and informed the defendant in the discrimination case about the bankruptcy. *Id.* Plaintiff then reopened bankruptcy proceedings and corrected the bankruptcy schedules to include the previously omitted lawsuit. *Id.* When the defendant in the discrimination case moved to dismiss, the trial court granted the motion on judicial estoppel grounds. *Id.* at 271-72. The Ninth Circuit reversed, finding circumstances indicating the plaintiff's omission was inadvertent and remanding for further factual development. *Id.* at 277-78. In particular, the court noted that the plaintiff swore in an affidavit she did not disclose her pending lawsuit because the bankruptcy schedules were vague. *Id.* at 277. The Ninth Circuit explained courts must inquire "whether the plaintiff's bankruptcy filing was, in fact, inadvertent or mistaken, as those terms are commonly understood[,]" rather than applying a "presumption of deceit" as the district court had in that case. *Id.* at 276. "The relevant inquiry is . . . the plaintiff's subjective intent when filling out and signing the bankruptcy schedules." *Id.* at 276-77.

Previously, Plaintiff provided no evidence showing his failure to disclose claims against Defendants in his bankruptcy petitions was the result of inadvertence or mistake. And while generally such evidentiary analysis is rarely appropriate at such an early stage, recent Ninth Circuit guidance indicates some evidentiary consideration may be warranted in this situation. *See Dzakula v. McHugh*, 746 F.3d 399, 401 (9th Cir. 2014) (distinguishing *Ah Quin* on the ground that the *Dzakula* plaintiff "presented no evidence, by affidavit or otherwise, explaining her initial failure to include the action on her bankruptcy schedules"); *see also Zyla v. Am. Red Cross Blood*

---

none of Plaintiffs' four bankruptcy petitions . . . disclosed any claims against [defendants]"); *HPG Corp. v. Aurora Loan Servs., LLC*, 436 B.R. 569, 578 (E.D. Cal. 2010) ("plaintiffs have asserted inconsistent positions by failing to include a cause of action in their bankruptcy filings and subsequently attempting to sue on that claim outside of the bankruptcy proceeding."); *Swendsen v. Ocwen Loan Servicing, LLC*, 2014 WL 1155794, at *5 (E.D. Cal. Mar. 21, 2014) ("A party takes clearly inconsistent positions when he first declares to the bankruptcy court that he does not have potential claims and subsequently brings suit on those undisclosed claims."); *Rabidou v. Wachovia Corp.*, 2014 WL 7206700, at *3 (N.D. Cal. Dec. 18, 2014) (collecting cases).

1    *Servs.*, 2014 WL 3868235, at *8 (N.D. Cal. Aug. 6, 2014) ("although courts do not typically look

2    outside the pleadings to decide a motion to dismiss, the Court finds it necessary to consider

3    [plaintiff]'s declaration in deciding whether the inadvertent/mistake exception applies.").

4          At this stage in the case, the Court finds Plaintiff's Declaration provides an adequate

5    showing that his failure to disclose claims against Defendants in his bankruptcy petitions was the

6    result of mistake and inadvertence.  Accordingly, to the extent the bankruptcy court relied on

7    Plaintiff's representations indicating he did not have claims against Defendants,[7] the Court finds it

8    is plausible that Plaintiff's omission of his potential claims against Defendants was mistaken or

9    inadvertent.  This finding does not, however, preclude the parties from pursuing further factual

10   development for further adjudication as to whether judicial estoppel applies.  Nonetheless, at this

11   time, the Court finds Plaintiff has plausibly shown judicial estoppel does not bar his claims.

12         The Court now turns to Defendants' other arguments supporting their Motions to Dismiss.

13   **B.     Plaintiff's State Law Claims**

14         1.     Claims Barred Against First American by California's Litigation Privilege

15         Under California law, foreclosure documents are subject to a qualified privilege under

16   California Civil Code section 47, made applicable to nonjudicial foreclosures by California Civil

17   Code section 2924(d).  *See Gonzalez on Behalf of Estate of Perez v. JP Morgan Chase Bank, N.A.*,

18   2014 WL 5462550, at *7 (N.D. Cal. Oct. 28, 2014).  The privilege applies to communications

19   made without malice by a person who has an interest in the communications to another person

20   with an interest in the communications.  *Id.*  Malice requires that the publication was motivated by

21   hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable

22   grounds for belief in the truth of the publication.  *Id.* (citations omitted).  The section 47 privilege

23   now applies to all torts other than malicious prosecution.  *Id.*; *Edwards v. Centex Real Estate*

24   *Corp.*, 53 Cal. App. 4th 15, 29 (1997) (discussing section 47's expansion); *see also Kachlon v.*

25   *Markowitz*, 168 Cal. App. 4th 316, 339 (2008) ("Th[e] privilege is a natural fit for nonjudicial

26   foreclosure. The trustee's statutory duties in effectuating the foreclosure are designed, in major

27

28   [7] There is ongoing dispute about whether the Bankruptcy Court relied on Plaintiff's
     representations and whether it actually entered a stay in Plaintiff's lasted bankruptcy case.

United States District Court
Northern District of California

1    part, to communicate relevant information about the foreclosure to other interested persons.").

2    Moreover, California Civil Code section 2924(b), which deals with transfers and sales of deeds of

3    trust, states: "the trustee shall incur no liability for any good faith error resulting from reliance on

4    information provided in good faith by the beneficiary regarding the nature and the amount of the

5    default under the secured obligation, deed of trust, or mortgage."

6           Plaintiff's Complaint is often unclear, but his claims against First American generally

7    appear to relate to its conduct as the trustee under the Deed of Trust. *See* Compl. ¶ 37 (describing

8    Defendants' "prepar[ation] and . . . filing false and inaccurate documents including a Notice of

9    Default and Notice of Trustee's Sale").  Additionally, the Complaint does not allege that First

10   American acted with malice, and to the extent Plaintiff contends that malice can be assumed from

11   the "filing of false and inaccurate documents" allegation, courts have found that alleging "the

12   mere 'formulation of false documents' is inadequate to plead malice." *Ogilvie v. Select Portfolio*

13   *Servicing*, 2012 WL 3010986, at *4 (N.D. Cal. July 23, 2012).  Finally, to the degree the

14   Complaint alleges fraud or misrepresentation by First American, it does not allege those facts with

15   the necessary specificity.  *See, e.g.*, *Adams v. Wells Fargo Bank, N.A.*, 2015 WL 1434599, at *4

16   (N.D. Cal. Mar. 30, 2015); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state

17   with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and

18   other conditions of a person's mind may be alleged generally.").  Indeed, Plaintiff's Fraud claim

19   (Cause of Action 9) contains no reference to First American at all.  *See* Compl. ¶¶ 138-147.

20          In light of the foregoing and to the extent First American's conduct occurred in reliance on

21   the lender's information as provided under section 2924(b), First American is immune to

22   Plaintiff's state law claims arising from recording of the notice of default and related acts.[8]  *See,*

23   *e.g.*, *Owens v. Wells Fargo Bank, N.A.*, 2009 WL 3353313, at *3 (N.D. Cal. Oct. 16, 2009);

24   *Preciado v. Wells Fargo Home Mortg.*, 2013 WL 1899929, at *7 (N.D. Cal. May 7, 2013).

25   _____

26   [8] However, this is a state law privilege and therefore does not apply to federal claims.  *Perez v.*
     *Wells Fargo Bank, N.A.*, 2011 WL 3809808, at *12-13 (N.D. Cal. Aug. 29, 2011); *see also Pardi*
27   *v. Kaiser Found. Hosp.*, 389 F.3d 840, 851 (9th Cir. 2004) (California's litigation privilege did not
     bar retaliation claim under Americans with Disabilities Act); *OEI v. N Star Capital Acquisitions,*
28   *LLC*, 486 F. Supp. 2d 1089, 1101 (C.D. Cal. 2006) (California's litigation privilege did not grant
     immunity in connection with Fair Debt Collection Practices Act claim).

United States District Court
Northern District of California

Accordingly, the Court must dismiss certain of Plaintiff's state law claims against First American, which, as currently pled, appear to relate to First American's statutory duties in effectuating the foreclosure: Cause of Action 1 (claim for negligence); Cause of Action 4 (infliction of emotional distress based on threat of wrongful foreclosure); and Cause of Action 9 (claim for fraud and deceit).  Additionally, as Plaintiff's claim for declaratory relief under California Civil Procedure Code section 1060 (Cause of Action 2) appears to only be related to First American because of its preparation and recording of the Notice of Default, the Court finds the privilege also bars this claim.  *See, e.g.*, *Natividad v. Wells Fargo Bank, N.A.*, 2013 WL 2299601, at *17 (N.D. Cal. May 24, 2013) (dismissing declaratory relief claim where the allegations against the trustee related to claims failing under California's litigation privilege).  As these claims against First American are not necessarily futile, the Court DISMISSES them WITH LEAVE TO AMEND.

> 2.    State Law Claims Barred by the Statute of Limitations

Wells Fargo and HSBC argue that a number of Plaintiff's state law claims are barred by statutes of limitations.  The Court agrees.

Statute of limitations arguments are affirmative defenses that are often inappropriate to resolve at the pleading stage.  *Graybill v. Wells Fargo Bank, N.A.*, 2013 WL 978245, at *19 (N.D. Cal. Mar. 12, 2013).  Nonetheless, "[a] defendant is permitted to raise a statute of limitations argument in a 12(b)(6) motion provided the basis for the argument appears on the face of the complaint and any materials the court is permitted to take judicial notice of."  *Hernandez v. Sutter W. Capital*, 2010 WL 3385046, at *2 (N.D. Cal. Aug. 26, 2010) (granting motion to dismiss on statute of limitations grounds based on judicially-noticed dates).

"Under California law, there is a two-year statute of limitations for intentional infliction of emotional distress claims."  *Bassam v. Bank of Am.*, 2015 WL 4127745, at *8 (C.D. Cal. July 8, 2015) (quoting *Soliman v. CVS RX Servs., Inc.*, 570 F. App'x 710, 712 (9th Cir. Apr. 21, 2014), and citing Cal. Civ. Proc. Code § 335.1)).  The statute of limitations for fraud is three years.  *See* Cal. Code Civ. P. § 338(d).  A promissory estoppel or breach of contract claim premised on an

1   oral agreement, such as the one here,[9] is subject to a two year statute of limitations.  *See Peterson*

2   *v. Wells Fargo Bank, N.A.*, 2014 WL 3418870, at *6 (N.D. Cal. July 11, 2014) (citing Cal. Civ.

3   Proc. Code § 339(1)); *McMillan v. Bank of Am., N.A.*, 2015 WL 1942743, at *8 (S.D. Cal. Apr.

4   15, 2015) (recognizing that contract and promissory estoppel claims are generally subject to a four

5   year limitations period, unless premised on an oral agreement, making the claim subject to a two

6   year limitations period).  Finally, an action where liability is created by statute, other than a

7   penalty or forfeiture, has a three year statute of limitation, but a statute imposing a penalty or

8   forfeiture has a one year statute of limitations.  Cal. Civ. Proc. Code §§ 338(a), 340(a).

9        Plaintiff argues that, under the "continuing wrong" doctrine, the statutes of limitations do

10   not bar his IIED, Fraud, Promissory Estoppel/Breach of Contract, and "Lock-Out" claims.  *See*

11   Compl., Causes of Action 4, 9-11, & 15).  Plaintiff is correct that where "the purportedly tortious

12   acts committed by defendants have been ongoing . . . , the 'continuing wrong' doctrine applies to

13   determination of the limitations period."  *Bassam*, 2015 WL 4127745, at *9.  Thus, where the

14   allegedly tortious conduct is not a discrete incident, but rather "a continuing wrong," courts

15   generally hold that "the statute of limitations does not begin to run until the date of the last injury

16   or when the tortious acts cease."  *Blankenchip v. Citimortgage, Inc.*, 2014 WL 6835688, *7 (E.D.

17   Cal. Dec. 3, 2014) (quoting *Pugliese v. Superior Ct.*, 146 Cal. App. 4th 1444, 1452 (2007)).  But

18   the continuing wrong doctrine does not apply here.

19        First, Plaintiff has not alleged facts demonstrating a continuing wrong.  Second, the fact

20   that he purportedly continues to experience damage as a result of the alleged wrongdoing

21   underlying these claims does not save them from the applicable statutes of limitations.  "[A] cause

22   of action accrues and the statute of limitation begins to run when a suit may be maintained."

23   *Howard Jarvis Taxpayers Ass'n v. City of La Habra*, 25 Cal. 4th 809, 815 (2001), *as modified*

---

[9] According to the Complaint, "plaintiff states a cause of action for specific performance by equitable or promissory estoppel based on the promise of a novated contract for reduced monthly payments and that no foreclosure will be imposed based on such promises" as alleged in the Fraud cause of action.  Compl. ¶ 148.  Plaintiff's breach of contract claim states "lender or their agents and assignees promised to discount the monthly payments as alleged, ante, if the borrow would stop making payments for 90 days.  When plaintiff complied[,] the beneficial promise to reduce payments was materially breached and refused."  *Id.* ¶ 151.

United States District Court
Northern District of California

(July 18, 2001).  "Ordinarily this is when the wrongful act is done and the obligation or the liability arises[.]"  *Id.*; *see, e.g.*, *Cha v. Kaiser Permanente*, 2015 WL 3758287, *10 (N.D. Cal. May 6, 2015) ("The statute of limitations for IIED . . . claims 'begins to run when the plaintiff suffers severe emotional distress as a result of the outrageous conduct by the defendant.'" (quotation omitted)); *see also Vaca v. Wachovia Mortg. Corp.*, 198 Cal. App. 4th 737, 745 (2011) (rejecting "continuing wrong" argument to toll plaintiff's fraud claim where "[a]t most, these allegations may show plaintiff still suffers from the fraudulent loans made in 2000 and 2001.").

Plaintiff's IIED, Fraud, Promissory Estoppel, and Breach of Contract claims are all based on events that occurred in 2008.  Specifically, Plaintiff's Fraud claim is based on purported misrepresentations made by Wells Fargo in October 2007 related to modifying his loan payments, which, according to his Complaint, Plaintiff would have discovered to be fraudulent by at least January 2008, when he alleges he discovered that Wells Fargo did not modify his mortgage payments.  By waiting to file his Complaint more than three years from that discovery, Plaintiff's Fraud claim is barred as untimely.  *Graybill*, 2013 WL 978245, at *19 ("[t]o the extent that the claim is based on bad advice, and pled only as a fraud claim," plaintiffs' claim was time-barred because they "allege[d] that they knew the advice was bad in April 2009 and filed their lawsuit more than three years later on July 20, 2012.").  Likewise Plaintiff's Causes of Action 10 and 11 are both related to the alleged oral agreement modifying Plaintiff's loan,[10] and Wells Fargo's alleged breach of that agreement and the subsequent damages to Plaintiff in January 2008—or at the latest in December 2008 when foreclosure proceedings commenced.[11]  Plaintiff's IIED claim arose at the same time, when Plaintiff alleges he began to experience emotional distress.  Thus, taking Plaintiff's allegations as true, the wrongful acts under these claims occurred by at least

---

[10] Plaintiff does not allege any facts explaining how First American is liable for promissory estoppel or breach of contract.  Perhaps Plaintiff did not intend to include First American in these claims, which he alleges generally against all Defendants.  But as these claims allege no facts against First American, they are DISMISSED WITH LEAVE TO AMEND, but only if Plaintiff can allege facts supporting such claims against First American.

[11] The state court's grant of Plaintiff's motion for a TRO does not impact this analysis as it does not represent a final judgment on the merits.  *See Adam Bros. Farming v. Cty. of Santa Barbara*, 604 F.3d 1142, 1148-49 (9th Cir. 2010); Cal. Civ. Proc. Code § 527(a).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    December 2008, when it became clear Defendants would foreclose rather than modify the loan as

2    allegedly promised.  Plaintiff could have sued then, and arguably earlier in January 2008.

3            Plaintiff's Fifteenth Cause of Action for "Lock Out" in violation of California Civil Code

4    section 789.3 is based on events that occurred "[o]n or about December 30, 2008 to and including

5    February 10, 2009" and "from between April 1, 2010, and April 27, 2010[.]"  Compl. ¶ 168.

6    Although Plaintiff is not specific about what happened during that time, it appears he alleges his

7    occupancy rights were terminated, although it is not clear by whom.  Plaintiff also alleges

8    "defendant" continued to maintain a lockbox on his property until September 13, 2011.  *Id.* ¶ 170.

9    To the extent Plaintiff seeks penalties under California Civil Code section 789.3, his claims are

10   time-barred as they were filed more than one year after the alleged violations occurred.  Cal. Civ.

11   Proc. Code § 340(a).  Likewise, as the only time it appears Plaintiff alleges he was actually locked

12   out of his home was prior to April 27, 2010, Plaintiff's general claim for damages under section

13   789.3 also appears to be time-barred.  *See id.* § 338(a) (proscribing a three year limitations period).

14           As Plaintiff filed his Complaint in this matter in September 2014, and there is no indication

15   that equitable tolling or some other legal tool suspends the running of the statutes of limitations,

16   the Court finds Plaintiff's IIED, Fraud, Promissory Estoppel, Breach of Contract, and Lock-Out

17   claims barred by the statutes of limitations.  However, Plaintiff may amend his Complaint if he

18   can in good faith allege how these claims are timely.  *Cf. Deutsch v. Turner Corp.*, 324 F.3d 692,

19   718 (9th Cir. 2003) (holding that amendment is futile if the statute of limitations has run).

20           3.      Preliminary Injunction/TRO Claim

21           Plaintiff's Third Cause of Action for preliminary injunction/TRO under California Civil

22   Procedure Code sections 526-529 cannot survive as an independent cause of action.  "Injunctive

23   relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before

24   injunctive relief may be granted."  *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F.

25   Supp. 2d 928, 964 (N.D. Cal. 2012) (quoting *Camp v. Bd. of Supervisors*, 123 Cal. App. 3d 334,

26   356 (1981)).  This does not bar Plaintiff from seeking such remedies, but he cannot maintain them

27   as a separate claim.  Accordingly, Plaintiff's Third Cause of Action for injunctive relief is

28   DISMISSED WITHOUT LEAVE TO AMEND.  *See Owens*, 2009 WL 3353313, at *5 ("Because

a request for injunctive relief by itself does not state a cause of action, this claim is dismissed for failure to state a claim upon which relief may be granted.").

### 4.   Negligence Claim Against Wells Fargo and HSBC

Wells Fargo and HSBC contend Plaintiff's negligence claim fails because he has not plausibly asserted that they owed him a duty or that they breached that duty.  To prove negligence, Plaintiff must show "(1) a legal duty to use reasonable care; (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury."  *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998) (citation omitted).  "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide."  *Vasquez v. Residential Invs., Inc.*, 118 Cal. App. 4th 269, 278 (2004) (citation omitted).

"[A]s a general rule, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."  *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 63 (2013) (citing *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095-96 (1991)). In California, the test for whether a financial institution exceeded its role as money lender and thus owes a duty of care to a borrower requires "balancing [] various factors," including (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm.  *Nymark*, 231 Cal. App. 3d at 1098.

It is unclear from the allegations in Plaintiff's Complaint why Wells Fargo or HSBC owed him a duty of care or how they then breached that duty.  From Plaintiff's Opposition and other portions of his Complaint it appears he may intend to allege that Wells Fargo was negligent in connection with Plaintiff's loan modification.  *See Bowman v. Wells Fargo Home Mortg.*, 2014 WL 1921829, at *6-7 (N.D. Cal. May 13, 2014) (finding defendant lender owed plaintiff a duty of care in processing her loan modification application as those actions went beyond that of a "conventional" lender); *Gilmore v. Wells Fargo Bank N.A.*, 2014 WL 7183796, at *9 (N.D. Cal. Dec. 16, 2014) (same); *Cruz v. Aurora Loan Servs. LLC*, 2015 WL 2089963, at *8 (N.D. Cal. May

16

United States District Court
Northern District of California

5, 2015) (same); *see Lueras*, 221 Cal. App. 4th at 68 (defendants "did not have a common law duty of care to offer, consider, or approve a loan modification, or to offer [plaintiff] alternatives to foreclosure," nor "a duty of care to handle [plaintiff]'s loan 'in such a way to prevent foreclosure and forfeiture of his property;'" however, "a lender does owe a duty to a borrower to not make material misrepresentations about the status of an application for a loan modification."). But the current Complaint is unclear and contains conclusory allegations without explaining how Defendants breached their alleged duty to Plaintiff. *See Twombly*, 550 U.S. at 555 (although a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his 'entitle[ment] to relief' requires more than labels and conclusions.").

Otherwise, it appears that Plaintiff only alleges that Wells Fargo and HSBC had a "duty to exercise reasonable care and skill to maintain proper and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of the loan records, including, but not limited to, accurate crediting of payments made by Plaintiff[]." Compl. ¶ 36 (emphasis omitted). He further alleges "Defendant[s] breached their duty of care and skill to Plaintiff[] in the servicing of Plaintiff[']s loan by, among other things, failing to properly and accurately credit payments made by Plaintiff[] toward the loan[.]" *Id.* ¶ 37 (emphases omitted).[12] However, this appears insufficient to state a negligence claim. *See Rockridge Tr. v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1162 (N.D. Cal. 2013) ("Wells Fargo and Bank of America did not owe Plaintiffs a duty of reasonable care in servicing the loan or in acting as a lender within the scope of its conventional role." (citation omitted)); *Macris v. Bank of Am., N.A.*, 2012 WL 273120, at *12 (E.D. Cal. Jan. 30, 2012) (rejecting negligence claims alleging lender "fail[ed] to properly and accurately credit payments made by Plaintiffs toward the loan, prepar[ed] and fil[ed] false documents, and foreclose[ed] on the Subject Property without having the legal authority and/or proper documentation."). Given the current allegations, the Court cannot find that Plaintiff presently alleges a claim for negligence against Wells Fargo or HSBC. Accordingly, this claim is

---

[12] Plaintiff also alleges negligence per se, asserting Defendants violated the requirements of California Civil Code sections 2923-2934. He does not explain specifically how Wells Fargo or HSBC violated those statutory provisions.

1   DISMISSED WITH LEAVE TO AMEND to the extent Plaintiff can plausibly allege facts

2   supporting the elements of a negligence claim.

3           5.      Declaratory Judgment, Quiet Title, and Quia Timet Claims Against Wells Fargo
                    and HSBC
4

5           Wells Fargo and HSBC challenge Plaintiff's Declaratory Judgment, Quiet Title, and Quia

6   Timet claims (respectively, Causes of Action 2, 6, 12) as barred under California's nonjudicial

7   foreclosure statutory framework, noting this framework does not "provide for a judicial action to

8   determine whether the person initiating the foreclosure process is indeed authorized."  WF Mot. at

9   6 (citing *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1155 (2011)).

10          First, to the extent Plaintiff's Declaratory Judgment claim seeks to determine Defendants'

11  authority to foreclose, such an action is untenable.  *See Cho v. Citibank, N.A.*, 2012 WL 3076537,

12  at *4 (S.D. Cal. July 30, 2012) ("The borrower of a promissory note may not bring an action to

13  determine whether the owner of the note had authority to conduct a nonjudicial foreclosure.")

14  (citing *Gomes*, 192 Cal. App. 4th at 1154)); *Cunningham v. RBC Mortg. Co.*, 2012 WL 1067550,

15  at *6 (E.D. Cal. Mar. 28, 2012) ("Under California law, a plaintiff has no right to bring suit to

16  determine whether an entity initiating foreclosure is authorized to do so." (quotation and internal

17  marks omitted)); *Vieira v. Prospect Mortg., LLC*, 2012 WL 3329652, at *4 (C.D. Cal. Apr. 9,

18  2012) (declaratory judgment claim failed "because, as a general rule, plaintiffs may not bring

19  actions for proof of a defendant's authority to foreclose." (citing *Gomes*, 192 Cal. App. 4th at

20  1152-55); *see also Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 513 (2013)

21  ("The recognition of the right to bring a lawsuit to determine a nominee's authorization to proceed

22  with foreclosure on behalf of the note holder would fundamentally undermine the nonjudicial

23  nature of the process and introduce the possibility of lawsuits filed solely for the purpose of

24  delaying valid foreclosures." (citing *Gomes*, 192 Cal. App. 4th at 1155)).

25          Second, while Plaintiff cites *Glaski v. Bank of America, National Association*, 218 Cal.

26  App. 4th 1079, 1095 (2013), seemingly arguing he should be able to challenge an assignment of

27  his Note and Deed of Trust if there was a defect *voiding* the assignment, *see* Opp'n at 13-14, there

28  are two problems with this.  First, Plaintiff's Complaint does not allege plausible facts explaining

18

how or why the ownership of the Note or Deed of Trust "may have been abrogated, voided, cancelled, hypothecated, transferred or assigned or vitiated[.]"  Compl. ¶ 48.  Second, even if Plaintiff could allege facts challenging the assignment or transfer of his Note, he has not established he has standing to do so.  *See Jenkins*, 216 Cal. App. 4th at 512-15 (agreeing with *Gomes* that there is no statutory authority permitting a preemptive action requiring the foreclosing entity to demonstrate its authority to foreclose, and noting that even if such a preemptive suit existed, "[a]s an unrelated third party" to any "subsequent transfers of the beneficial interest under the promissory note, [plaintiff] lacks standing to enforce any agreements . . . relating to such transactions."); *see also In re Turner*, 2015 WL 3485876, at *8-10 (B.A.P. 9th Cir. June 2, 2015) (rejecting *Glaski* and adopting *Jenkins* to hold plaintiffs lacked standing to challenge assignments of their note and deed of trust based on an alleged violation of a pooling and servicing agreement). Accordingly, the Court DISMISSES Plaintiff's Declaratory Judgment claim but GRANTS him LEAVE TO AMEND if he can show he has standing to pursue this claim and that it does not merely seek to determine Defendants' authority to foreclose.

Plaintiff's Quiet Title claim appears similar to his Declaratory Judgment claim in many respects, but is equally untenable.  Under California law, "a requirement of an action to quiet title is an allegation that plaintiffs 'are the rightful owners of the property, i.e., that they have satisfied their obligations under the deed of trust.'"  *Preciado*, 2013 WL 1899929, at *5 (quotation omitted)).  However, "under California law, a borrower may not assert 'quiet title' against a mortgagee without first paying the outstanding debt on the property."  *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010) (citing *Miller v. Provost*, 26 Cal. App. 4th 1703, 1707 (1994) ("a mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee" (citation omitted)).  As Plaintiff fails to allege he paid the debt owed to his lender, his quiet title claim is inadequately pled.  *Petrovich v. Ocwen Loan Servicing, LLC*, 2015 WL 3561821, at *5 (N.D. Cal. June 8, 2015) (same).

Finally, for cases involving mortgage foreclosure issues, "Quia timet" claims, i.e., claims relating to the "right to be protected against anticipated future injury that cannot be prevented by the present action," *Robinson v. United States*, 586 F.3d 683, 687 n.2 (9th Cir. 2009) (quotation

omitted), have been displaced by statute.  *See Escrow Agents' Fid. Corp. v. Superior Ct.*, 4 Cal.

App. 4th 491, 495 (1992) (noting Quia Timet "has for the most part been forsaken in favor of

statutory remedies.").  As the California Court of Appeal explained, following the enactment of

related statutory provisions, "[a] party who wants to enjoin a foreclosure sale, prevent a nuisance,

or otherwise assert a right to real property (the traditional uses for quia timet), would seek

injunctive relief and make effective use of the lis pendens statutes[.]"  *Id.*  Although the court held

Quia Timet still survived as a claim related to the fidelity and surety bond industry, statutory

provisions otherwise displaced Quia Timet's use related to real property rights.  *Id.*  Plaintiff has

cited no authority to the contrary, and to the Court's knowledge, no California courts have

permitted a Quia Timet action related to foreclosure and mortgage modification claims.

     The Court thus DISMISSES Plaintiff's Declaratory Judgment and Quiet Title claims, but

GRANTS him LEAVE TO AMEND if he is able to address the concerns above; however, his

Quia Timet claim, being displaced by statute, is DISMISSED WITHOUT LEAVE TO AMEND.

     6.    <u>Breach of Good Faith and Fair Dealing Claim Against Wells Fargo</u>

     The covenant of good faith and fair dealing is implied in every contract and prevents one

party from "unfairly frustrating the other party's right to receive the benefits" of the contract.  *See*

*Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (2000).  To allege a claim for breach of the covenant

of good faith and fair dealing, a plaintiff must allege the following elements: (1) the plaintiff and

the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that

the contract require him to do or that he was excused from having to do; (3) all conditions required

for the defendant's performance had occurred; (4) the defendant unfairly interfered with the

plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the

plaintiff.  *Cruz*, 2015 WL 2089963, at *7 (N.D. Cal. May 5, 2015) (citing Judicial Counsel of

California Civil Jury Instructions § 325 (2011); *Oculus Innovative Sciences, Inc. v. Nofil Corp.*,

2007 WL 2600746, at *4 (N.D. Cal. Sept. 10, 2007)).  Wells Fargo and HSBC argue the

allegations for this claim are "devoid of any specifics and not plausible."  WF Mot. at 9.

     Like much of Plaintiff's Complaint, his allegations for his good faith and fair dealing claim

(Cause of Action 5) are difficult to understand.  Plaintiff, however, clearly states that "Defendants

United States District Court
Northern District of California

20

breached the loan terms and Note b[y] failing to keep accurate records of all income received, credited, charges and payment histories breaching the contract [and] thereby damaging plaintiff[.]" Compl. ¶ 86.  Elsewhere he writes "such wrong and dishonest entries breached the contract as they purported to show plaintiff in arrears, late, tardy, and in default, which was not the case. This was used to show a false history of late payments and caused a default on the note." *Id.* ¶ 84 (emphasis omitted).  Taking these allegations as true, Wells Fargo's actions appear to deprive Plaintiff of "the benefit of [his] agreement—namely to have [his] monthly payments applied correctly[.]" *McMillan*, 2015 WL 1942743, at *7 (finding lender's actions deprived plaintiffs of the benefit of their agreement).  Nonetheless, as Wells Fargo and HSBC point out, Plaintiff's claim lacks specifics about which payments were wrongly applied and when these alleged acts occurred. Plaintiff also often writes in the passive voice so it is unclear who acted on any given claim, e.g., stating "[e]xcess charges were applied wrongfully" (Compl. ¶ 84), rather than "Defendant __ applied charges wrongfully by __."  Without a clear articulation of his claim, the Court cannot find Plaintiff's claim plausible.  As such, the Court DISMISSES this claim with LEAVE TO AMEND.

### 7.   Accounting Claim Against Wells Fargo

"A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting." *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009) (citation omitted).  Here, "[a] lender-borrower relationship is not a unique relationship that would support a demand for an accounting even absent a fiduciary relationship." *Id.* (citing *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 910 (2013)).  Similarly, "a balance due for mortgage payments made from a plaintiff to a defendant does not constitute the type of balance that can only be ascertained by an accounting." *In re Residential Capital, LLC*, 518 B.R. 720, 736-37 (Bankr. S.D.N.Y. 2014) (citing *McLaughlin v. Wells Fargo Bank, N.A.*, 2013 WL 1164432, at *9 (C.D. Cal. Mar. 19, 2013)).  Indeed, "the purpose of such a claim is to discover[] what 'balance is due the plaintiff,' not what money is owed to the defendant." *Rodrigues v. F.D.I.C.*, 2012 WL 1945497, at *5 (N.D. Cal. May 30, 2012) (citation omitted); *see also Ricon v. Recontrust Co.*, 2009 WL 2407396, at *7 (S.D. Cal. Aug. 4, 2009) (noting "while Plaintiff

allegedly owes Defendants an amount past due on the underlying mortgage, Defendants do not allegedly owe Plaintiff any money" and "[t]his failure to plead 'some balance is due the plaintiff' is fatal to Plaintiff's claim"); *Hafiz v. Aurora Loan Servs.*, 2009 WL 2029800, at *2 (N.D. Cal. July 14, 2009) ("Plaintiff does not cite any authority for the proposition that she can maintain a claim for an accounting to determine how much money she owes defendant").

As Plaintiff alleged no facts nor provided any authority for why he would be entitled to maintain a claim for accounting, Plaintiff fails to state a claim on which relief can be granted. Accordingly, the Court DISMISSES this claim (Cause of Action 7) WITH LEAVE TO AMEND.

8.    <u>Rosenthal Act Claim Against Wells Fargo and HSBC</u>

The Rosenthal Act, also known as California's Fair Debt Collection Practices Act, is intended "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." Cal Civ. Code § 1788.1.[13]   Numerous courts, however, have held that "the mere allegation that a defendant foreclosed on a deed of trust does not implicate the Rosenthal Act—provided the lender's conduct falls within the scope of an ordinary foreclosure proceeding." *Petrovich*, 2015 WL 3561821, at *7 (citing *Reyes v. Wells Fargo Bank, N.A.*, 2011 WL 30759 at *19 (N.D. Cal. Jan. 3, 2011) (collecting cases)).   That said, "[w]here the claim arises out of debt collection activities beyond the scope of the ordinary foreclosure process, . . . a remedy may be available under the Rosenthal Act." *Reyes*, 2011 WL 30759, at *19 (quotation omitted)).

Plaintiff's allegations for this claim are sparse. *See* Compl. ¶¶ 125-28.  He alleges Wells Fargo is a "debt collector" under the Rosenthal Act, but otherwise only states that "provisions of the act were violated" without further explanation. *Id.* ¶¶ 126-27 (emphasis omitted).  To the extent he merely alleges Defendants foreclosed on the Deed of Trust, as noted, these allegations do not support a Rosenthal Act claim.  But if Plaintiff bases this claim on debt collection activities

---

[13] In addition to providing its own standards governing debt-collection practices, the Rosenthal Act also provides that, with limited exceptions, "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of" the Federal Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§ 1692b-1692j. *See* Cal. Civ. Code § 1788.17.  Plaintiff does not appear to base his Rosenthal Act claim on FDCPA violations.

United States District Court
Northern District of California

1   going beyond the ordinary foreclosure process, which he seems to allege elsewhere, he may have a

2   Rosenthal Act claim. *See Reyes*, 2011 WL 30759, at *19 (finding an offer letter's allegedly

3   deceptive statements related to a forbearance agreement sufficient to state a Rosenthal Act claim).

4   In any event, Wells Fargo and HSBC are correct that if Plaintiff intends to assert a Rosenthal Act

5   claim that sounds in fraud, he must comply with Rule 9(b)'s heightened pleading standards.  As

6   Plaintiff's allegations are vague, the Court DISMISSES this claim WITH LEAVE TO AMEND.

7   **C.      Federal Claims**

8           1.      Racketeering Influenced Corrupt Organizations Act Claim Against All Defendants

9           Plaintiff's Thirteenth Cause of Action alleges a claim against all Defendants for violations

10  of the Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.

11  Plaintiff's factual allegations for this claim are sparse.  *See* Compl. ¶¶ 159-63.

12          "A violation of 18 U.S.C. § 1962(a) requires proof of the following elements (1) a person

13  receives income derived directly or indirectly from a pattern of racketeering activity; (2) that

14  person uses or invests, directly or indirectly, any part or proceeds of such income in the

15  acquisition of any interest in, or the establishment or operation of any enterprise; and (3) that

16  enterprise is engaged in or its activities affect interstate or foreign commerce." *United States v.*

17  *Robertson*, 15 F.3d 862, 868 (9th Cir. 1994), *rev'd on other grounds*, 514 U.S. 669 (1995).  A

18  plaintiff asserting a section 1962(a) violation must allege facts showing he was injured by the use

19  of racketeering income. *Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 437

20  (9th Cir. 1992).  This "investment injury" must be "separate and distinct from the injury flowing

21  from the predicate act. . . ." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th

22  Cir. 2008). "Reinvestment of proceeds from alleged racketeering activity back into the enterprise

23  to continue its racketeering activity is insufficient to show proximate causation." *Id.*  Also,

24  "applying Rule 9(b)'s particularity requirements to RICO claims, courts have required Plaintiffs to

25  plead the 'time, place and nature' of the claims, including the existence of the enterprise and the

26  underlying racketeering activity." *Rasmussen v. Dublin Rarities*, 2015 WL 1133189, at *13 (N.D.

27  Cal. Feb. 27, 2015) (citation omitted).

28          A claim under § 1962(b) requires allegations supporting the following elements: (1)

United States District Court
Northern District of California

23

1   acquisition or maintenance of (2) an interest in or control of (3) any enterprise (3) through a

2   pattern (4) of racketeering activity. *Guerrero v. Gates*, 110 F. Supp. 2d 1287, 1292 (C.D. Cal.

3   2000).  Likewise, a claim under § 1962(c) must allege: "(1) conduct (2) of an enterprise (3)

4   through a pattern (4) of racketeering activity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th

5   Cir. 2007) (en banc).  The "enterprise" is the actor and the "pattern of racketeering activity" is an

6   activity in which that actor engages. *Id.* at 549 (citation omitted).

7            To support his RICO claim, Plaintiff's Complaint states only that "Plaintiff has sufficiently

8   alleged a false debt [one not owed, due or overinflated] was being collected, that at least two

9   efforts and attempts were made to falsely collect, that the evidence shows intent to defraud and

10  cheat plaintiff in a scheme to fabricate the truth of the error then add additional false charges to the

11  loan, then and now, never due."  Compl. ¶ 162.  This is insufficient to meet Rule 9(b)'s heightened

12  pleading standard, and even without that heightened standard, Plaintiff has failed to present facts

13  meeting the particular elements of his RICO claim. *Cf. Perkumpulan Inv'r Crisis Ctr. Dressel-*

14  *WBG v. Regal Fin. Bancorp, Inc.*, 781 F. Supp. 2d 1098, 1111 (W.D. Wash. 2011) (plaintiff

15  established a plausible RICO claim based on successfully providing allegations to support every

16  element of its RICO claim).  To name just a few examples, Plaintiff's Complaint fails to allege

17  how Defendants committed a pattern of racketeering activity or that he was injured by Defendants'

18  use of investment of racketeering income.  Ultimately, without showing which facts support the

19  elements of his claim, or which RICO section Plaintiff even wishes to assert, Plaintiff fails to state

20  a claim on which relief can be granted.  Accordingly, the Court DISMISSES this claim with

21  LEAVE TO AMEND.

22            2.       Rescission of Note and Deed of Trust and Restitution

23            In Cause of Action 14, Plaintiff seemingly alleges the Note and Deed of Trust should be

24  rescinded under the Truth in Lending Act ("TILA") and the Real Estate Settlement Procedures Act

25  ("RESPA"). *See* Compl. ¶ 165.  There are several problems with this claim.

26            First, TILA specifically provides remedies for violations as against creditors and assignees

27  of creditors, *see* 15 U.S.C. §§ 1640(a), 1641(a), and Plaintiff has alleged no facts showing that

28  First American is either. *See* 15 U.S.C. § 1602(g) (defining creditor); *see also Gorospe v. Sec.*

United States District Court
Northern District of California

24

1   *Nat. Mortg.*, 2011 WL 578844, at *6 (D. Haw. Feb. 8, 2011).

2       Second, assuming a lender fails to satisfy TILA's disclosure requirements, a borrower's

3   right to rescind a loan transaction under TILA "expire[s] three years after the date of the

4   consummation of the transaction[.]"  15 U.S.C. § 1635(f).  "[T]he three year period for TILA

5   rescission claims is an 'absolute' statute of repose that cannot be tolled." *Falcocchia v. Saxon*

6   *Mortg., Inc.*, 709 F. Supp. 2d 860, 867 (E.D. Cal. 2010)[14]; *Beach v. Ocwen Fed. Bank*, 523 U.S.

7   410, 412-13, 419 (1998) (section 1635(f) "extinguishes the right of rescission at the end of the 3-

8   year period," even if the lender never made the required disclosures); *Miguel v. Country Funding*

9   *Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002).  But a borrower need not file suit within three years to

10  rescind under TILA, so long as he gives written notice of rescission to the lender within three

11  years.  *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 792 (2015).  Plaintiff's Loan

12  originated in October 2005, and he does not allege that he gave written notice of rescission to

13  Wells Fargo within the three years after.  As such, Plaintiff's TILA claim is time-barred.

14      Third, Plaintiff's RESPA claim is vague and conclusory, which raises several problems.

15  First, Plaintiff fails to identify which section of RESPA forms the basis for his claim, and "courts

16  in this District have found that not all sections of RESPA contemplate a private right of action."

17  *Kennedy v. World Sav. Bank, FSB*, 2015 WL 1814634, at *11 (N.D. Cal. Apr. 21, 2015)

18  (collecting cases).  Second, without more clearly articulated facts supporting this claim, the Court

19  cannot determine when the alleged violation occurred or when the statute of limitations began to

20  run.  *See* 12 U.S.C. § 2614 (describing RESPA's limitation periods).  Third, Plaintiff's RESPA

21  claim appears to seek rescission, but "rescission is not available under RESPA." *Pettie v. Saxon*

22  *Mortg. Servs.*, 2009 WL 1325947, at *3 (W.D. Wash. May 12, 2009).  Rather, "RESPA provides

23  limited remedies including actual damages and additional monetary damages at the Court's

24  discretion," not exceeding $2,000.  *Id.* (citing 12 U.S.C. § 2605(f)).  Thus, to the extent Plaintiff's

25  RESPA claim seeks rescission, it must be dismissed with prejudice. *Lima v. Am. Home Mortg.*

---

27  [14] By contrast, TILA permits a borrower to seek monetary damages within one year of the loan's consummation, and the Ninth Circuit has noted that equitable tolling may be appropriate for such

28  claims.  *See King v. California*, 784 F.2d 910, 913 (9th Cir. 1986); 15 U.S.C. § 1640(e).

United States District Court
Northern District of California

*Servicing, Inc.*, 2010 WL 144810, at *4 (N.D. Cal. Jan. 11, 2010).

Finally, to the extent Plaintiff's Fourteenth Cause of Action alleges rescission or restitution as independent causes of action, such claims are untenable. Rescission is a remedy, not a cause of action. Cal. Civ. Code § 1691(b); *Nakash v. Superior Ct.*, 196 Cal. App. 3d 59, 69-70 (1987); *see also Ozuna v. Home Capital Funding*, 2009 WL 4544131, at *11 (S.D. Cal. Dec. 1, 2009) (dismissing rescission claim because it is a remedy, not a cause of action); *Taguinod v. World Sav. Bank, FSB*, 755 F. Supp. 2d 1064, 1072 (C.D. Cal. 2010) (same). And restitution is generally only viable as an independent claim where a plaintiff "has properly plead a claim for quasi-contract, or that the defendant has been unjustly enriched at the expense of another, and that it would frustrate public policy concerns to allow the defendant [t]o retain that benefit." *Park v. Welch Foods, Inc.*, 2013 WL 5405318, at *5 (N.D. Cal. Sept. 26, 2013) (citations and footnote omitted). Plaintiff has not alleged any plausible facts showing the Defendants have been unjustly enriched. As such, the Court DISMISSES Plaintiff's Fourteenth Cause of Action WITH LEAVE TO AMEND.

### 3.   Fair Credit Reporting Act Claim

Plaintiff's Sixteenth Cause of Action asserts a violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq, alleging generally that "[his] credit rating . . . has been damaged by reason of the aforementioned acts of defendants." Compl. ¶ 171.

Section 1681s-2(a) of the FCRA imposes duties on furnishers of information to credit reporting agencies ("CRAs") to ensure the information provided is accurate, but there is no private right of action for such violations. 15 U.S.C. § 1681s-2(d); *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059-60 (9th Cir. 2002). There is, however, a private right of action for violations of § 1681s-2(b), which imposes a duty of reinvestigation on furnishers of information upon notice of a dispute regarding the information. 15 U.S.C. § 1681s-2(d); *Nelson*, 282 F.3d at 1059-60. To maintain this claim, Plaintiff must allege he had a dispute with a CRA regarding the accuracy of an account, the CRA notified the furnisher of the information, and the furnisher failed to take the remedial measures outlined in the statute. *Id.* § 1681s-2(b).

Plaintiff's Complaint, as currently pled, fails to allege Defendants furnished information to a CRA, that Plaintiff notified any CRA of the inaccurate or incomplete information in his credit

1    report, that a reporting agency notified any of the Defendants of that dispute, or that Defendants

2    then failed to respond to Plaintiff's dispute.  *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d

3    1147, 1154 (9th Cir. 2009) (duty to investigate "arise[s] only after the furnisher receives notice of

4    dispute from a CRA; notice of a dispute received directly from the consumer does not trigger

5    furnishers' duties" (citation omitted)).  Consequently, the Court DISMISSES Plaintiff's Sixteenth

6    Cause of Action WITH LEAVE TO AMEND.

7              4.      Discrimination Claim Against Wells Fargo and HSBC

8              Finally, Plaintiff brings a claim for discrimination, alleging "Defendant Lenders"

9    discriminated against him in the "procurement of the Note and Deed of Trust" and the "loan

10   qualification process."  Compl. ¶ 177(c-d).  Plaintiff alleges this conduct violates the Fair Housing

11   Act ("FHA"), the Equal Credit Opportunity Act ("ECOA"), and California Civil Code section 51

12   et seq. (the Unruh Civil Rights Act).  *Id.* ¶ 178.  Wells Fargo and HSBC argue all of these claims

13   are barred by the statutes of limitations.  WF Mot. at 18-19.

14             A plaintiff must bring any civil action under the FHA or the ECOA within two years of the

15   alleged violation.  42 U.S.C. § 3613(a)(1)(A);15 U.S.C. § 1691e(f).  The Unruh Act's statute of

16   limitations is one year for claims derived from common law claims and three years for all other

17   claims.  *Gatto v. Cty. of Sonoma*, 98 Cal. App. 4th 744, 759 (2002).  The alleged discrimination in

18   this case occurred at the time of the Loan's origination in October 2005.  Compl. ¶ 13.  Plaintiff

19   again seems to contend an ongoing injury prevents the application of the statutes of limitations

20   here, but (1) he does not appear to allege an ongoing injury, and more importantly, (2) it appears

21   Plaintiff is "confus[ing] a continuing violation with the continuing effects of a past violation."

22   *Garcia v. Brockway*, 526 F.3d 456, 462 (9th Cir. 2008).  "[A] continuing violation is occasioned

23   by continual unlawful acts, not by continual ill effects from an original violation."  *Id.* (citation

24   omitted); *see also id.* at 463 ("Nor may we ignore the statute of limitations to help an aggrieved

25   person who suffers from the effects of such violation decades" after it occurred.).[15]  Given that

26

27   ——————————
     [15] *See Garcia*, 526 F.3d at 461-62 ("[W]here a plaintiff, pursuant to the Fair Housing Act,
     challenges not just one incident of conduct violative of the Act, but an unlawful practice that
28   continues into the limitations period, the complaint is timely when it is filed within [the statutory
     period, running from] the last asserted occurrence of that practice." (quoting *Havens Realty Corp.*

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Plaintiff alleges this claim stems from the procurement of his Note and the Deed of Trust and the

2    loan qualification process—which occurred over eight years before Plaintiff filed this action

3    against Defendants—the Court finds this claim barred by the statute of limitations unless Plaintiff

4    can allege facts demonstrating why this claim is equitably tolled or estopped.  As such, the Court

5    DISMISSES this claim WITH LEAVE TO AMEND.

6                                          **CONCLUSION**

7           In light of the foregoing analysis, the Court **GRANTS IN PART** and **DENIES IN PART**

8    Defendants' Motions.  While the Court **DENIES** Defendants' Motions to Dismiss Plaintiff's

9    entire Complaint on judicial estoppel grounds, the Court has found that Plaintiff's 17 causes of

10   action must nonetheless be dismissed on other grounds.  Plaintiff's Injunction claim (Cause of

11   Action 3) and his Quia Timet claim (Cause of Action 12) are **DISMISSED WITHOUT LEAVE**

12   **TO AMEND**.  However, while the Court **DISMISSES** Plaintiff's other claims, it also **GRANTS**

13   Plaintiff **LEAVE TO AMEND** as detailed in this Order.  Plaintiff may only amend if he can

14   allege adequate facts to necessary support his claims and which do not conflict with this Order.

15   Plaintiff must file an amended complaint **by September 4, 2015**, or the Clerk of Court will close

16   the file on this matter.

17          In his amended complaint, Plaintiff must clearly link each Defendant to the alleged injury,

18   or injuries, for which that Defendant is alleged to be responsible.  While Plaintiff must provide

19   sufficient information to give Defendants fair notice of the nature of the claims against them,

20   Plaintiff need not provide a lengthy narrative with respect to each Defendant to satisfy the

21   pleading requirements of Rule 8.  Instead, Plaintiff should provide a concise statement identifying

22   each Defendant and the specific action or actions the Defendant took, or failed to take, that

23   allegedly caused his injuries.  Plaintiff must allege facts that support each element of his claims.

24   Finally, the Court encourages Plaintiff not to use legalese; by writing plainly, Plaintiff will have a

25   better opportunity to clearly articulate his claims rather than using unnecessary legal jargon.

26          Plaintiff may also wish to seek assistance from the Legal Help Center, a free service of the

27   _____

28   *v. Coleman*, 455 U.S. 363, 380-81 (1982)).

Volunteer Legal Services Program, by calling 415-782-8982, or by signing up for an appointment on the 15th Floor of the Federal Courthouse in San Francisco, 450 Golden Gate Avenue, San Francisco, California.  At the Legal Help Center, you will be able to speak with an attorney who may be able to provide basic legal help but not representation.  More information is available online at: http://cand.uscourts.gov/helpcentersf.

**IT IS SO ORDERED.**


Dated: August 7, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge