UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KAYODE POWELL,

          Plaintiff,

    v.

WELLS FARGO HOME MORTGAGE, et al.,

          Defendants.

Case No.  14-cv-04248-MEJ

**ORDER RE: MOTIONS TO DISMISS**

Re: Dkt. Nos. 79, 85

## INTRODUCTION

Pro se Plaintiff Kayode Powell brings this case against Wells Fargo Bank, N.A. ("Wells Fargo"), HSBC USA, N.A. ("HSBC"), and First American Trustee Servicing Solutions, LLC ("First American") (collectively "Defendants"), challenging the foreclosure on real property located at 4770-4776 Tompkins Avenue, Oakland, California 94619 (the "Property").  First Am. Compl. ("FAC"), Dkt. No. 83.[1]  Pending before the Court is Wells Fargo and HSBC's Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  Dkt. No. 79 ("WF Mot.").  First American also filed a Motion to Dismiss under Rule 12(b)(6).  Dkt. No. 85 ("FA Mot.").  Plaintiff filed an Opposition (Dkt. No. 92)[2], and First American filed a Reply (Dkt. No. 94), as did Wells Fargo and HSBC (Dkt. No. 95).

---

[1] Plaintiff originally filed his FAC on September 25, 2015 (Dkt. No. 78), but filed an errata with a slightly altered version of the FAC on October 8, 2015 (Dkt. No. 83).  As there have been no objections, the Court accepts Plaintiff's errata as his FAC and operative Complaint.

[2] Again, Plaintiff filed an amended Opposition about a week after filing the initial version of his Opposition.  See Dkt. No. 91 (original Opposition); Dkt. No. 92 (amended Opposition).  The Court accepts Plaintiff's amended Opposition as his operative response as Defendants have not objected to this filing, but Plaintiff is again admonished that multiple filings will not be accepted in the future.  Multiple filings such as the one here create confusion and risk creating an incoherent record, as well as creating additional work for the Court and Defendants.

United States District Court
Northern District of California

The Court vacated the hearing on this matter and in the following weeks discovered that the California Supreme Court was to rule on the case of *Yvanova v. New Century Mortgage Corporation*, to decide "whether the borrower on a home loan secured by a deed of trust may base an action for wrongful foreclosure on allegations a purported assignment of the note and deed of trust to the foreclosing party bore defects rendering the assignment void." 62 Cal. 4th 919, 923 (2016).[3]  California's highest court has now ruled on this issue, finding that "because in a nonjudicial foreclosure only the original beneficiary of a deed of trust or its assignee or agent may direct the trustee to sell the property, an allegation that the assignment was void, and not merely voidable at the behest of the parties to the assignment, will support an action for wrongful foreclosure." *Id.*  With that ruling, the Court now considers Defendants' Motions to Dismiss.

Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motions for the following reasons.

## BACKGROUND

Around October 17, 2005, Plaintiff executed a Deed of Trust ("DOT") and Promissory Note for a mortgage loan (the "Loan") for the Property.  FAC ¶ 7; *id.*, Ex. A (DOT), Dkt. No. 78-7.  The DOT identifies Wells Fargo as the lender and beneficiary and National Title Insurance Company as the trustee.  *Id.*  The original loan servicer was also Wells Fargo.  *Id.*  The DOT was recorded on October 17, 2005 in the official records of the Alameda County Recorder's Office. *Id.*  On January 1, 2008, Wells Fargo substituted First American as trustee (the "Substitution of Trustee").  First American's Req. for Judicial Notice, Ex. F (Substitution of Trustee), Dkt. No. 9.[4] And on January 14, 2009, an assignment of the DOT to HSBC, as Trustee for Wells Fargo Home Equity Asset Backed Certificates, Series 2005-4, was recorded (the "Assignment").  Wells Fargo & HSBC's Req. for Judicial Notice ("WF RJN"), Ex. B (the Assignment), Dkt. No. 13-1.  Wells

---

[3] None of the parties informed the Court of this development, nor did any party alert the Court when *Yvanova* was finally decided on February 18, 2016.

[4] The Court previously granted First American and Wells Fargo and HSBC's Requests for Judicial Notice as to the documents cited in this Order.  *See* Dkt. No. 69 at 2-4.

United States District Court
Northern District of California

1  Fargo remained the servicer of the Loan.  *See* FAC ¶¶ 3, 78.

2       First American first recorded a notice of default on December 3, 2008 on the ground that

3  Plaintiff was behind on his payments.  WF RJN, Ex. C (Notice of Default).  This notice of default

4  led to a foreclosure on March 25, 2010, but on the same day, Plaintiff filed for bankruptcy;

5  consequently, First American rescinded the trustee's sale and trustee's deed on April 21, 2010.

6  *See id.*, Ex. D (Notice of Recession) & Ex. J (Bankruptcy Docket).  First American recorded a

7  second notice of default on December 1, 2010, indicating Plaintiff was in default as of February 1,

8  2008.  *Id.*, Ex. E.  Notices of sale were then recorded on March 2, 2011, July 2, 2012, and May 20,

9  2014.  *Id.*, Exs. F, G, H.  On June 10, 2014, First American sent Plaintiff a Notice of

10  Postponement of Trustee's Sale, which was postponed until September 8, 2014.  Dkt. No. 1-4 at 4.

11       Plaintiff filed this action in Alameda Superior Court around September 2, 2014, seeking

12  "equitable relief and damages precipitated by the events and acts of Defendants resulting in an

13  imminent threat of wrongful foreclosure."  Compl. ¶ 1, Dkt. No. 1-1.[5]  He asserted 17 claims: (1)

14  Negligence; (2) Declaratory Relief; (3) Temporary Restraining Order and Preliminary Injunction;

15  (4) Intentional Infliction of Emotional Distress ("IIED"); (5) Breach of Good Faith and Fair

16  Dealing; (6) Quiet Title; (7) Accounting; (8) violation of California's Rosenthal Act; (9) Fraud;

17  (10) Specific Performance by Promissory or Equitable Estoppel; (11) Breach of Written and Oral

18  Contract; (12) Quia Timet; (13) Racketeering Influenced Corrupt Organizations Act; (14)

19  Rescission of Note and Deed of Trust and Restitution; (15) violation of California Civil Code

20  section 789.3; (16) violation of the Fair Credit Reporting Act; and (17) Discrimination.  Plaintiff

21  simultaneously filed an ex parte motion for a temporary restraining order ("TRO"), and on

22  September 3, 2014, the Superior Court held a hearing on Plaintiff's request.  Dkt. No. 1-1 at 2-22.

23  The Superior Court subsequently issued the TRO, enjoining various defendants, including Wells

24

25  _____

26  [5] Plaintiff also named as defendants Fidelity National Title Insurance Company, Doe Credit
    Reporting Agencies, Nicole Miles-Todd (a Wells Fargo agent), Recorder Patrick O'Connell, John

27  Kennerty (a Wells Fargo agent), Chet Sconyers (a Wells Fargo agent), and Hank Duong (a First
    American Agent).  Compl. ¶ 4.  The Court granted Plaintiff and Fidelity National Title Insurance

28  Company's Stipulation for Dismissal on December 24, 2014.  Dkt. No. 31.

Fargo, HSBC, and First American, from foreclosing on the Property.  Dkt. No. 1-4 at 16-20.[6] Additionally, the court issued an order to show cause, requiring defendants to show cause as to why they should not be enjoined from proceeding with the trustee's sale of the Property.  *Id.*

On September 19, 2014, Wells Fargo and HSBC removed the action to this Court.  Not. of Removal, Dkt. No. 1.  Wells Fargo and HSBC, along with First America, filed Motions to Dismiss challenging Plaintiff's 17 claims on various grounds.  Dkt. Nos. 8, 12.  The Court granted in part and denied in part those motions and permitted Plaintiff leave to amend.  Order re: First Mots. to Dismiss, Dkt. No. 71.  Specifically, the Court denied Defendants' Motions to Dismiss Plaintiff's Complaint on judicial estoppel grounds but otherwise dismissed all of Plaintiff's claims with leave to amend, save for his Injunction and Quia Timet claims, which it dismissed with prejudice.  *Id.*

Now, in his FAC, Plaintiff names as defendants only Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, First American Trustee Servicing Solutions Services, LLC f.k.a. First American Loanstar Trustee Services, LLC, and HSBC Bank USA, National Association.  FAC ¶ 5.  Plaintiff asserts nine causes of action: (1) Negligence against Wells Fargo[7]; (2) Violation of California's Rosenthal Fair Debt Collection Act against Wells Fargo and HSBC; (3) Breach of Contract against Wells Fargo; (4) Breach of Implied Covenant of Good Faith and Fair Dealing against Wells Fargo; (5) Fraud against all Defendants; (6) Declaratory Relief against all Defendants; (7) Accounting against Wells Fargo and HSBC; (8) Rescission of Note and DOT and Restitution against Wells Fargo and HSBC; and (9) Quiet Title against Wells Fargo and HSBC.  *See* FAC.[8]

---

[6] Defendants provided briefing arguing that the Alameda Superior Court's TRO is no longer in effect since Defendants removed the case to federal court.  *See* Dkt. No. 54 (First American's response); Dkt. No. 60 (Wells Fargo and HSBC's response).

[7] Plaintiff also asserts this claim against Wells Fargo Home Mortgage or "WFHM," but as this entity appears to be part of Wells Fargo, and indeed Wells Fargo asserts that Plaintiff erroneously sued this sub-entity (WF Mot. at 1), the Court will refer to claims asserted against WFHM as those against Wells Fargo generally.  Additionally, the Court notes that Plaintiff asserts no claims against solely WFHM.

[8] Plaintiff has dismissed his federal claims, which formed the original basis for Wells Fargo and HSBC's removal.  *See* Not. of Removal ¶ 5, Dkt. No. 1.  However, the Court retains jurisdiction over this case as the FAC indicates that the parties are diverse (FAC ¶¶ 1-5) and the amount in controversy is over $75,000 (*id.* ¶ 6), *see* 28 U.S.C. § 1332(a), and in any event, the Court may exercise supplemental jurisdiction over his remaining state law claims, 28 U.S.C. § 1367(c)(3).  Given the multiple rounds of briefing the Court has already entertained in this matter and the fact

United States District Court
Northern District of California

United States District Court
Northern District of California

Plaintiff's FAC contends that "none of the named party defendants is a valid trustee, mortgagee or beneficiary or any of their authorized agents entitled to execute the foreclosure sale of Plaintiff's property." *Id.* at 2.  In his FAC, Plaintiff describes his "mortgage securitization investigation" and how his loan was pooled with other residential mortgages and sold without the required effective assignment of the DOT, leading to a "botched securitization" and "an irreversible break in the chain of title[,]" consequently rendering the Assignment and Substitution of Trustee void.  *See id.* ¶¶ 8-25, 52 (emphasis omitted)).

Among other things, Plaintiff alleges Wells Fargo bundled his Loan in a pool with similar residential mortgages in its portfolio and irrevocably sold it for full value received on December 1, 2005 to Wells Fargo Asset Securities Corporation ("WFASC") pursuant to a binding Mortgage Loan Purchase Agreement (the "MLPA").  *Id.* ¶¶ 9, 36.  But Plaintiff alleges this sale was made without the required effective assignment of the DOT and concurrent endorsement of the underlying original note from Wells Fargo to WFASC.  *Id.* ¶ 9.  He alleges WFASC then established a special purposed vehicle ("SPV") as a mortgage-backed securities trust ("MBS Trust") under a pooling and servicing agreement ("PSA") dated December 22, 2005.  *Id.* ¶ 10. The PSA includes the MLPA, incorporated by reference.  *Id.*  WFASC then sold and securitized each of the pooled mortgage loans into the Wells Fargo Home Equity Asset-Backed Securities 2004-4 Trust on December 22, 2005 in exchange for mortgage-backed securities certificates (i.e., collateralized debt obligations or "CDOs") issued as bond certificates by the MBS Trust.  *Id.* ¶ 11. Plaintiff alleges HSBC is the trustee for the benefit of the certificate holders, i.e., the investors, of the Wells Fargo Home Equity Asset-Backed Securities 2004-4 Trust and is the fiduciary owner of the securitized mortgage loans backing the securities certificates.  *Id.*  Plaintiff contends this sale was also made without the required assignment of the DOT or the endorsement of the underlying note, and further the endorsement of Plaintiff's Note and the assignment of the DOT from

---

that it has already been pending for approximately one year, the Court finds that remand at this stage in the litigation would not serve the principles of "judicial economy, convenience, fairness, and comity," and therefore exercises its discretion to entertain Plaintiff's state law claims.  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

WFASC to HSBC did not occur before December 22, 2005 or 90 days thereafter, the "absolute deadline" to do so under the governing PSA. *Id.* ¶¶ 12-23. Plaintiff contends the assignment is therefore void. *Id.* ¶ 25. Moreover, he contends Wells Fargo falsely represented itself as the present beneficiary of the DOT when it assigned the DOT to HSBC in January 2009 and recorded the assignment with the Alameda County Recorder. *Id.* ¶ 24.

Plaintiff further challenges Defendants on allegations that, among other things, (1) the Assignment and the Substitution of Trustee were "robo-signed," which he asserts cannot establish clear title under California law (*id.* ¶¶ 26-30, 53); (2) the Substitution of Trustee substituting First American as Trustee under the DOT is invalid and thus the notices of default and notices of trustee's sales recorded by First American are also invalid; (*id.* ¶¶ 52, 56-57, 66-67); (3) Wells Fargo was negligent in servicing his loan because it mishandled his loan modification application(s) (*id.* ¶¶ 77-119); (4) Wells Fargo and First American "misrepresented their status as 'trustee, mortgagee, beneficiary' and/or its authorized 'agent'" (*id.* ¶¶ 144-62); and (5) Wells Fargo did not provide him a copy of the Note with all modifications in response to his 2013 and 2014 requests (*id.* ¶¶ 129-30).

Since Plaintiff filed his FAC and Defendants filed their Motions, the California Supreme Court has decided *Yvanova*, which held that "a borrower who has suffered a nonjudicial foreclosure does not lack standing to sue for wrongful foreclosure based on an allegedly void assignment merely because he or she was in default on the loan and was not a party to the challenged assignment." 62 Cal. 4th at 923-24 ("[B]ecause in a nonjudicial foreclosure only the original beneficiary of a deed of trust or its assignee or agent may direct the trustee to sell the property, an allegation that the assignment was void, and not merely voidable at the behest of the parties to the assignment, will support an action for wrongful foreclosure."). But as indicated by this holding, *Yvanova* did not consider standing in the pre-foreclosure context—in other words, whether borrowers have standing "to preempt a threatened nonjudicial foreclosure by a suit questioning the foreclosing party's right to proceed." *Id.* at 924. The California Supreme Court has, however, granted review of two cases that address the same issue in the pre-foreclosure context: *Keshtgar v. U.S. Bank*, 334 P.3d 686 (Cal. 2014) (granting petition for review) and

6

United States District Court
Northern District of California

1  *Mendoza v. JP Morgan Chase Bank*, 337 P.3d 493 (Cal. 2014) (same).

2  **LEGAL STANDARD**

3  Rule 8(a) requires that a complaint contain a "short and plain statement of the claim

4  showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint must therefore

5  provide a defendant with "fair notice" of the claims against it and the grounds for relief.  *Bell Atl.*

6  *Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

7  A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough

8  facts to state a claim to relief that is plausible on its face.  *Id.* at 570.  "A claim has facial

9  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

10  inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662,

11  678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

12  more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550

13  U.S. at 557).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

14  detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

15  relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

16  cause of action will not do.  Factual allegations must be enough to raise a right to relief above the

17  speculative level."  *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

18  In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as

19  true and construe them in the light most favorable to the plaintiff.  *Id.* at 550; *Erickson v. Pardus*,

20  551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).  In

21  addition, courts may consider documents attached to the complaint.  *Parks Sch. of Bus., Inc. v.*

22  *Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

23  If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

24  request to amend the pleading was made, unless it determines that the pleading could not possibly

25  be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

26  banc) (internal quotations and citations omitted).  However, the Court may deny leave to amend

27  for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the

28  movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

7

to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v.*

*Davis*, 371 U.S. 178, 182 (1962)).

## DISCUSSION

As an initial matter, Plaintiff's 51-page FAC[9] is prolix and often redundant in its

allegations; nonetheless, Plaintiff's allegations are, for the most part, comprehensible and

organized in an understandable fashion, particularly for a relatively complex subject matter.

Defendants appear to have had no difficulty responding to the allegations raised.  The Court thus

proceeds to review Plaintiff's individual claims and Defendants' arguments against them.

**A.      Fifth Through Ninth Causes of Action**

1.      <u>Causes of Action Related to the Securitization of Plaintiff's Loan</u>

First, Defendants challenge Plaintiff's claims founded on the premise that there are defects

related to the securitization of his loan.  WF Mot. at 3-4; FA Mot. at 6-7.  Specifically, Wells

Fargo and HSBC frame the issue as follows:

> In the FAC, the primary basis for Plaintiff's challenge of the
> foreclosure appears to be his belief that the Assignment was
> recorded late, in violation of the PSA governing the securitization of
> the Loan.  *See, e.g.*, FAC ¶¶ 8-19.  Specifically, Plaintiff alleges the
> Loan was securitized and transferred to HSBC in 2005 (FAC ¶¶ 8-
> 12), but the Assignment was not recorded until 2009.  FAC ¶ 24.
> Plaintiff alleges the Assignment is therefore void because it violates
> the PSA and New York trust law.  FAC ¶ 25.  On this basis Plaintiff
> contends that any documents stemming from the Assignment are
> also void.  *See, e.g.*, FAC ¶¶ 51, 56, 64.  Under this theory, Plaintiff
> brings his fifth cause of action for fraud (*see, e.g.*, FAC ¶¶ 142-
> []48), his sixth cause of action for declaratory relief (*see, e.g.*, FAC
> ¶¶ 164-178), his seventh cause of action for accounting (FAC ¶
> 180), his eighth cause of action for rescission of the Note and Deed
> of Trust (*see, e.g.*, FAC ¶¶ 183-[]86), and his ninth cause of action
> to quiet title. *See, e.g.*, FAC ¶¶ 189-[]93.

WF Mot. at 3-4.  Defendants contend these five claims should be dismissed in one fell swoop

because "borrowers have no standing to challenge the securitization process or any resulting

assignments as the borrower is not a party to the securitization transaction and not impacted by a

---

[9] Plaintiff also includes Exhibits spanning hundreds of pages.  Dkt. Nos. 78-(1-15) (spanning at
least 22 pages and up to 68 pages per document).

change in their creditor." *Id.* at 4 (citing *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 515 (2013), among others); FA Mot. at 6. Wells Fargo and HSBC also note courts have taken issue with a case Plaintiff relies on, *Glaski v. Bank of America, N.A.*, 218 Cal. App. 4th 1079 (2013), which found a borrower has standing to contest the securitization process. WF Mot. at 4.

In his Opposition and FAC, Plaintiff argues he "does not claim standing" in the securitization process but nonetheless argues he is allowed to challenge the alleged securitization errors to help establish that Defendants lack authority to foreclose. Opp'n at 12-13; FAC ¶ 68. Wells Fargo and HSBC contend that "Plaintiff's distinction is one without any meaning and is circular reasoning." WF Reply at 2.

Plaintiff's standing argument is not entirely clear, and the Court is inclined to agree with Wells Fargo and HSBC that it is a non-starter because fundamentally Plaintiff must have "standing" to be able to raise his wrongful foreclosure claims. *See Yvanova*, 62 Cal. 4th at 928 n.3 (using the term "standing" to mean "a borrower's legal authority to challenge the validity of an assignment."). But Defendants' standing arguments similarly fall flat in light of the California Supreme Court's recent decision in *Yvanova*. While California's highest court has yet to weigh in on the specific circumstances present here, i.e., where pre-foreclosure a borrower seeks to demonstrate that a purported assignment of a note and deed of trust to the foreclosing party has defects making the assignment void, the Court is ultimately persuaded by the same logic recently articulated by Judge Jon Tigar in *Lundy v. Selene Finance, LP*, 2016 WL 1059423 (N.D. Cal. Mar. 17, 2016) (slip. op.), that in light of *Yvanova*'s analysis, the California Supreme Court is unlikely to support an absolute bar to all pre-foreclosure challenges. *See Lundy*, 2016 WL 1059423, at *8 ("In interpreting state law, federal courts are bound by the precedents of the state's highest court, and if that particular issue has not been decided, federal courts must 'predict how the highest court would resolve it.'" (quoting *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002))).

In *Lundy*, as here, the plaintiff sought to challenge the defendants' attempt to foreclose, alleging Chase Bank had no interest in the deed of trust to assign it to Bank of America because all beneficial interests in the deed of trust had already been transferred to another entity before the assignment. 2016 WL 1059423, at *1. Consequently, the plaintiff alleged the assignment and all

United States District Court
Northern District of California

the documents related to it were fatally defective, null, and void.  *Id.*  When the plaintiff sued to stop the defendants from foreclosing, the defendants contended that he could not challenge the validity of the assignment or anything else related to the securitization of his mortgage because as a third party to those transactions he lacked standing to argue they were defective.  *Id.* at *8.  In doing so, the defendants—like Wells Fargo and HSBC here—relied on *Jenkins* to support this proposition, while the plaintiff relief on *Glaski*, which held "a plaintiff has standing to challenge a completed foreclosure based on allegations that the foreclosing party lacks authority due to an assignment that was void."  *Id.* (citing *Glaski*, 218 Cal. App. 4th 1079).  Judge Tigar noted that "*Yvanova* partially resolved the split between *Jenkins* [and] *Glaski* in regards to post-foreclosure claims, holding that plaintiffs may bring wrongful foreclosure claims on the basis that the assignment underlying the foreclosure was void."  *Id.* at *9.  But while acknowledging that California's Supreme Court did not expressly disapprove *Jenkins* for all purposes, Judge Tigar noted that the state's highest court rejected *Jenkins*' underlying reasoning for its holding.  *Id.* at *9-10.  Consequently, in predicting how the state Supreme Court would rule on the issue of standing with regard to pre-foreclosure challenges, Judge Tigar considered whether the Supreme Court would again reject *Jenkins*' reasoning in the pre-foreclosure context.  *Id.* at *10.  He concluded it would in large part.  *Id.* at *10-13.

As Judge Tigar explained:

> In *Yvanova*, the California Supreme Court identified two justifications given by the Jenkins court for its holding. First, the Jenkins court noted that "California law did not permit a 'preemptive judicial action[] to challenge the right, power, and authority of a foreclosing 'beneficiary' or beneficiary's 'agent' to initiate and pursue foreclosure.'" *Yvanova*, 2016 WL 639526 at *8 (quoting *Jenkins*, 216 Cal. App. 4th at 511). "*Jenkins* reasoned that such preemptive suits are inconsistent with California's comprehensive statutory scheme for nonjudicial foreclosure; allowing such a lawsuit 'would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures.'" *Id.* (quoting *Jenkins*, 216 Cal. App. 4th at 513).
>
> Because this first argument addressed only pre-foreclosure claims, the California Supreme Court declined to opine on its validity. Instead, it moved to the second ground offered in *Jenkins*, which is that plaintiffs who challenge the assignments of deeds of trust to their properties "ha[ve] failed to allege an actual controversy as

required by Code of Civil Procedure section 1060." *Id.* at *9 (citing *Jenkins*, 216 Cal. App. 4th at 513). "Even if one of the assignments of the note and deed of trust was improper in some respect, the appellate court reasoned, 'Jenkins is not the victim of such invalid transfer[] because her obligations under the note remained unchanged. Instead, the true victim may be an individual or entity that believes it has a present beneficial interest in the promissory note and may suffer the unauthorized loss of its interest in the note.'" *Id.* (quoting *Jenkins*, 216 Cal. App. 4th at 515). Plaintiffs offering such claims "failed to show prejudice . . . because the challenged assignment did not change their obligations under the note." *Id.*

As to this second ground, the California Supreme Court rejected the reasoning offered by the *Jenkins* court. It noted that "the bank or other entity that ordered the foreclosure would not have done so absent the allegedly void assignment," and therefore "[t]he identified harm—the foreclosure—can be traced directly to [the foreclosing entity's] exercise of the authority purportedly delegated by the assignment." *Id.* at *11 (internal quotation marks and citation omitted). Moreover, "[t]hough the borrower is not entitled to object to an assignment of the promissory note, he or she is obligated to pay the debt, or suffer loss of the security, only to a person or entity that has actually been assigned the debt." *Id.* "The borrower owes money not to the world at large but to a particular person or institution, and only the person or institution entitled to payment may enforce the debt by foreclosing on the security." *Id.* The contrary view, that there was no prejudice from an allegedly void assignment, "implies that *anyone*, even a stranger to the debt, could declare a default and order a trustee's sale—and the borrower would be left with no recourse because, after all, he or she owed the debt to *someone*, though not to the foreclosing entity." *Id.* at *12. This, the California Supreme Court noted, "would be an 'odd result' indeed." *Id.*

*Lundy*, 2016 WL 1059423, at *10. Judge Tigar went on to apply *Yvanova*'s reasoning to the pre-foreclosure context to determine how the California Supreme Court would rule:

The prejudice in the post-foreclosure context is, of course, more obvious than in pre-foreclosure, since a plaintiff has suffered the definable injury of the loss of her property. But it is clear that *Yvanova*'s prejudice analysis does not depend on the existence of a completed foreclosure sale—rather, it focuses more broadly on the unfairness of requiring a plaintiff to be subjected to foreclosure proceedings by an entity that has no right to initiate those proceedings. For this reason, the Court concludes that *Yvanova*'s reasoning applies just as strongly to pre-foreclosure plaintiffs. Just as with post-foreclosure plaintiffs, the "identified harm"—initiation of foreclosure proceedings—can "be traced directly to [the foreclosing entity's] exercise of the authority purportedly delegated by the assignment." *Id.* at *11. The prejudice is self-evident given that "the bank or other entity that ordered the foreclosure would not have done so absent the allegedly void assignment," regardless of whether the plaintiff still has title or possession of her home. *Id.* A plaintiff who has already lost her home has undoubtedly suffered

11

prejudice; but so has a plaintiff who is at imminent risk of doing so.
In sum, *Yvanova* provides strong guidance that in *Keshtgar* and *Mendoza*, the California Supreme Court will again reject *Jenkins*'s conclusion that pre-foreclosure plaintiffs are not prejudiced by initiation of foreclosure proceedings based on an allegedly void assignment. This conclusion leaves only the first ground of *Jenkins* not addressed by *Yvanova*, which is that "preemptive challenges" are "inconsistent with California's comprehensive statutory scheme for nonjudicial foreclosure."

As noted in *Yvanova*, this first ground of *Jenkins* relied heavily on another California Court of Appeal case, *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149 (2011), which also barred a pre-foreclosure challenge based on the foreclosing entity's lack of authority to initiate proceedings. *Jenkins* noted, however, that *Gomes*'s holding was in part based on the fact that the plaintiff in *Gomes* had failed to allege any factual basis for the foreclosing entity's alleged lack of authority. *See Jenkins*, 216 Cal. App. 4th at 512 ("Consequently, the *Gomes* court concluded that allowing a trustor-debtor to pursue such an action, absent a '*specific factual basis*' for alleging that the foreclosure was not initiated by the correct party' would unnecessarily [interfere with California's statutory scheme for nonjudicial foreclosure]." (emphasis in original)).

In *Gomes*, the plaintiff alleged merely that based "on information and belief," the foreclosing entity was not entitled to foreclose, but offered no factual support for this belief nor any guess as to the true owner of the note or deed. *Gomes*, 192 Cal. App. 4th at 1152. The *Gomes* court emphasized this point when distinguishing its conclusion from three other cases that reached the opposite result, noting that in all three of these cases, "the plaintiff's complaint identified a *specific factual basis* for alleging that the foreclosure was not initiated by the correct party," such as that the assignments at issue had been improperly backdated. *Id.* at 1155-56. Indeed, *Glaski* emphasized this aspect of *Gomes* and identified it as a "limited nature" of the holding. *Glaski*, 218 Cal. App. 4th at 1099.

This distinction is significant. As echoed in *Jenkins*, *Gomes* focused on the established framework for regulation of nonjudicial foreclosure sales, and argued that "[b]y asserting a right to bring a court action to determine whether the owner of the Note has authorized its nominee to initiate the foreclosure process, Gomes is attempting to interject the courts into this comprehensive nonjudicial scheme." *Gomes*, 192 Cal. App. 4th at 1154; *see also id.* at 1155 ("[N]owhere does the statute provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized, and we see no ground for implying such an action.")

[. . . .]

While *Jenkins* acknowledges this aspect of the holding in *Gomes*, it is not clear if *Jenkins*'s holding is likewise limited to only those situations where plaintiffs lack a specific factual basis and therefore "simply seek the right to bring a lawsuit to find out *whether*" an entity has authority to foreclose, or if it imposes a bar generally on

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

any such pre-foreclosure challenges.

2

[. . . .]

3

4

5

In sum, *Jenkins* and its progeny clearly impose some kind of bar on pre-foreclosure challenges to the foreclosing entity's alleged lack of authority, and do so because of those challenges' "preemptive" effect on California's nonjudicial foreclosure scheme.  What is less clear is whether that bar is limited to only those challenges that lack any "specific factual basis" in support.

6

*Lundy*, 2016 WL 1059423, at *11-13 (brackets with ". . . ." added).

7

Judge Tigar ultimately concluded that "*if the California Supreme Court decides to adopt*

8

*Jenkins*'s bar to pre-foreclosure challenges, it will limit that bar only to claims that lack any

9

'specific factual basis,' as in *Gomes*." *Id.* at *13 (emphasis in original).  He reasoned that

10

"[b]arring such claims is sensible, since otherwise any borrower could stall a foreclosure sale

11

merely by declaring, 'upon information and belief,' that the foreclosing entity lacked the proper

12

authority[,]" which would "effectively 'create an additional requirement for the foreclosing party'

13

to prove its authority to foreclose, which does not exist in California's current statutory

14

framework." *Id.* (citation omitted).[10]  Consequently, Judge Tigar concluded that, to the extent the

15

California Supreme Court will approve *Jenkins* in the pre-foreclosure context at all, it will limit

16

that holding only to pre-foreclosure plaintiffs who lack any "specific factual basis" for bringing

17

their claims.  *Id.*

18

As is apparent, the Court finds Judge Tigar's analysis of this issue and ultimate conclusion

19

well-reasoned and the most probable outcome of the California Supreme Court's potential ruling

20

on such issues.  Accordingly, the Court adopts it here, and thus turns to whether Plaintiff has

21

alleged a "specific factual basis" for challenging Defendant's authority to initiate the foreclosure.

22

The Court concludes he has.  Plaintiff alleges a third-party forensic investigation and audit

23

of the securitization of his Loan was conducted and uncovered that the Assignment of Plaintiff's

24

25

---

26

[10] At the same point, Judge Tigar pointed out that "[i]mposing [] a bar [on any pre-foreclosure claims] . . . even if a plaintiff offers plausible support for the claim that the entity foreclosing on her property lacks any authority to do so," would require that plaintiff "to sit by idly until an allegedly improper foreclosure sale was completed before bringing her otherwise valid challenge in court." *Lundy*, 2016 WL 1059423, at *13.

27

28

Loan and DOT was void[11] because (1) the sale from Wells Fargo to WFASC was made without the required effective assignment of the DOT and that concurrent endorsement of the underlying original note and (2) that the sale from WFASC to HSBC was also made without the required assignment of the DOT or the endorsement of the underlying note, and the Assignment did not occur until after the mandatory deadline.  FAC ¶¶ 8-24.  As Plaintiff explains, Wells Fargo "was not a valid beneficiary and had no power to make the assignment in the first place as its beneficial interest in Plaintiff's DOT was extinguished in December 2005, when it sold the loan to the secondary market for securitization."[12]  *Id.* ¶ 42.  And consequently, the substitution of First American was not valid because Wells Fargo had no power to make that substitution.  *Id.* ¶¶ 51-52.  As such, First American was not the "authorized agent of the true trustee, or mortgagee and present beneficiary in the DOT" and thus had no power to "initiate foreclosure proceedings and conduct the foreclosure sale of Plaintiff's home[.]"  *Id.* ¶¶ 147, 150; *see Lundy*, 2016 WL 1059423, at *13 (finding a specific factual basis for the plaintiff's contention that defendants lacked authority to initiate the foreclosure where the plaintiff alleged the assignment underlying the foreclosure was void because the original assignee of the deed of trust had transferred it to another entity before its assets were subsequently acquired by the defendants); *see also Ohlendorf v. Am. Home Mortg. Serv.*, 279 F.R.D. 575, 583 (E.D. Cal. 2010) (plaintiff stated a claim against defendants "that they [we]re not proper parties to foreclose" and that "the process of recording assignments with backdated effective dates may be improper, and thereby taint the notice of default.").  Given the foregoing, the Court will not dismiss Plaintiff's fifth through ninth causes of action on the ground of lack of standing at this time.

//

---

[11] *Yvanova* did not decide "the question of whether a postclosing date transfer into a New York securitized trust is void or merely voidable" nor did it generally provide analysis of what constitutes a void or voidable assignment.  62 Cal. 4th at 931.

[12] In their Reply, Wells Fargo and HSBC attempt to argue that because the Loan was transferred to HSBC in 2005, the Assignment's 2009 recording date is irrelevant, but the crux of Plaintiff's arguments do not merely relate to the late recording but, as indicated, whether Wells Fargo had the authority to make such an assignment in the first place.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2.      Plaintiff's Robo-Signing Claims

2     Defendants also ask the Court to dismiss any claims related to Plaintiff's contention that

3   the Assignment and Substitution of Trust were robo-signed.[13]   WF Mot. at 4 (citing FAC ¶¶ 26-

4   29, 53); FA Mot. at 6-7.  Wells Fargo and HSBC assert that "California courts have rejected such

5   claims because a borrower does not have standing to challenge the signature and because the

6   alleged robo-signing has no bearing on the validity of the foreclosure process."  WF Mot. at 4

7   (citations omitted).  Defendants' argument merely regurgitates their contention that Plaintiff lacks

8   standing to contest the assignment and other transactions.  The Court has already found this

9   argument is untenable as discussed above.  Consequently, the Court denies their motion to dismiss

10  claims on this ground.  *See Lundy*, 2016 WL 1059423, at *17 (finding same); *see also Rahbarian*,

11  2014 WL 5823103, at *6-9 (finding California Civil Code section 2924.17 was intended to

12  address "robo-signing" and a plaintiff "need not plead harm to make a claim . . . for a violation of

13  section 2924.17.")

14     That said, section 2924.17 was enacted by the California Legislature as part of the

15  Homeowner's Bill of Rights law ("HBOR" or "HBR"), Cal. Civ. Code § 2920.5 et seq., which

16  only came into effect on January 1, 2013.  As Wells Fargo and HSBC point out, HBOR "does not

17  apply retroactively to conduct that occurred before the [law's] 2013 effective date."  Mot. at 9

18  (citations omitted).  Like federal courts, "California courts comply with the legal principle that

19  unless there is an express retroactivity provision, a statute will not be applied retroactively unless

20  it is very clear from extrinsic sources that the Legislature . . . must have intended a retroactive

21  application."  *Myers v. Philip Morris Companies, Inc.*, 28 Cal. 4th 828, 841 (2002) (internal

22  citations and emphases omitted).  Plaintiff provides no argument as to why the Court should find

23  HBOR's robo-signing provisions apply retroactively.  And courts have generally declined to give

24  _____

25  [13] "Before recording or filing [certain documents including the assignment of a deed of trust], a
    mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate

26  the borrower's default and the right to foreclose, including the borrower's loan status and loan
    information."  Cal. Civ. Code § 2924.17(b).  "Failing to conduct such review before signing is

27  known as 'robo-signing.'"  *Rahbarian v. JP Morgan Chase*, 2014 WL 5823103, at *5 (E.D. Cal.
    Nov. 10, 2014) (citing *Michael J. Weber Living Tr.v. Wells Fargo Bank, N.A.*, at *10, 2013 WL

28  1196959 (N.D. Cal. Mar. 25, 2013)).

these provisions retroactive effect.  *See Hendricks v. Wells Fargo Bank, N.A.*, 2015 WL 1644028, at *7 (C.D. Cal. Apr. 14, 2015) (dismissing robo-signing claims based acts occurring before HBOR enacted); *Michael J. Weber Living Tr.*, 2013 WL 1196959, at *4 (holding plaintiff could not succeed on robo-signing claim, since it applied to actions before HBOR came into effect).

Without more, the Court agrees that to the extent Plaintiff's robo-signing allegations are meant to challenge Defendants' basis for foreclosure, Plaintiff cannot state a claim for relief based on such allegations as all of the actions giving rise to Plaintiff's robo-signing allegations occurred before January 1, 2013.  Plaintiff's robo-signing claims are thus dismissed with prejudice.  *See McFarland v. JP Morgan Chase Bank*, 2014 WL 1705968, at *6 (C.D. Cal. Apr. 28, 2014) (dismissing plaintiff's claim under section 2924.17 with prejudice because all of the actions pled in the complaint under this section occurred prior to January 1, 2013).

### 3.    Purported Defects in the Individual Claims

Defendants also contend Plaintiff's fifth through ninth causes of action have individual defects.  The Court reviews these claims individually.

#### a.    Fraud (Fifth Cause of Action)

First, Defendants challenge Plaintiff's fifth cause of action for fraud.  The elements of fraud under California law are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of the statement's falsity (scienter); (c) intent to defraud (i.e., to induce action in reliance on the misrepresentation); (d) justifiable reliance; and (e) resulting damage. *Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995).[14]  "The absence of any one of these required elements will preclude recovery."  *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324, 1332 (1986) (citation omitted).  Moreover, allegations of fraud must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  *See Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054-55 (9th Cir. 2011).  Rule 9(b) provides that

---

[14] "The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance."  *Saldate v. Wilshire Credit Corp.*, 711 F. Supp. 2d 1126, 1134 (E.D. Cal. 2010) (citing *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004)).

United States District Court
Northern District of California

1 "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting

2 fraud or mistake."  An allegation of fraud must be "specific enough to give defendants notice of

3 the particular misconduct which is alleged to constitute the fraud so that they can defend against

4 the charge and not just deny that they have done anything wrong."  *Semegen v. Weidner*, 780 F.2d

5 727, 731 (9th Cir. 1985) (citation omitted).  To satisfy Rule 9(b)'s heightened pleading standard,

6 "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the

7 misconduct charged."  *Yess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)

8 (quotation omitted))

9        Plaintiff alleges Wells Fargo and First American "both misrepresented their status as

10 'trustee, mortgagee, beneficiary' and/or [] authorized 'agent'" and that Plaintiff relied on

11 statements made by their employees that they were authorized to not only review Plaintiff's loan

12 modification, but also that Wells Fargo was the legally authorized servicer and that First American

13 was its agent and subsequently properly substituted trustee.  Opp'n at 15; FAC ¶¶ 144-62.

14 Plaintiff's allegations primarily focus on Wells Fargo and HSBC and the "botched securization" of

15 his Loan.  He focuses on the first two elements of a fraud claim—namely, the fact of false

16 statements and knowledge of their falsity.  Among other things, he alleges Wells Fargo and HSBC

17 knew of the flaws in the securitization process, yet all Defendants continued to represent

18 themselves as the proper trustee, mortgagee, beneficiary, or authorized agent.  What he does not

19 do is explain how he justifiably and detrimentally relied on their statements.

20        While Plaintiff indicates he suffered a number of different forms of harm as a result of

21 Defendants' misrepresentations, including that the title to his Property is now "clouded" and he

22 will not have the opportunity to apply for a valid loan modification with a "real party in interest."

23 Opp'n at 16 (emphasis omitted).  These allegations, however, while showing how Plaintiff may be

24 harmed by the alleged misrepresentations, do not show how Plaintiff *relied* on any of Defendants'

25 statements to his detriment.  A fraud claim is premised on the idea that a defendant induces a

26 plaintiff to behave in a certain way based on false information, or that a defendant omits critical

27 information that would have caused a plaintiff to act differently had he or she had the full

28 information.  *Saldate v. Wilshire Credit Corp.*, 711 F. Supp. 2d 1126, 1134-35 (E.D. Cal. 2010)

("There must be a showing 'that the defendant thereby intended to induce the plaintiff to act to his detriment in reliance upon the false representation' and 'that the plaintiff actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment.'" (quotation omitted)). Not all harm that arises from false statements, however, lends itself to a fraud claim—and for Plaintiff's allegations, that is the case.

The only allegations Plaintiff puts forward that suggest he *relied* on and was consequently harmed by Defendants' alleged misrepresentations are that he has been paying the wrong party for an undetermined amount of time. *See* Opp'n at 16. These allegations do not relate to representations made by First American—only Wells Fargo. *See* FAC ¶¶ 148, 160 (allegations that Wells Fargo claimed it had beneficiary or agency rights to collect mortgage payments and that "Plaintiff may still owe money to the party actually entitled to enforce the note and may be in default of his mortgage obligations" as a result). Wells Fargo argues in response that, as the servicer of Plaintiff's mortgage, it remained entitled to collect Plaintiff's payments on the Loan. WF Mot. at 5 (citing FAC ¶¶ 3, 78 (Wells Fargo was the servicer)); WF Reply at 4 (citing DOT ¶ 20 (if there was a change in servicer, plaintiff would be notified). Plaintiff did not respond to this assertion, and his FAC contains no plausible allegations that Wells Fargo did not remain the servicer of his Loan. Plaintiff only asserts that Wells Fargo "is not a valid or authorized servicer on Plaintiff's mortgage loan[,]" FAC ¶ 147, with no further allegations about why Plaintiff believes Wells Fargo was removed as the servicer of his Loan. Such conclusory allegations are insufficient to state a fraud claim. Without more, Plaintiff fails to state a claim for fraud on the ground that Wells Fargo was not entitled to collect loan payments. *See Klohs v. Wells Fargo Bank, N.A.*, 901 F. Supp. 2d 1253, 1261 (D. Haw. 2012) ("if Wells Fargo remains as a legitimate loan servicer, its 'interest in the Subject Property or in the Mortgage thereon,' has not changed. Wells Fargo still has a basis (set forth in the terms of the Note) for servicing Plaintiffs' loan." (footnote omitted)); *Peay v. Midland Mortg. Co.*, 2010 WL 476677, at *2 (E.D. Cal. Feb. 3, 2010) (dismissing fraud claim where plaintiffs failed to state why defendant did not have the right to service their loan); *see also Sepehry-Fard v. MB Fin. Servs.*, 2015 WL 903364, at *4 (N.D. Cal. Mar. 2, 2015) ("District courts routinely reject [] allegations that a servicer commits fraud in

1    collecting on a note that it does not own or physically hold." (collecting cases)).

2          That said, Plaintiff has alleged that as result of Wells Fargo's representations, he has been

3    paying his mortgage payments to the wrong entity, and consequently, may "still owe money to the

4    party actually entitled to enforce the note and may be in default of his mortgage obligations to that

5    party as a result of defendants' fraud."  FAC ¶¶ 149, 155, 160.  In his Opposition, Plaintiff points

6    out that "multiple parties may now seek to enforce the debt against him."  Opp'n at 16.  He also

7    alleges Wells Fargo and HSBC "both know the identity of the . . . true holder of the Note and

8    DOT" and that their "conduct has made it more expensive and difficult for [him] to perform his

9    obligations under the Note and DOT."  FAC ¶¶ 155-56.  Plaintiff essentially alleges Wells Fargo

10   and HSBC held themselves out as the rightful entities to collect on Plaintiff's Loan and to whom

11   Plaintiff should pay his mortgage.  However, taking Plaintiff's allegations as true, if these

12   Defendants were not in fact Plaintiff's lender or mortgagee, then their actions induced Plaintiff to

13   rely on these representations and to suffer potential harm as a result in that he may be in default

14   with the actual holder of his Loan.  Furthermore, "one may recover compensation for time and

15   effort expended in reliance on a defendant's misrepresentation."  *Block v. Tobin*, 45 Cal. App. 3d

16   214, 220 (1975) (citations omitted).  Throughout the FAC, Plaintiff indicates he spent time and

17   effort as well as money in challenging whether Wells Fargo and HSBC were the proper holders of

18   his Loan.[15]

19         The Court is satisfied Plaintiff's allegations of fraud against Wells Fargo are "specific

20   enough to give [it] notice of the particular misconduct which is alleged to constitute the fraud so

21   that [it] can defend against the charge[,]" *Semegen*, 780 F.2d at 731, but Plaintiff's allegations

22   against HSBC fall short.  While Plaintiff's allegations throughout the FAC indicate how Wells

23   Fargo made representations to Plaintiff that would cause him to believe Wells Fargo had the

24

25   [15] In other sections of the FAC, Plaintiff points out that Wells Fargo "represented that if the
     modification offer was accepted an ratified by three trial payments of $5,000 . . . any foreclosure
26   of Plaintiff's property would be postponed" but that after Plaintiff "sent three payments . . . Wells
     Fargo foreclosed on Plaintiff's property anyway, without notice."  FAC ¶ 122.  While Plaintiff
27   asserts Wells Fargo's "representation was false and fraudulent" he did not allege such facts in the
     fraud section of his FAC.  *Id.*  Wells Fargo has asserted such claims fall outside the statute of
28   limitations, in any event.  WF Mot. at 12.

United States District Court
Northern District of California

authority to enforce his Note, he has not alleged how HSBC did so.  Indeed, Plaintiff asserts he "never received notification that [the] secured lender and beneficiary in his mortgage loan had changed."  FAC ¶ 149 (whereas Plaintiff alleges he "received numerous debt collection calls from various Wells Fargo and WFHM representatives, who demanded payment(s) as purported secured creditor and beneficiary").  Consequently, while the Court will not dismiss Plaintiff's fraud claim against Wells Fargo, Plaintiff's claims against HSBC are too conclusory and seem to arbitrarily attempt to lump HSBC together with Wells Fargo's acts.  The Court thus will grant Defendants' Motion to Dismiss HSBC from Plaintiff's fraud claim.

Lastly, as to First American, Plaintiff alleges no facts that it made any false representations that Plaintiff relied on to his detriment, let alone with the particularity required under Rule 9.

Accordingly, the Court finds Plaintiff has failed to state a claim for fraud against HSBC and First American but has stated a claim against Wells Fargo.[16]  The Court thus grants HSBC and First American's Motions to Dismiss them from these claims, but does so with leave to amend in the event that Plaintiff can allege how they made misrepresentations on which Plaintiff justifiably relied to his detriment.

> b.    *Declaratory Relief (Sixth Cause of Action)*

Defendants next challenge Plaintiff's sixth cause of action for declaratory relief, contending that "[n]o statute or case law authorizes a borrower to bring a speculative suit to determine whether or not a nonjudicial foreclosure was initiated by the correct party."  FA Mot. at 8 (citing *Gomes*, 192 Cal. App. 4th at 1154-57); WF Mot. at 6 ("[A] borrower has no statutory right to determine the authority of foreclosing entities." (citing *Gomes*, 192 Cal. App. 4th at 1154-57)).  The Court previously agreed with Defendants on this issue, dismissing Plaintiff's initial Complaint on the very grounds they reassert here.  *See* Order re: First Mots. to Dismiss at 18-19.

However, as noted above, while the California Supreme Court's recent decision in

---

[16] In their Reply, Wells Fargo and HSBC point out that Plaintiff's Opposition makes "vague claims that Wells Fargo miscalculated the amount due on the Loan."  Reply at 4 (citing Opp'n at 16).  Despite his arguments in opposition, Plaintiff's FAC does not articulate how Wells Fargo miscalculated Plaintiff's mortgage payments in a way that constitutes fraud.  The Court's ruling on Plaintiff's fraud claim against Wells Fargo therefore does not suggest Plaintiff's miscalculation allegations may support this claim.

United States District Court
Northern District of California

United States District Court
Northern District of California

*Yvanova* did not consider whether borrowers have standing "to preempt a threatened nonjudicial foreclosure by a suit questioning the foreclosing party's right to proceed," 62 Cal. 4th at 924, it did reject much of the reasoning on which *Jenkins*, and consequently *Gomes*, were based on—the same notion posited by Defendants here.  Again, having reviewed both *Yvanova* and *Gomes*, the Court is inclined to follow the rule revealed by Judge Tigar's thorough analysis in finding that, while a plaintiff may not generally sue preemptively to determine whether a defendant is entitled to enforce a promissory note through non-judicial foreclosure, where a plaintiff has a specific factual basis for challenging a foreclosure action, such claims are not barred.  *See Lundy*, 2016 WL 1059423, at *10-13.  While *Lundy* did not consider declaratory relief claims, the Court sees no reason to deviate from its reasoning on that ground alone.  Indeed, even *Gomes*—the case relied on by Defendants—indicates that where a plaintiff has a specific factual basis for challenging enforcement of a note and subsequent foreclosure declaratory relief claims may be viable.  *See Gomes*, 192 Cal. App. 4th at 1155 (citing *Ohlendorf v. Am. Home Mortgage Servicing* and noting that case dealt with a situation where the plaintiffs "alleged wrongful foreclosure on the ground that assignments of the deed of trust had been improperly backdated, and thus the wrong party had initiated the foreclosure process" but that "[n]o such infirmity [wa]s alleged" in *Gomes*).  Plaintiff's FAC, as noted above, presents a specific factual basis for challenging Defendants' right to enforce the note and foreclose on Plaintiff's Property.  Consequently, the Court will not grant Defendants' Motions to Dismiss on this claim in its entirety on the ground that a plaintiff can never preemptively challenge a defendant's enforcement of a promissory note or foreclosure.

However, Wells Fargo and HSBC also highlight the fact that Plaintiff bases his declaratory relief claim in part on the Uniform Commercial Code ("UCC").  WF Mot. at 6; *see also* FAC ¶¶ 175, 178.  They assert "Plaintiff's reliance on Commercial Code concepts is misplaced as they play no part in the non-judicial foreclosure framework."  WF Mot. at 6 (citing *Debrunner v. Deutsche Bank Nat'l Tr. Co.*, 204 Cal. App. 4th 433, 440 (2012)).  To the extent Plaintiff's Declaratory Relief claim is premised on the UCC, the Court agrees with Wells Fargo and HSBC that those allegations related to the UCC are not appropriate grounds on which to bring a declaratory relief claim in this context.  As *Debrunner* recognized, "Plaintiff's reliance on the

California Uniform Commercial Code provisions pertaining to negotiable instruments is misplaced[;]" rather "[t]he comprehensive statutory framework established in sections 2924 to 2924k to govern nonjudicial foreclosure sales is intended to be exhaustive." 204 Cal. App. 4th at 440 (quotations and internal marks omitted). Resort to the Commercial Code is thus unnecessary and inappropriate given California's comprehensive real property law. *See Garfinkle v. Superior Ct.*, 21 Cal. 3d 268, 278 (1978) (California's Civil Code provides a comprehensive scheme "regulating in detail all aspects of nonjudicial foreclosure process." (citation omitted)). The Court consequently dismisses Plaintiff's declaratory relief allegations specifically referencing California's Commercial Code.

<blockquote>c.     *Accounting (Seventh Cause of Action)*</blockquote>

Plaintiff also brings a claim for accounting, which under California law is "generally a remedy under equity." *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1191 (N.D. Cal. 2009) (citations omitted). Wells Fargo and HSBC argue that "[a]side from the fact that Plaintiff's claim that Wells Fargo was not entitled to payments is implausible, the relationship between a borrower and his lender does not support a claim for accounting." WF Mot. at 6 (citations omitted).

"A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting." *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009) (citation omitted). "[A]ccounting actions are equitable in nature and appropriate when 'the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable.'" *Gomez v. Wachovia Mortg. Corp.*, 2010 WL 291817, at *8 (N.D. Cal. Jan. 19, 2010) (quoting *Civic W. Corp. v. Zila Indus., Inc.*, 66 Cal. App. 3d 1, 14 (1977)). "Normally, an accounting is appropriate where a plaintiff seeks to recover an amount that is unliquidated and unascertained, and that cannot be determined without an accounting." *Id.*

Additionally, as the Court noted in its Order on Defendants' First Motions to Dismiss, in general, "[a] lender-borrower relationship is not a unique relationship that would support a demand for an accounting even absent a fiduciary relationship." *Teselle*, 173 Cal. App. 4th at 179

United States District Court
Northern District of California

(citing *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 910 (2013)).  Similarly, "a balance

due for mortgage payments made from a plaintiff to a defendant does not constitute the type of

balance that can only be ascertained by an accounting."  *In re Residential Capital, LLC*, 518 B.R.

720, 736-37 (Bankr. S.D.N.Y. 2014) (citing *McLaughlin v. Wells Fargo Bank, N.A.*, 2013 WL

1164432, at *9 (C.D. Cal. Mar. 19, 2013)).  Indeed, "the purpose of such a claim is to discover[]

what 'balance is due the plaintiff,' not what money is owed to the defendant."  *Rodrigues v.

F.D.I.C.*, 2012 WL 1945497, at *5 (N.D. Cal. May 30, 2012) (quotation omitted); *see also Ricon

v. Recontrust Co.*, 2009 WL 2407396, at *7 (S.D. Cal. Aug. 4, 2009) (noting "while Plaintiff

allegedly owes Defendants an amount past due on the underlying mortgage, Defendants do not

allegedly owe Plaintiff any money" and "[t]his failure to plead 'some balance is due the plaintiff'

is fatal to Plaintiff's claim."); *Hafiz v. Aurora Loan Servs.*, 2009 WL 2029800, at *2 (N.D. Cal.

July 14, 2009) ("Plaintiff does not cite any authority for the proposition that she can maintain a

claim for an accounting to determine how much money she owes defendant.").

      While the Court previously dismissed Plaintiff's claim for accounting because essentially

the only monies that appeared to need accounting for were those Plaintiff would owe his lenders,

Plaintiff's FAC now alleges facts that demonstrate why he believes *he* is owed a balance—in

particular, he alleges Wells Fargo and HSBC "falsely claim to be Plaintiff's creditors" and his

allegations challenging the securitization process and the Assignment suggest "defendants were

unjustly enriched in collecting mortgage payments based on those presumed rights."  Opp'n at 16;

FAC ¶ 182 ("Wells Fargo and HSBC owe Plaintiff money to which they are not entitled and

which they obtained from Plaintiff under false pretenses."); *cf. Gomez*, 2010 WL 291817, at *8

("Because . . . Plaintiff is essentially seeking to have an explanation of her payoff amount, there

does not appear to be a basis for an equitable accounting claim.").[17]

      That said, Plaintiff alleges only that "[t]he accounts are complicated; therefore, an

accounting is necessary to determines the sums owed to Plaintiff by each of the Defendants."  *Id.* ¶

---

[17] In Plaintiff's Opposition where he discusses his Rosenthal Act claim (second cause of action),
he indicates he seeks an accounting to determine what he owes his lender.  Opp'n at 27.  As noted
above, and in the Court's prior order, an accounting claim based on such request is not cognizable.

183.  This allegation is conclusory without any explanation about why the accounts are so complex that a Plaintiff seeks to obtain an amount that cannot be determined without an accounting.  *Cty. of Santa Clara v. Astra USA, Inc.*, 2006 WL 2193343, at *6 (N.D. Cal. July 28, 2006) ("Allegations of complicated accounts . . . are not enough to state a claim for an accounting").  Without more, Plaintiff has failed to state an accounting claim.  *See Lundy*, 2016 WL 1059423, at *18 (dismissing accounting claim where it was "unclear to the Court, and Plaintiff ha[d] not demonstrated, why the[] sums cannot be calculated simply by determining the relevant payments he made and adding them together" and noting that "even assuming that Plaintiff is entitled to damages from some or all of the Defendants, he has not alleged that an accounting is necessary.").  Accordingly, the Court will dismiss this claim with leave to amend.

> ### d.       Restitution/Rescission Claim and Quiet Title Claim (Eighth and Ninth Causes of Action)

Next, Wells Fargo and HSBC challenge Plaintiff's eighth and ninth causes of action, in which Plaintiff seeks rescission of the Note and Deed of Trust and quiet title of the Property, free of the DOT.  WF Mot. at 6 (citing FAC ¶¶ 183, 189).  According to Wells Fargo and HSBC, "these claims fail because Plaintiff does not establish how he is entitled to the Property, free of the $473,400.00 Loan used to acquire it[,]" and "[a] borrower cannot quiet title without discharging their debt."  *Id.* (citing *Aguilar v. Bocci*, 39 Cal. App. 3d 475, 477 (1974)).

Under California law, "[t]he purpose of a quiet title action is to determine 'all conflicting claims to the property in controversy and to decree to each such interest or estate therein as he may be entitled to.'"  *Gomez*, 2010 WL 291817, at *7 (quoting *Newman v. Cornelius*, 3 Cal. App. 3d 279, 284 (1970)).  "A quiet title action must include: (1) a description of the property in question; (2) the basis for plaintiff's title; and (3) the adverse claims to plaintiff's title."  *Kelley v. Mortg. Elec. Registration Sys., Inc.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009) (citing Cal. Civ. Proc. Code § 761.020).  Thus, in actions to quiet title, plaintiffs must be able to allege that they "'are the rightful owners of the property, i.e., that they have satisfied their obligations under the deed of trust.'"  *Preciado v. Wells Fargo Home Mortg.*, 2013 WL 1899929, at *5 (N.D. Cal. May 7, 2013) (quotation omitted)).  Consequently, courts, including this Court, have held that "a borrower may

24

United States District Court
Northern District of California

1   not assert 'quiet title' against a mortgagee without first paying the outstanding debt on the

2   property." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010)

3   (citation omitted); *Aguilar*, 39 Cal. App. 3d at 477 (debtor cannot "quiet title without discharging

4   his debt. The cloud upon his title persists until the debt is paid." (citation omitted)).

5         This so-called "tender rule is not absolute[,]" and "'may not be required where it is

6   inequitable to do so.'"  *Sacchi v. Mortgage Elec. Registration Sys., Inc.*, 2011 WL 2533029, at *10

7   (C.D. Cal. June 24, 2011) (quoting *Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997)).  "Also, if

8   the action attacks the validity of the underlying debt, a tender is not required since it would

9   constitute an affirmative of the debt." *Onofrio*, 55 Cal. App. 4th at 413 (quotation omitted).  In

10  such instances, a plaintiff does not need to allege "tender," i.e., that he or she paid the full amount

11  of indebtedness on the property. *See Avila v. Wells Fargo Bank*, 2012 WL 2953117, at *15 (N.D.

12  Cal. July 19, 2012) ("By alleging that the purported trustee, NDeX West, was not properly

13  substituted as trustee, had no interest in the subject property, and thus was not authorized to

14  initiate a non judicial foreclosure when it recorded the notice of default, plaintiff alleges that the

15  foreclosure sale was void. As such, the tender rule does not apply." (internal citation omitted));

16  *Vogan v. Wells Fargo Bank*, 2011 WL 5826016, at *7-8 (E.D. Cal. Nov. 17, 2011) ("The Court

17  holds that the tender requirement does not apply to this case because Plaintiffs are challenging the

18  beneficial interest held by U.S. Bank in the deed of trust, not the procedural sufficiency of the

19  foreclosure itself.").

20        Plaintiff has alleged plausible facts attacking the validity of the underlying debt and

21  indicating that a foreclosure sale would be void because Defendants lack authority to foreclose on

22  the Property, as explained above.  If Plaintiff proves his claims that neither Wells Fargo nor HSBC

23  owns his Loan or has authority to foreclose on his home, *see* FAC ¶ 72, then the sale of his home

24  may be void, and requiring him to pay tender to Wells Fargo and/or HSBC would be inequitable.

25  *See Vogan*, 2011 WL 5826016, at *7-8 ("Plaintiffs are not saying that U.S. Bank failed to follow

26  the letter of California's statutory foreclosure law; they are claiming that U.S. Bank did not have

27  standing to foreclose in the first place. Thus, relying on *Onofrio*, requiring Plaintiffs to tender the

28  full amount of the indebtedness to an entity, U.S. Bank, that is allegedly not the beneficiary to the

deed of trust in order to protect Plaintiffs' interest in the Property would be inequitable.").

That said, while Plaintiff does not contend the foreclosure is wrongful because he has fully paid his debt, he does contend the wrong entity is attempting to conduct the foreclosure. Thus, while Plaintiff seeks to quiet title on the Property and to rescind the Note and DOT,[18] "it is unclear why this relief would be appropriate given that he apparently is still in debt to some other entity." *Lundy*, 2016 WL 1059423, at *14. Plaintiff cannot both plead that another entity owns his Note and at the same time seek the Court's assistance to conveying the Property entirely to Plaintiff, thus disregarding the other interest he has plead on behalf of an unknown entity. *See Jackson v. Atl. Sav. of Am.*, 2014 WL 4802879, at *11 (N.D. Cal. Sept. 26, 2014) ("In order to satisfy the second requirement, plaintiff must allege that he has discharged his debt, regardless to whom it is owed." (quotation omitted)).

Consequently, the Court dismisses Plaintiff's quiet title claim without prejudice. Additionally, to the extent Plaintiff's rescission claim is based on rescinding the Note and DOT, the Court dismisses that claim on the same ground. The Court will not dismiss Plaintiff's restitution claim at this time, however, as Defendants did not challenge this claim and Plaintiff has alleged facts indicating that Wells Fargo and HSBC may have been unjustly enriched by collecting payments on a Loan they held no beneficial interest in. *See* FAC ¶ 182.

**B.      Negligence (First Cause of Action)**

Wells Fargo again challenges Plaintiff's negligence claim. WF Mot. at 7-8. Plaintiff asserts that Wells Fargo, "as a purported servicer . . . owed him a duty of care to service the loan and to handle any loan modification application reviews in a timely fashion[,]" among other things. Opp'n at 20; *see also* FAC ¶¶ 77-119. Rather, he contends Wells Fargo delayed the process, on multiple occasions, by referring Plaintiff's file to its foreclosure department without response to his requests for information; only responding when Plaintiff escalated his file. Opp'n at 20. He further asserts that Wells Fargo did not honestly review, consider, or offer a

---

[18] Plaintiff "seeks a declaration that the title to the Subject Property is vested in Plaintiff alone, free and clear of encumbrances in favor of Defendants and persons known and unknown, and that the Defendants herein and persons known and unknown, and each of them, be declared to have no estate, right, title, lien or interest in the Subject Property adverse to Plaintiff." FAC ¶ 193.

26

United States District Court
Northern District of California

1  comprehensive HAMP loan modification review, to find an affordable payment for Plaintiff." *Id.*

2       To state a claim for negligence, a plaintiff must allege: (1) the defendant's legal duty of

3  care to the plaintiff; (2) breach of that duty; (3) causation; and (4) resulting injury to the plaintiff.

4  *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 500 (2001).  "The legal duty of care may be of two

5  general types: (a) the duty of a person to use ordinary care in activities from which harm might

6  reasonably be anticipated, or (b) an affirmative duty where the person occupies a particular

7  relationship to others."  *McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal. App. 4th 1011, 1016-

8  17 (1997) (edits omitted).  The existence of a legal duty to use reasonable care in a particular

9  factual situation is a question of law for the court to decide.  *Vasquez v. Residential Invs., Inc.*, 118

10  Cal. App. 4th 269, 278 (2004).  As a general rule, under California law, "a financial institution

11  owes no duty of care to a borrower when the institution's involvement in the loan transaction does

12  not exceed the scope of its conventional role as a mere lender of money."  *Nymark v. Heart Fed.*

13  *Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095-96 (1991) (citations omitted).

14       In California, the test for determining whether a financial institution exceeded its role as

15  money lender and thus owes a duty of care to a borrower-client involves "the balancing of various

16  factors," among which are: (1) the extent to which the transaction was intended to affect the

17  plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered

18  injury, (4) the closeness of the connection between the defendant's conduct and the injury

19  suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing

20  future harm.  *Id.* at 1098 (quotations omitted); *see also Biakanja v. Irving*, 49 Cal. 2d 647, 650

21  (1958) (establishing the factors above, referred to as the "*Biakanja* factors").

22       Wells Fargo moves to dismiss Plaintiff's negligence claim on the ground that financial

23  institutions do not owe borrowers a duty of care in connection with making or servicing loans.

24  WF Mot. at 7-9.  Wells Fargo concedes there are conflicting California appellate decisions on this

25  question.  *Compare Lueras v. BAC Home Loans Servicing, L.P.*, 221 Cal. App. 4th 49 (2013) *with*

26  *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941 (2014).  Wells Fargo urges the

27  Court to follow *Lueras*, which it claims is the "majority position[.]"  WF Mot. at 8.

28       Again, when faced with conflicting intermediate appellate court authority, a federal court

applying California law must predict how the California Supreme Court would rule. *See, e.g.*, *McQuirk v. Donnelley*, 189 F.3d 793, 797 (9th Cir. 1999); *see also Hernandez v. Specialized Loan Servicing, LLC*, 2015 WL 350223, at *7 n.7 (C.D. Cal. Jan. 22, 2015) ("Where state appellate courts split on an issue, the federal court must attempt to predict which position the state Supreme Court is more likely to adopt." (citing *DeWitt v. W. Pac. R. Co.*, 719 F.2d 1448, 1453 (9th Cir. 1983) (noting split in authority but choosing one line of California appellate cases over another)). Wells Fargo has cited a handful of federal district court cases that follow *Lueras* and dismiss negligence claims for want of a duty of care. *See, e.g.*, *Carbajal v. Wells Fargo Bank, N.A.*, 2015 WL 2454054, at *6 (C.D. Cal. Apr. 10, 2015) (noting the court "fail[ed] to discern how considering an application for the renegotiation of loan terms could fall outside the scope of a lender's 'conventional role as a lender of money.'"). However, as another court in this district noted—and in the context of a similar suit against Wells Fargo—"*Alvarez* marked a sea change in jurisprudence on this issue. Federal district courts applying California law after *Alvarez* overwhelmingly hold that the California Supreme Court would recognize a duty of care during the loan modification review process." *MacDonald v. Wells Fargo Bank N.A.*, 2015 WL 1886000, at *5 (N.D. Cal. Apr. 24, 2015) (collecting cases).[19] The *MacDonald* court went on to find that *Alvarez* is the more likely opinion to be adopted by the California Supreme Court, and on further review, this Court agrees. *Id.*; *see also Aquino v. U.S. Bank Nat'l Ass'n*, 2016 WL 324373, at *4-5 (N.D. Cal. Jan. 27, 2016) (finding plaintiffs had not "alleged sufficient facts to bring the

---

[19] Similarly, in another case against Wells Fargo, Judge Laurel Beeler recently pointed out a flaw in *Carbajal*'s reasoning in its criticisms of courts following *Alvarez*. *See Rijhwani v. Wells Fargo Home Mortg., Inc.*, 2015 WL 3466608, at *22 n.7 (N.D. Cal. May 30, 2015). Specifically, the *Carbajal* court noted that those courts following *Alvarez* utilized the *Biakanja* factors, but suggested those factors are inapplicable in the loan modification context because they were devised to determine whether a duty of care exists between parties who are not in privity to one another. *Carbajal*, 2015 WL 2454054, at *6. However, as Judge Beeler noted, "[w]hile it is true that the *Biakanja* factors originally were used in the no-privity context, California appellate courts nevertheless have expanded the use of those factors to contexts where there is privity, such as between lenders and borrowers." *Rijhwani*, 2015 WL 3466608, at *22 (citing *Nymark*, 231 Cal. App. 3d at 1098 and *Alvarez*, 228 Cal. App. 4th at 948-49). Neither *Carbajal* nor Wells Fargo here suggest why this expansion would be rejected by the California Supreme Court, nor can the Court glean one from the case law. Consequently, it is reasonable that the California Court will continue to support the California Court of Appeal decisions applying the *Biakanja* factors in this context, and the Court declines to follow *Carbajal* in rejecting *Alvarez* and its progeny.

allegations in line with cases such as *Alvarez*" but granting leave to amend because to do so would not be futile).

Thus, Plaintiff may properly allege that Wells Fargo owed him a duty of care in processing him loan modification application.  In reviewing the *Biakanja* factors, the Court finds that at least five of the six weigh in Plaintiff's favor under the allegations in his amended complaint.  The loan modification was intended to affect Plaintiff as it would have reduced his mortgage payment. FAC ¶ 81.  The potential harm to Plaintiff from mishandling the application processing was also foreseeable: the loss of an opportunity to keep his home was the inevitable outcome.  *Id.* ¶¶ 82-84; *see Garcia v. Ocwen Loan Servicing, LLC*, 2010 WL 1881098, at *3 (N.D. Cal. May 10, 2010). Although there was no guarantee the modification would be granted, Plaintiff alleges the mishandling of the documents deprived him of the possibility of obtaining the requested relief. The injury to Plaintiff is not really in question, in that he lost the opportunity to modify his loan. FAC ¶¶ 82-84, 117.  There is also a close connection between Wells Fargo's conduct and any injury actually suffered, because, to the extent Plaintiff otherwise qualified and would have been granted a modification, Wells Fargo's alleged conduct precluded the loan modification application from being properly processed.  *See Rijhwani*, 2015 WL 3466608, at *22 ("while a lender may not have a duty to modify the loan of any borrower who applies for a loan modification, a lender surely has a duty to submit a borrower's loan modification application once the lender has told the borrower that it will submit it" (quotation omitted)).  Finally, "[t]he existence of a public policy of preventing future harm to home loan borrowers is shown by recent actions taken by both the state and federal government to help homeowners caught in the home foreclosure crisis."  *Garcia*, 2010 WL 1881098, at *3 (citing Cal. Civ. Code § 2923.6).  Taking Plaintiff's allegations as true, the Court finds Wells Fargo's role went beyond that of a "conventional" lender.

The next question is whether Wells Fargo breached its duty.  "In cases where courts have found a plaintiff stated a claim for negligence, the allegations showed that a defendant did more than deny a request to modify a loan. Rather, the plaintiffs alleged that defendants mishandled documents or engaged in some other form of misconduct."  *Aquino*, 2016 WL 324373, at *4 (citing *Alvarez*, 228 Cal. App. 4th at 945 (plaintiff alleged that defendants relied on inaccurate

information about plaintiff's income and alleged defendants falsely advised him that documents

had not been submitted); *Rijhwani v. Wells Fargo Home Mortg., Inc.*, 2014 WL 890016, at *17

(N.D. Cal. Mar. 3, 2014) (plaintiffs alleged that the defendant tricked them into defaulting on a

loan and instructed them to ignore notices, while the defendant sold their home at a foreclosure

sale); *Shapiro v. Sage Point Lender Servs.*, 2014 WL 5419721, at *9 (C.D. Cal. Oct. 24, 2014)

(plaintiff alleged that defendant provided contradictory information about status of application and

that defendant advised him application had been received but denied application on basis that

documents were missing)).

        Plaintiff's FAC clarifies details about how Wells Fargo mishandled the servicing of his

Loan and his loan modification.  Among other things, it repeatedly changed Plaintiff's single point

of contact[20] or "SPOC" with Wells Fargo for his loan modification[21] and failed to respond to

Plaintiff or give him clear instructions about the modification process.  FAC ¶¶ 86-93.  The

repeated change in SPOCs made it more difficult for Plaintiff to communicate with them and

caused Plaintiff to have to escalate his file and request case management assistance from his

congresswoman.  *Id.* ¶¶ 86, 89.  Additionally, Plaintiff alleges Wells Fargo repeatedly asked

Plaintiff to re-send documents he had already submitted, such as his divorce documents and deeds,

and indicates Wells Fargo delayed in processing his request and supporting documents.  *Id.* ¶¶ 87-

---

[20] California Civil Code section 2923.7 provides that, when a borrower requests a foreclosure-prevention alternative, such as a loan modification, the servicer must promptly designate a "single point of contact" to communicate directly with the borrower.  Cal. Civ. Code § 2923.7(a).  The SPOC can be an individual or a team, but must (among other things) possess sufficient knowledge about foreclosure alternatives and have access to individuals who have the ability and authority to stop foreclosure proceedings.  *See id.* § 2923.7(b)-(d).  Moreover, "[t]he mortgage servicer shall ensure that each member of the [SPOC] team is knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process."  *Id.* § 2923.7(e).

[21] Wells Fargo argues that it should not be penalized for changing SPOCs, noting that "[u]nder Plaintiff's stilted view of the HBOR, a servicer would violate the statute every time an employee assigned as a SPOC left employment with the bank[.]"  WF Reply at 6 n.1.  Courts have acknowledged this problem.  *See Hild v. Bank of Am., N.A.*, 2015 WL 1813571, at *7 (C.D. Cal. Apr. 21, 2015) (noting that "[a] mortgage servicer cannot prevent its employees from becoming ill or taking different jobs; logically, a servicer must be permitted to replace the SPOC under certain circumstances.").  But they have also been reluctant at the pleading stage to hold as a matter of law that HBOR can never be violated by such changes.  *See id.* ("However, this Court cannot say that, as a matter of law, Section 2923.7(c) can never be violated through repeated, unnecessary changes in the SPOC which cause a borrower's account to be insufficiently reviewed or mismanaged.").

United States District Court
Northern District of California

United States District Court
Northern District of California

1      98.  Plaintiff alleges this harmed him by depriving him of the opportunity to obtain loan

2   modifications and depriving him the opportunity to seek relief elsewhere.  *Id.* ¶¶ 84, 117; *see*

3   *Alvarez*, 228 Cal. App. 4th at 951 (Plaintiffs "alleged that the improper handling of their

4   applications deprived them of the opportunity to obtain loan modifications, which they allege[d]

5   they were qualified to receive and would have received had their applications be properly

6   reviewed, and alternatively, that the delay in processing deprived them of the opportunity to seek

7   relief elsewhere.").  Consequently, the Court finds Plaintiff has alleged plausible facts that Wells

8   Fargo breached its duty of care in handling his loan modification and he was harmed as a result.

9           As a final note, Wells Fargo also challenges Plaintiff's negligence claims to the extent they

10  relate to provisions in HBOR.  WF Mot. at 9-12.  First, Wells Fargo argues "HBR does not apply

11  retroactively to conduct that occurred before the HBR's 2013 effective date[,] and that argues that

12  as such, "Plaintiff's application that was denied in 2012 is not actionable."  *Id.* at 9-10 (citations

13  omitted).  Wells Fargo is correct that HBOR does not appear to apply retroactively.  *See Michael*

14  *J. Weber Living Tr.*, 2013 WL 1196959, at *4.  But courts have nonetheless recognized that the

15  legislation "sets forth policy considerations that should affect the assessment whether a duty of

16  care was owed to [plaintiffs] at that time."  *Alvarez*, 228 Cal. App. 4th at 951 (quoting *Jolley*, 213

17  Cal. App. 4th at 905).  Thus, the Court will not carve out Plaintiff's 2012 application from his

18  negligence claim on this ground.

19          Second, Wells Fargo argues Plaintiff's claims post-2013 are not actionable under HBOR.

20  Wells Fargo notes that Plaintiff argues the mere scheduling of the sale of his loan in July 2013

21  violated HBOR, but Wells Fargo contends that "[a] servicer only violates section 2923.6(e) by

22  recording a notice of default, notice of sale, or conducting a trustee's sale[,]" Cal. Civ. Code §

23  2923.6(e),[22] which Plaintiff does not allege, and otherwise "Courts agree that simply scheduling or

24  rescheduling a sale does not violate the dual tracking provision."  WF Mot. at 10 (quoting *Hsin-*

25

---

26  [22] HBOR provides that "the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent

27  shall not record a notice of default or, if a notice of default has already been recorded, record a
    notice of sale or conduct a trustee's sale" while evaluating a borrower's loan application.  Cal.

28  Civ. Code § 2923.6(e).

*Shawn Sheng v. Select Portfolio Servicing, Inc.*, 2015 WL 4508759, at *2 (E.D. Cal., July 24, 2015)).  A "dual tracking" violation occurs when a financial institution "continue[s] to pursue foreclosure even while evaluating a borrower's loan modification application."  *Rockridge Tr. v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1149 (N.D. Cal. 2013) (citing *Jolley*, 213 Cal. App. 4th at 904).  At least one court in this district has ruled against Wells Fargo for the same argument it urges the Court to adopt here.

Specifically, in *Foronda v. Wells Fargo Home Mortgage, Inc.*, Judge Lucy Koh found the plaintiffs "plausibly alleged that Defendant continued to 'conduct a trustee's sale'" where plaintiffs alleged Wells Fargo *scheduled* a trustee's sale and refused to postpone it.  2014 WL 6706815, at *6 (N.D. Cal. Nov. 26, 2014).  She declined to adopt Wells Fargo's "narrow" view that the dual-tracking prohibitions are violated only where it recorded a notice of default, notice of sale, or actually sold the property at a trustee sale.  *Id.*  Rather, Judge Koh pointed out that "[a]s the legislative history suggests, section 2923.6(c)'s ban on dual tracking was enacted to force mortgage servicers to 'give a borrower a clear answer on an application before the servicer may proceed with foreclosure.'"  *Id.* (quotation omitted).  Although Judge Koh's analysis focused on subsection (c), the same legislative history and underlying theory also apply to subsection (e), the provision raised by Plaintiff here.  Moreover, "California courts interpreting the dual tracking ban have used similarly broad language."  *Id.* (citing *Lueras*, 221 Cal. App. 4th at 86 n.14 ("The California Homeowner Bill of Rights prohibits, among other things, 'dual track' foreclosures, which occur when a servicer *continues foreclosure proceedings* while reviewing a homeowner's application for a loan modification." (emphasis added))).  The Court agrees with Judge Koh's reasoning and finds her conclusion the most likely one to be adopted by the California Supreme Court on this issue.  Consequently, the Court will not dismiss Plaintiff's dual-tracking claims related to the scheduling of the July 2013 sale.

Finally, Wells Fargo challenges Plaintiff's claims related to his May 2015 application, in which he alleges Wells Fargo violated (1) sections 2924.9 and 2924.10 by failing to acknowledge his application, (2) section 2923.7 by failing to provide a SPOC, and (3) section 2923.6 by recording a notice of sale on June 12, 2015.  WF Mot. at 10 (citing FAC ¶¶ 113-15).  Wells Fargo

United States District Court
Northern District of California

1   contends these provisions of HBOR do not apply because they are only applicable where a

2   borrower who has already been evaluated can demonstrate and document a material change in his

3   or her financial circumstances, which Plaintiff has not done. *Id.* (citing Cal. Civ. Code §

4   2923.6(g) [("In order to minimize the risk of borrowers submitting multiple applications . . . for

5   the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from

6   borrowers who have already been evaluated . . . unless there has been a material change in the

7   borrower's financial circumstances since the date of the borrower's previous application and that

8   change is documented by the borrower and submitted to the mortgage servicer.")]).  Plaintiff's

9   allegations on this front are conclusory.  *See* FAC ¶ 111 (alleging "Plaintiff submitted a

10  'complete' Request for Mortgage Assistance . . . with documented 'material change in income'"

11  but without descriptions as to what those changes were).  Accordingly, the Court will dismiss

12  Plaintiff's negligence claims related to the 2015 application, with leave to amend.[23]

13       In all other respects, the Court DENIES Wells Fargo's Motion as to Plaintiff's negligence

14  claim.

15  **C.    Rosenthal Act (Second Cause of Action)**

16       Wells Fargo also challenges Plaintiff's Rosenthal Act claims on various grounds, including

17  that it is barred by the statute of limitations and does not allege sufficient foundational facts to

18  meet Rule 9(b)'s heightened pleading standards.   WF Mot. at 12.

19       The Rosenthal Act, also known as California's Fair Debt Collection Practices Act, is

20  intended "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the

21  collection of consumer debts and to require debtors to act fairly in entering into and honoring such

22

23  _____

[23] To the extent Wells Fargo argues Plaintiff exhausted the loan modification process and thus
24  should not be permitted to maintain a negligence claim related to his 2015 application, the Court
    declines to dismiss this claim on such grounds.  In particular, taking Plaintiff's allegations in the
25  light most favorable to him, he has alleged facts indicating he was never able to exhaust the loan
    modification process.  Although Wells Fargo notes that it reviewed Plaintiff's status and
26  application in the October 2014-May 2015 ADR review, it provides no facts about what happened
    during that process or the extent of the review.  In any event, a motion to dismiss under Rule
27  12(b)(6) is aimed at testing the sufficiency of Plaintiff's pleading, and at this point, Plaintiff's
    negligence claims related to the 2015 application are too conclusory—thus if Plaintiff is able to
28  assert such claims, he may do so in an amended complaint.

debts[.]" Cal. Civ. Code § 1788.1(b).[24]   Numerous courts, however, have held that "the mere allegation that a defendant foreclosed on a deed of trust does not implicate the Rosenthal Act—provided the lender's conduct falls within the scope of an ordinary foreclosure proceeding." *Petrovich v. Ocwen Loan Servicing, LLC*, 2015 WL 3561821, at *7 (N.D. Cal. June 8, 2015) (citing *Reyes v. Wells Fargo Bank, N.A.*, 2011 WL 30759 at *19 (N.D. Cal. Jan. 3, 2011) (collecting cases)).  That said, "[w]here the claim arises out of debt collection activities beyond the scope of the ordinary foreclosure process, . . . a remedy may be available under the Rosenthal Act." *Reyes*, 2011 WL 30759, at *19 (quotation omitted)).  Furthermore, as the Court noted in its previous Order, if Plaintiff intends to assert a Rosenthal Act claim that sounds in fraud, he must comply with Rule 9(b)'s heightened pleading standards.  Order re: First Mots. to Dismiss at 23.

Wells Fargo argues Plaintiff's Rosenthal Act claim is barred by the statute of limitations. WF Mot. at 12.  Specifically, Plaintiff alleges Wells Fargo made false representations when an unnamed employee promised Plaintiff that if he made three trial payments the foreclosure would be postponed and that Wells Fargo still foreclosed.  FAC ¶ 122.  Wells Fargo contends that "[t]o the extent Plaintiff claims Wells Fargo breached its alleged promise, this breach would have become apparent in early 2008 when Wells Fargo allegedly rejected Plaintiff's payment, did not modify the Loan, and foreclosed (the foreclosure was rescinded due to Plaintiff's bankruptcy on the same day."  WF Mot. at 12 (citing RJN, Ex. B (notice of rescission)).  As the Rosenthal Act has a one year statute of limitations, Wells Fargo contends Plaintiff's claim is time-barred.  *Id.*; Cal. Civ. Code § 1788.30(f) ("Any action under this section may be brought in any appropriate court of competent jurisdiction in an individual capacity only, within one year from the date of the occurrence of the violation.").  Plaintiff did not respond to this argument.

In any event, Wells Fargo has also argued that Plaintiff's allegations are unclear and fail to meet the heightened pleading standards under Rule 9.  Thus, while it appears that Wells Fargo is

---

[24] In addition to providing its own standards governing debt-collection practices, the Rosenthal Act also provides that, with limited exceptions, "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of" the Federal Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§ 1692b-1692j.  *See* Cal. Civ. Code § 1788.17.  Plaintiff does not appear to base his Rosenthal Act claim on FDCPA violations.

United States District Court
Northern District of California

correct that Plaintiff is basing his claims on events in 2008, ultimately the allegations are unclear. Given the lack of clarity, the Court finds it premature to finally dismiss these claims, particularly as courts have found that the "continuing violation doctrine" applies to Rosenthal Act cases. *Huy Thanh Vo v. Nelson & Kennard*, 931 F. Supp. 2d 1080, 1087 (E.D. Cal. 2013) (citing *Komarova v. National Credit Acceptance, Inc.*, 175 Cal. App. 4th 324 (2009)). "Under this doctrine, when allegedly unlawful acts constitute a 'continuing pattern and course of conduct,' then suit regarding the entire course of conduct is timely if a complaint is filed within one year of the most recent violation." *Id.* (quoting *Komarova*, 175 Cal. App. 4th at 343-44).[25] Plaintiff appears to allege a continuing violation related to the payments made in 2008 as he alleges that "[t]o date Plaintiff's payments have not been credited to his account, nor returned to him." FAC ¶ 123. However, as Wells Fargo points out, Plaintiff has not adequately alleged the "the who, what, when, where, and how" of the alleged misrepresentations a Wells Fargo employee made to induce Plaintiff to make the payments. *Yess*, 317 F.3d at 1106. The Court will give Plaintiff one more opportunity to amend his Rosenthal Act claim. However, as the Court has previously warned Plaintiff of this exact pleading problem as related to this claim, *see* Order re: First Mots. to Dismiss at 22-23, he is forewarned that this opportunity to amend shall be his last for this claim.[26]

**D.      Breach of Contract and Breach of Good Faith and Fair Dealing Claims (Third and Fourth Causes of Action)**

Finally, Wells Fargo urges the Court to dismiss Plaintiff's breach of contract and breach of good faith and fair dealing claims. WF Mot. at 13-14. It challenges these claims on the following grounds: (1) Plaintiff himself is in breach of the DOT[27] as he is in default; (2) he alleges no

---

[25] "Application of the doctrine . . . [is] entirely consistent with the Rosenthal Act's broad remedial purpose of protecting consumers." *Komarova*, 175 Cal. App. 4th at 344 (quoting *Joseph v. J.J. Mac Intyre Cos., L.L.C.*, 281 F. Supp. 2d 1156, 1162 (N.D. Cal. 2003)).

[26] The Court also notes Plaintiff's Opposition briefing regarding his Rosenthal Act claim refers to a number of legal theories and facts seemingly not raised in his FAC. The Court's grant of leave to amend and to add specificity is not an invitation to add new claims or more prolix allegations. Plaintiff should endeavor to say plainly and simply what happened to him, when, and who was involved.

[27] "The deed of trust constitutes a contract between the trustor and the beneficiary, with the trustee acting as agent for both." *Harris v. Wells Fargo Bank, N.A.*, 2013 WL 1820003, at *8 (N.D. Cal.

1    breach; and (3) he alleges no damages as a result of any breach. *Id.*

2         The covenant of good faith and fair dealing is implied in every contract and prevents one

3    party from "unfairly frustrating the other party's right to receive the benefits" of the contract. *See*

4    *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (2000) (emphasis omitted). To allege a claim for

5    breach of the covenant of good faith and fair dealing, a plaintiff must allege the following

6    elements: (1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or

7    substantially all of the things that the contract require him to do or that he was excused from

8    having to do; (3) all conditions required for the defendant's performance had occurred; (4) the

9    defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and

10   (5) the defendant's conduct harmed the plaintiff. *Cruz v. Aurora Loan Servs. LLC*, 2015 WL

11   2089963, at *7 (N.D. Cal. May 5, 2015) (citing Judicial Counsel of California Civil Jury

12   Instructions § 325 (2011); *Oculus Innovative Sciences, Inc. v. Nofil Corp.*, 2007 WL 2600746, at

13   *4 (N.D. Cal. Sept. 10, 2007)). "The covenant of good faith and fair dealing is implied to protect

14   the express covenants of a contract, not a general public policy interest indirectly tied to the

15   contract's purpose." *Castaneda v. Wells Fargo Home Mortg.*, 2016 WL 777862, at *6 (C.D. Cal.

16   Feb. 26, 2016) (citing *Racine & Laramie, Ltd. v. Cal. Dep't of Parks & Recreation*, 11 Cal. App.

17   4th 1026, 1031 (1992)). "The covenant is implied as a supplement to the express contractual

18   covenants 'to prevent a contracting party from engaging in conduct' that does not technically

19   breach the express covenants, but otherwise 'frustrates the other party's rights to the benefits of

20   the contract.'" *Id.* (quoting *Racine & Laramie*, 11 Cal. App. 4th at 1028).

21        The elements of a claim for breach of contract are (1) existence of the contract; (2)

22   performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4)

23   damages. *Petrovich*, 2015 WL 3561821, at *3 (citing *First Commercial Mortg. Co. v. Reece*, 89

24   Cal. App. 4th 731, 745 (2001)). "A written contract may be pleaded either by its terms—set out

25   verbatim in the complaint or a copy of the contract attached to the complaint and incorporated

26   therein by reference—or by its legal effect." *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th

27
_____

28   Apr. 30, 2013) (citing *Hatch v. Collins*, 225 Cal. App. 3d 1104, 1111 (1990)).

United States District Court
Northern District of California

1457, 1489 (2006) (citation omitted).  "In order to plead a contract by its legal effect, plaintiff

must 'allege the substance of its relevant terms. This is more difficult, for it requires a careful

analysis of the instrument, comprehensiveness in statement, and avoidance of legal conclusions.'"

*Id.* (quotation omitted).

As to Wells Fargo's first argument that Plaintiff has not alleged he performed his

obligations under the DOT, Plaintiff has in fact alleged that he "has performed all obligations to

defendants except those obligations plaintiff was prevented or excused from performing."  FAC ¶

130.  Courts have found this sufficient to state a claim.  *See, e.g.*, *Castro v. Wells Fargo Bank,*

*N.A.*, 2012 WL 2077294, at *1 (C.D. Cal. June 6, 2012).  The Court likewise finds it sufficient

given Plaintiff's allegations that Wells Fargo prevented him from performing his obligations and

that he was excused from performing because Wells Fargo and HSBC allegedly did not have a

beneficial interest in Plaintiff's Loan.[28]

On the elements of breach and damages, however, Plaintiff's claims disintegrate.  His

breach of contract claim is premised on the fact that Wells Fargo breached the DOT "by failing to

provide a copy of the Note with all modifications thereto, as required by Civil Code section

2943[(b)(1)]" when he requested it and also failing provide him the identity of the Note Holder.

FAC ¶¶ 129, 132.  Wells Fargo points out, however, that:

> Under Civil Code section 2943(b), a beneficiary must provide a
> copy of the note or other evidence of indebtedness with any
> modification, along with a beneficiary statement, within 21 days of
> receipt of a written demand. Cal. Civ. Code § 2943(b)(1). However,
> such a request may only be made before the recording of a notice of
> default or within two months afterwards. Cal. Civ. Code §
> 2943(b)(2). Here, a notice of default was first recorded in 2008, and
> the operative notice of default was recorded in 2010. RJN, Exs. A,
> C. Meanwhile, Plaintiff did not make a written request until 2012.
> Therefore, Plaintiff is not entitled to a copy of the note under section
> 2943.

WF Mot. at 13.[29]  Plaintiff does not respond to this argument.  Additionally, Wells Fargo points

---

[28] Plaintiff's Opposition includes many additional reasons why he believes he is excused from
performing; however, for purposes of this Order, the Court only addresses the allegations made in
his FAC.

[29] "'[A]ll contracts necessarily and implicitly incorporate all applicable laws in existence when the
contract is entered."  *Builders Bank v. Oreland, LLC*, 2015 WL 1383308, at *3 n.1 (C.D. Cal. Mar.

out that nothing in the DOT or Note entitle Plaintiff to request a copy of the Note.  *Id.*

It is unclear what specific contractual provision Plaintiff alleges Wells Fargo has breached or how Wells Fargo's actions have deprived Plaintiff of the benefits of the contract.  His allegations are cursory and conclusory for these claims, for instance stating that Wells Fargo "fail[ed] to make necessary timely corrections of valid errors, [and] fail[ed] to provide monthly statements" without further detail about what "valid errors" he is referring to, what he considers "timely" and why, or when Wells Fargo allegedly failed to provide monthly statements.  *See* FAC ¶ 140.  Additionally, while Plaintiff alleges he is harmed because he "has been unable to determine the owner of the current investor on the Note, thereby preventing [him] from contacting the Note holder to discuss possible modifications or refinance options[,]" Plaintiff does not explain how that harm is connected to a particular breach of the DOT or frustration of its terms.

Thus, based on the allegations in Plaintiff's FAC, Plaintiff has not presently alleged plausible facts supporting the elements of a breach of contract claim or a breach of the covenant of good faith and fair dealing.  The Court previously admonished Plaintiff about the lack of clarity of his good faith and fair dealing claim, *see* Order re: First Mots. to Dismiss at 21; thus, while the Court will give Plaintiff leave to amend these claims, he is admonished that this will be his last opportunity to do so.

## CONCLUSION

Based on the foregoing analysis, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motions to Dismiss as follows:

1)  Defendants' Motions to Dismiss Plaintiff's fifth through ninth causes of action (fraud, declaratory relief, accounting, rescission/restitution, and quiet title claims) on the basis of lack of "standing" are DENIED.

2)  However, the Court GRANTS WITH PREJUDICE Defendants' Motions to Dismiss Plaintiff's robo-signing claims to the extent they challenge Defendants' basis for

23, 2015) (quoting *300 DeHaro St. Investors v. Dep't of Hous. & Cmty. Dev.*, 161 Cal. App. 4th 1240, 1256 (2008)).

United States District Court
Northern District of California

foreclosure.

3)  As to Plaintiff's first cause of action for negligence against Wells Fargo, the Court DENIES Wells Fargo's Motion to Dismiss, except for Plaintiff's allegations as to his 2015 application, which at present are too conclusory to state a claim for relief.

4)  As to Plaintiff's second cause of action for violations of the Rosenthal Act against Wells Fargo and HSBC, the Court GRANTS their Motion to Dismiss WITH LEAVE TO AMEND.

5)  As to Plaintiff's third cause of action for breach of contract against Wells Fargo, the Court GRANTS Wells Fargo's Motion to Dismiss WITH LEAVE TO AMEND.

6)  As to Plaintiff's fourth cause of action for breach of the covenant of good faith and fair dealing against Wells Fargo, the Court GRANTS Wells Fargo's Motion to Dismiss WITH LEAVE TO AMEND.

7)  As to Plaintiff's fifth cause of action for fraud against all Defendants, the Court GRANTS First American and HSBC's Motion to Dismiss WITH LEAVE TO AMEND, but DENIES Wells Fargo's Motion to Dismiss.

8)  As to Plaintiff's sixth cause of action for declaratory relief against all Defendants, the Court DENIES Defendants' Motions to Dismiss; however, the Court DISMISSES Plaintiff's declaratory relief allegations specifically referencing California's Commercial Code WITHOUT LEAVE TO AMEND.

9)  As to Plaintiff's seventh cause of action for accounting against Wells Fargo and HSBC, the Court GRANTS their Motion to Dismiss with LEAVE TO AMEND.

10) As to Plaintiff's eighth cause of action for rescission and restitution against Wells Fargo and HSBC, the Court GRANTS their Motion to Dismiss Plaintiff's Rescission claim to the extent it is based on rescinding the Note and DOT, but does so WITH LEAVE TO AMEND.  However, the Court DENIES their Motion as to Plaintiff's Restitution claims.

11) As to Plaintiff's ninth cause of action for quiet title against Wells Fargo and HSBC, the Court GRANTS their Motion to Dismiss WITH LEAVE TO AMEND.

United States District Court
Northern District of California

In granting Plaintiff leave to amend, the Court stresses three points.  First, the grant of leave to amend is not an invitation for Plaintiff to include more redundant and unnecessary facts; rather, Plaintiff should make an effort to focus his allegations on stating facts that support the elements of his claims and clearly articulating which Defendant did what and when.  Second, Plaintiff is not *required* to amend his claims, and indeed, there may be sensible reasons to narrow his claims further, particularly where a cause of action is a form of relief that is otherwise available to him through his other claims.  *See Vogan*, 2011 WL 5826016, at *8 (dismissing claims for relief that were duplicative and where plaintiff's other claims, if decided, would resolve the same issues).  Third, the Court will no longer accept any "amended" versions of the same document or "erratas"—even if Defendants do not object to these later filed documents, they muddle the record and create unnecessary work for the Court and the parties.

Finally, while Plaintiff's initial Complaint named as defendants Doe Credit Reporting Agencies, Nicole Miles-Todd (a Wells Fargo agent), Recorder Patrick O'Connell, John Kennerty (a Wells Fargo agent), Chet Sconyers (a Wells Fargo agent), and Hank Duong (a First American Agent), Compl. ¶ 4, he did not include these defendants in his FAC.  An amended complaint supersedes the original, and thus the latter is treated as non-existent.  *Valadez-Lopez v. Chertoff*, 656 F.3d 851, 857 (9th Cir. 2011).  Accordingly, Plaintiff's decision not to name the above defendants operates as a voluntary dismissal of his claims against them.  *Hoang Minh Tran v. Gore*, 2013 WL 5520065, at *4 (S.D. Cal. Sept. 30, 2013) ("Defendants not named in an amended complaint are no longer defendants in the action." (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992))).  Further, there is no indication Plaintiff has timely served these defendants under Rule 4(m).  Consequently, the Court DISMISSES these defendants WITHOUT PREJUDICE.

Plaintiff must file an amended complaint by May 31, 2016 if he intends to do so.

**IT IS SO ORDERED.**

Dated: April 29, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge