UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KAYODE POWELL,

                Plaintiff,

        v.

WELLS FARGO HOME MORTGAGE, et al.,

                Defendants.

Case No.  14-cv-04248-MEJ

**ORDER RE: MOTIONS TO DISMISS
AND MOTION TO FILE AMENDED
COMPLAINT**

Re: Dkt. Nos. 107, 109, 113

## INTRODUCTION

Pro se Plaintiff Kayode Powell ("Plaintiff") brings this case against Wells Fargo Bank, N.A. ("Wells Fargo"), HSBC USA, N.A. ("HSBC"), and First American Trustee Servicing Solutions, LLC ("First American") (collectively "Defendants"), challenging the foreclosure on real property located at 4770-4776 Tompkins Avenue, Oakland, California 94619 (the "Property"). *See* Second Am. Compl. ("SAC"), Dkt. No. 105. This Order follows two previous Orders on Defendants' Motions to Dismiss. *See* Order re: First Mots. to Dismiss, Dkt. No. 71; Order re: Second Mots. to Dismiss ("FAC Order"), Dkt. No. 100.

Three Motions are now pending before the Court. Wells Fargo and HSBC move to dismiss the SAC pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Wells Fargo & HSBC's Mot. ("WF Mot."), Dkt. No. 109. First American separately moves to dismiss the action under Rule 12(b)(6). First American Mot. ("FA Mot."), Dkt. No. 107. Plaintiff opposes both Motions in a single response. Pl.'s Opp'n, Dkt. No. 112. Finally, Plaintiff seeks leave to file a Third Amended Complaint ("TAC"). Pl.'s Mot., Dkt. No. 113. First American opposes Plaintiff's Motion (FA Opp'n, Dkt. No. 116), as does Wells Fargo and HSBC (WF Opp'n, Dkt. No. 118).

United States District Court
Northern District of California

Plaintiff did not file a reply.

The Court previously vacated the hearings on these matters (Dkt. No. 122) and ordered supplemental briefing (Dkt. No. 123).[1] Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court now issues the following Order.

## BACKGROUND

Around October 17, 2005, Plaintiff executed a DOT and Promissory Note for a mortgage loan (the "Loan") for the Property. SAC ¶ 7; *id.*, Ex. A (DOT) & Ex. B (promissory note). The DOT identifies Wells Fargo as the lender and beneficiary and National Title Insurance Company as the trustee. SAC ¶ 7. The original loan servicer was also Wells Fargo. SAC ¶ 7. On January 1, 2008, Wells Fargo substituted First American as trustee (the "Substitution of Trustee"). First American's Req. for Judicial Notice, Ex. F (Substitution of Trustee), Dkt. No. 9.[2] On January 9, 2009, Wells Fargo assigned the DOT to HSBC, as Trustee for Wells Fargo Home Equity Asset Backed Certificates, Series 2005-4, was recorded (the "Assignment"). SAC ¶ 20; Wells Fargo & HSBC's Req. for Judicial Notice ("WF RJN"), Ex. B (Assignment), Dkt. No. 13-1. Wells Fargo purports to be the Loan's servicer. *See* SAC ¶¶ 3, 56.

First American originally recorded a notice of default on December 3, 2008 on the ground

---

[1] The Court's Order for Supplemental Briefing asked Wells Fargo and HSBC to respond to Plaintiff's contention that Wells Fargo "'sold, assigned and transferred'" his Deed of Trust ("DOT") in 2005 and therefore did not have any "'beneficial interest and ownership in Plaintiff's mortgage on January 9, 2009 when [it] assigned again the DOT to HSBC[.]'" Order for Suppl. Br. at 1 (quoting Pl.'s Opp'n at 14; citing SAC, Ex. E). In response, Wells Fargo and HSBC explain the 2005 DOT on which Plaintiff bases his contention "is incomplete and not effective because it was not delivered to Wachovia" or recorded. Wells Fargo & HSBC's Suppl. Br. ("WF Suppl. Br.") at 2-3, Dkt. No. 126.

As part of his response, Plaintiff asks the Court to take judicial notice of seven documents. Pl.' RJN, Dkt. No. 129; *see id.*, Ex. A-G. Defendants do not oppose this request. The Court GRANTS Plaintiff's request as to Exhibits A through F, as these documents are public records. *See Lee v. Thornburg Mortg. Home Loans Inc.*, 2014 WL 4953966, at *4 (N.D. Cal. Sept. 29, 2014). The Court GRANTS Plaintiff's request as to Exhibit G, an online article, but it does so only to acknowledge this article was publicly available, not for the truth of its contents. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." (internal quotation marks omitted)).

[2] The Court previously granted First American, Wells Fargo, and HSBC's Requests for Judicial Notice as to the documents cited in this Order. *See* Dkt. No. 69 at 2-4.

1  that Plaintiff was behind on his payments.  WF RJN, Ex. C (Notice of Default).  This notice of

2  default led to a planned foreclosure on March 25, 2010, but that day, Plaintiff filed for bankruptcy;

3  consequently, First American rescinded the trustee's sale and trustee's deed on April 21, 2010.

4  *See id.*, Ex. D (Notice of Recession) & Ex. J (Bankruptcy Docket).  First American recorded a

5  second notice of default on December 1, 2010, indicating Plaintiff was in default as of February 1,

6  2008.  *Id.*, Ex. E.  Notices of sale were then recorded on March 2, 2011, July 2, 2012, and May 20,

7  2014.  *Id.*, Exs. F, G, H.  On June 10, 2014, First American sent Plaintiff a Notice of

8  Postponement of Trustee's Sale, which was postponed until September 8, 2014.  Dkt. No. 1-4 at 4.

9         Plaintiff filed this action in Alameda Superior Court around September 2, 2014, seeking

10  "equitable relief and damages precipitated by the events and acts of Defendants resulting in an

11  imminent threat of wrongful foreclosure."  Compl. ¶ 1, Dkt. No. 1-1.[3]  He asserted 17 claims: (1)

12  Negligence; (2) Declaratory Relief; (3) Temporary Restraining Order and Preliminary Injunction;

13  (4) Intentional Infliction of Emotional Distress ("IIED"); (5) Breach of Good Faith and Fair

14  Dealing; (6) Quiet Title; (7) Accounting; (8) violation of California's Rosenthal Act; (9) Fraud;

15  (10) Specific Performance by Promissory or Equitable Estoppel; (11) Breach of Written and Oral

16  Contract; (12) Quia Timet;[4] (13) Racketeering Influenced Corrupt Organizations Act; (14)

17  Rescission of Note and Deed of Trust and Restitution; (15) violation of California Civil Code

18  section 789.3; (16) violation of the Fair Credit Reporting Act; and (17) Discrimination.  *Id.* ¶¶ 35-

19  182.  Plaintiff simultaneously filed an ex parte motion for a temporary restraining order ("TRO"),

20  and on September 3, 2014, the Superior Court held a hearing on Plaintiff's request.  Dkt. No. 1-1

21  at 2-22.  The Superior Court subsequently issued a TRO, enjoining various defendants— including

22

23  ─────────────────────

24  [3] Plaintiff also named as defendants Fidelity National Title Insurance Company, Doe Credit
     Reporting Agencies, Nicole Miles-Todd (a Wells Fargo agent), Recorder Patrick O'Connell, John
     Kennerty (a Wells Fargo agent), Chet Sconyers (a Wells Fargo agent), and Hank Duong (a First

25  American Agent).  Compl. ¶ 4.  The Court granted Plaintiff and Fidelity National Title Insurance
     Company's Stipulation for Dismissal on December 24, 2014. Dkt. No. 31.  The Court previously

26  dismissed the other Defendants under Rule 4(m) as there was no indication they have been served.
     *See* FAC Order.

27  [4] "Quia timet is the right to be protected against anticipated future injury that cannot be prevented
     by the present action."  *Robinson v. United States*, 586 F.3d 683, 687 (9th Cir. 2009) (internal

28  quotation marks omitted).

1   Wells Fargo, HSBC, and First American—from foreclosing on the Property.  Dkt. No. 1-4 at 16-

2   20.  Additionally, the Superior Court issued an order to show cause, requiring Defendants to show

3   cause as to why they should not be enjoined from proceeding with the trustee's sale of the

4   Property.  *Id.*

5        On September 19, 2014, Wells Fargo and HSBC removed the action to this Court.  Not. of

6   Removal, Dkt. No. 1.  Wells Fargo and HSBC, along with First American, filed Motions to

7   Dismiss challenging Plaintiff's 17 claims on various grounds.  *See* Dkt. Nos. 8, 12.  The Court

8   granted in part and denied in part those motions and permitted Plaintiff leave to amend.  *See* Order

9   re: First Mots. to Dismiss.  Specifically, the Court denied Defendants' Motions to Dismiss

10  Plaintiff's Complaint on judicial estoppel grounds but otherwise dismissed all of Plaintiff's claims

11  with leave to amend, save for his Injunction and Quia Timet claims, which it dismissed with

12  prejudice.  *Id.*

13       Plaintiff then filed a 51-page First Amended Complaint ("FAC"), which alleged his loan

14  was bundled and pooled with other loans and sold in a manner that did not properly pass the chain

15  of title.  *See* FAC, Dkt. No. 78.  Plaintiff alleged several claims related to this "botched"

16  securitization, which Defendants moved to dismiss in addition to other related claims.  Mots. to

17  Dismiss, Dkt. Nos. 79, 85.  The Court denied Defendants' Motions to Dismiss Plaintiff's fifth

18  through ninth causes of action (fraud, declaratory relief, accounting, rescission/restitution, and

19  quiet title claims) where they argued Plaintiff lacked "standing" in light of the California Supreme

20  Court's decision in *Yvanova v. New Century Mortgage Corp.*, 62 Cal. 4th 919 (2016).  *See* FAC

21  Order.

22       In his SAC, Plaintiff now asserts six causes of action: (1) Negligence against Wells Fargo,

23  HSBC, and First American; (2) violation of California's Rosenthal Fair Debt Collection Act

24  against Wells Fargo and First American; (3) Breach of Contract against Wells Fargo and HSBC;

25  (4) Fraud against Wells Fargo and HSBC; (5) Declaratory Relief against all Defendants; and (6)

26  Rescission and Restitution against Wells Fargo and HSBC.  *See* SAC.[5]  Plaintiff's SAC describes

27

28  ─────────────────
[5] Plaintiff has dismissed his federal claims, which formed the original basis for Wells Fargo and
HSBC's removal.  *See* Not. of Removal ¶ 5, Dkt. No. 1.  However, the Court retains jurisdiction

United States District Court
Northern District of California

4

his "mortgage securitization investigation" and audit from which he alleges he discovered that Wells Fargo bundled his Loan in a pool with other mortgages and sold without the required effective assignment and endorsement of the DOT, leading to the "failed securitization of Plaintiff's mortgage loan in December 2005" and rendering the Assignment and Substitution of Trustee void. *See, e.g.*, *id.* ¶¶ 8-38, 51.

Additionally, Plaintiff seeks leave to amend to file another complaint to add additional causes of action for (1) Wrongful Foreclosure based on the "wrong entity foreclosing" and "invalid substitution of trustee"; (2) a violation of California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; and (3) a violation of the Real Estate Settlement Practices Act ("RESPA"). *See* Proposed TAC, Dkt. No. 113-1.

## LEGAL STANDARDS

### A.     Motion to Dismiss under Rule 12(b)(6)

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550

---

over this case as the SAC indicates that the parties are diverse (SAC ¶¶ 1-5) and the amount in controversy is over $75,000 (*id.* ¶ 6), *see* 28 U.S.C. § 1332(a).  In any event, the Court may exercise supplemental jurisdiction over his remaining state law claims, 28 U.S.C. § 1367(c)(3). Given the multiple rounds of briefing the Court has already entertained in this matter and the fact that it has already been pending for approximately one year, the Court finds that remand at this stage in the litigation would not serve the principles of "judicial economy, convenience, fairness, and comity," and therefore exercises its discretion to entertain Plaintiff's state law claims.  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

United States District Court
Northern District of California

U.S. at 557).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).[6]

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff.  *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).  In addition, courts may consider documents attached to the complaint.  *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted).  However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**B.     Motion to Amend under Rule 15**

Federal Rule of Civil Procedure 15 provides that a party may amend its pleading once as a matter of course within (1) 21 days after serving the pleading or (2) 21 days after the earlier of service of a responsive pleading or service of a Rule 12(b) motion.  Fed. R. Civ. P. 15(a)(1).  Outside of this timeframe, "a party may amend its pleading only with the opposing party's written

---

[6] Plaintiff cites pre-*Twombly* case law for the proposition that "[a] complaint should not be dismissed for failure to state a claim unless it appears ***beyond doubt*** that the plaintiff can prove no set of facts in support of her claim which would entitle to relief."  Pl.'s Opp'n at 5 (emphasis in original; citation omitted).  For clarification, *Twombly* now provides the applicable standard on a motion to dismiss.  *See Iqbal*, 556 U.S. at 678.

consent or the court's leave," though the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  "Although the rule should be interpreted with 'extreme liberality,' leave to amend is not to be granted automatically."  *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citation omitted).

A court considers five factors in determining whether to grant leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint."  *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (quotation omitted).  "[T]he consideration of prejudice to the opposing party that carries the greatest weight.  Prejudice is the touchstone of the inquiry under Rule 15(a)."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citation omitted).  "Absent prejudice, or a strong showing of any of the remaining [] factors, there exists a *presumption* under *Rule 15(a)* in favor of granting leave to amend."  *Id.* at 1052 (emphasis in original).  "Denials of motions for leave to amend have been reversed when lacking a contemporaneous specific finding by the district court of prejudice to the opposing party, bad faith by the moving party, or futility of amendment."  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186-87 (9th Cir. 1987).

That said, "[a] motion for leave to amend may be denied if it appears to be futile or legally insufficient.  However, a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim[.]"  *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citations omitted).  The standard to be applied is identical to that for failure to state a claim under Rule 12(b)(6).  *Id.*

Finally, courts have broader discretion in denying motions for leave to amend after leave to amend has already been granted.  *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (affirming district court's denial of leave to amend when the party knew of the factual basis for the amendment prior to a previous amendment).

## DISCUSSION

Given the relatedness of the inquiries between Rule 15's futility analysis and the 12(b)(6) standard, the Court considers Defendants' Motions to Dismiss and Plaintiff's Motion to file the

United States District Court
Northern District of California

proposed TAC together.  The Court begins with Defendant's challenges to the SAC and addresses each of the individual causes of action, then turns to Plaintiff's proposed TAC and the new causes of action he seeks to assert.

**A.       Standing to Challenge Securitization of Plaintiff's Loan**

A theory underlying several of Plaintiff's claims and the new claims in his proposed TAC is that the Loan was improperly securitized and not timely assigned from Wells Fargo to HSBC under the contract governing the securitization process.  Specifically, Plaintiff alleges a third-party forensic investigation[7] of the securitization of his Loan uncovered grounds for finding that the Assignment of Plaintiff's Loan and DOT is void.  Among other things, Plaintiff alleges Wells Fargo bundled his Loan in a pool with similar residential mortgages in its portfolio and irrevocably sold it for full value received on December 1, 2005 to Wells Fargo Asset Securities Corporation ("WFASC") pursuant to a binding Mortgage Loan Purchase Agreement (the "MLPA").  SAC ¶ 9.  But Plaintiff alleges this sale was made without the required effective assignment of the DOT and concurrent endorsement of the underlying original note from Wells Fargo to WFASC.  *Id.*  He alleges WFASC then established a special purposed vehicle ("SPV") as

---

[7] Wells Fargo and HSBC note:

> As courts have recognized, these "forensic loan audits" are often sold by unscrupulous professionals seeking to prey on vulnerable homeowners in their hour of need. As the United States District Court for the District of Nevada has stated, "[i]n exchange for an upfront fee . . . so-called forensic loan auditors . . . offer to review [] mortgage loan documents to determine whether [the] lender complied with state and federal mortgage lending laws." *Hakimi v. Bank of New York Mellon*, 2015 WL 2097872, at *4 n.2 (D. Nev. May 5, 2015); see also *Subramani v. Wells Fa[r]go Bank, N.A.*, 2015 WL 1138449, at *3-5 (N.D. Cal. Mar. 13, 2015) (sustaining objection to loan auditor "expert" on grounds that declarant's opinions were conclusory and unconnected to ths subject loan). The Federal Trade Commission has recognized that these "forensic loan audits" are a technique used by "[f]raudulent foreclosure 'rescue' professionals [who] use half-truths and outright lies to sell services that promise relief to homeowners in distress." *Hakimi*, 2015 WL 2097872, at *4 fn.2 (citing The Federal Trade Commission, *Forensic Mortgage Loan Audit Scams: A New Twist on Foreclosure Rescue Fraud*, FTC Consumer Information (May 7, 2010), available at http://www.ftc.gov/bcp/edu/pubs/consumer/alerts/alt177.shtm).

WF Mot. at 16 n.3.

a mortgage-backed securities trust ("MBS Trust") under a pooling and servicing agreement ("PSA") dated December 22, 2005. *Id.* ¶¶ 10-11. The PSA includes the MLPA. *Id.* WFASC then sold and securitized each of the pooled mortgage loans (including Plaintiff's Loan) into the Wells Fargo Home Equity Asset-Backed Securities 2004-4 Trust on December 22, 2005 in exchange for mortgage-backed securities certificates issued as bond certificates by the MBS Trust. *Id.* ¶ 12. Plaintiff alleges HSBC is the trustee for the benefit of the certificate holders, i.e., the investors, of the Wells Fargo Home Equity Asset-Backed Securities 2004-4 Trust and is the fiduciary owner of the securitized mortgage loans backing the securities certificates. *Id.* Plaintiff contends this sale was also made without the required assignment of the DOT or the endorsement of the underlying note, and further the endorsement of Plaintiff's Note and the Assignment of the DOT from WFASC to HSBC did not occur before December 22, 2005 or 90 days thereafter, the "absolute deadline" to do so under the governing PSA. *Id.* ¶¶ 12-13; 18 ("The governing PSA . . . specifically prohibits HSBC (or any of its agents, such as Wells Fargo) to transfer or accept any belated mortgage loan transfer and assignment after the aforementioned time," i.e., the December 22, 2005 deadline); 19 (New York trust law applies) 20-21. Plaintiff contends the Assignment is therefore void (*id.* ¶ 25), and, consequently, Wells Fargo "was not a valid beneficiary and had no power to make the assignment in the first place as its beneficial interest in Plaintiff's DOT was extinguished in December 2005, when it sold the loan to the secondary market for securitization" (*id.* ¶ 42). He alleges the "certificate-holders/investors in the MBS Trust have repeatedly refused to ratify the ultra vires acts" of Wells Fargo and HSBC "in accepting the purportedly late assignment of Plaintiff's defective and reportedly defaulted loan[.]" *Id.* ¶ 26. Consequently, the substitution of First American was not valid because Wells Fargo had no power to make that substitution. *Id.* ¶¶ 51-52. As such, First American was not the "authorized agent of the true trustee, or mortgagee and present beneficiary in the DOT" and thus had no power to "initiate foreclosure proceedings and conduct the foreclosure sale of Plaintiff's home[.]" *Id.* ¶¶ 147, 150.

Plaintiff contends the Assignment is void that under governing New York trust law and he may challenge the Assignment and resulting foreclosure notices. Defendants argue the Assignment is merely void, not voidable; accordingly, they argue Plaintiff lacks standing to pursue

9

claims based on defects related to that Assignment.

Wells Fargo argues that "both New York state and federal courts and California state and federal courts, (including the Ninth Circuit Court of Appeals) have all concluded that such an allegedly late assignment is only voidable under New York trust law." WF Mot. at 1.  First American likewise argues that "under New York law an untimely assignment to a securitized trust made after the trust's closing date is merely voidable" and thus Plaintiff "lacks standing to assert his claims[.]" FA Mot. at 6.[8]  Wells Fargo also argues that Plaintiff's allegations that the trust beneficiaries have refused to ratify the allegedly late Assignment does not save him "because if the Assignment is voidable, not void, then Plaintiff no longer has standing to assert his claim regarding the Assignment."  WF Reply at 6 (citing *Yvanova*, 62 Cal. 4th at 936), Dkt. No. 119.  "If the Assignment is voidable, then the proper party to challenge the allegedly unauthorized act is not Plaintiff, but the securitized trust beneficiary.  Plaintiff cannot assert claims on [the beneficiary's] behalf." *Id.*

At this point, the issue is whether Plaintiff has standing to challenge any defects in the Assignment and transfer of his loan.  The California Supreme Court has recently held "a wrongful foreclosure plaintiff has standing to claim the foreclosing entity's purported authority to order a trustee's sale was based on a void assignment of the note and deed of trust." *Yvanova*, 62 Cal. 4th at 939; *see id.* at 935 ("If a purported assignment necessary to the chain by which the foreclosing entity claims that power is absolutely void, meaning of no legal force or effect whatsoever, . . . the foreclosing entity has acted without legal authority by pursuing a trustee's sale, and such an unauthorized sale constitutes a wrongful foreclosure.").  However, "[w]hen an assignment is merely voidable, the power to ratify or avoid the transaction lies solely with the parties to the assignment; the transaction is not void unless and until one of the parties takes steps to make it so. A borrower who challenges a foreclosure on the ground that an assignment to the foreclosing party bore defects rendering it voidable could thus be said to assert an interest belonging solely to the

---

[8] There is no dispute between the parties that New York trust law applies to this determination. *See* WF Mot. at 1; FA Mot. at 1; Pl.'s Opp'n at 3; SAC ¶¶ 19, 21 (alleging the "Assignment of DOT is also <u>VOID</u> in accordance with the trust laws of the State of New York governing the operative PSA.").

United States District Court
Northern District of California

1    parties to the assignment rather than to herself." *Id.* at 936.  As this Court previously recognized,

2    *Yvanova* did not decide "the question of whether a postclosing date transfer . . . is void or merely

3    voidable." *Id.* at 931.  To determine whether Plaintiff has standing, the Court must consider

4    whether he alleges plausible facts showing the challenged Assignment is void.   If it is merely

5    voidable, Plaintiff lacks standing to bring claims based on defects with that Assignment.

6        The Court previously held Plaintiff had alleged specific facts challenging Defendants'

7    authority to initiate foreclosure on the Property.  The Court identified allegations the Assignment

8    of Plaintiff's Loan was void.  FAC Order at 13-15; *see Lundy v. Selene Fin., LP*, 2016 WL

9    1059423, at *13 (N.D. Cal. Mar. 17, 2016*)* (finding a specific factual basis for the plaintiff's

10   contention that defendants lacked authority to initiate the foreclosure where the plaintiff alleged

11   the Assignment underlying the foreclosure was void because the original assignee of the deed of

12   trust had transferred it to another entity before its assets were subsequently acquired by the

13   defendants); *see also Ohlendorf v. Am. Home Mortg. Serv.*, 279 F.R.D. 575, 583 (E.D. Cal. 2010)

14   (plaintiff stated a claim against defendants "that they [we]re not proper parties to foreclose" and

15   that "the process of recording assignments with backdated effective dates may be improper, and

16   thereby taint the notice of default.").  While the Court accepts Plaintiff plausible factual

17   allegations as true when reviewing a motion to dismiss, it is not required to accept his legal

18   conclusions. *Harris v. Rand*, 682 F.3d 846, 850 (9th Cir. 2012).  It is the strength of Plaintiff's

19   legal conclusions that Defendants primarily challenge at this point.

20       Having reviewed Plaintiff's SAC, proposed TAC, and the relevant legal authorities, the

21   Court now concludes Plaintiff lacks standing to pursue claims based on defects in the Assignment

22   of his Loan as that Assignment is only voidable, not void, under New York law.  Many courts

23   interpreting *Yvanova* and considering issues very similar to the one here have come to the same

24   conclusion.  Beginning with an analysis of the applicable law, these courts have found that

25   "[u]nder New York law, unauthorized acts by trustees may generally be approved, or ratified, by

26   the trust beneficiaries." *Yhudai v. Impac Funding Corp.*, 1 Cal. App. 5th 1252, 1259 (2016),

27   *review denied* (Oct. 26, 2016) (citing *Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 88 (2d

28   Cir. 2014)); *Saterbak v. JPMorgan Chase Bank, N.A.*, 245 Cal. App. 4th 808, 815 (2016), *reh'g*

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1   *denied* (Apr. 11, 2016), *review denied* (July 13, 2016) (citing *Rajamin*, 757 F.3d at 88-89 ("the

2   weight of New York authority is contrary to plaintiffs' contention that any failure to comply with

3   the terms of the PSAs rendered defendants' acquisition of plaintiffs' loans and mortgages void as a

4   matter of trust law"; "an unauthorized act by the trustee is not void but merely voidable by the

5   beneficiary")).  Consequently, "both the Ninth Circuit and the California Court of Appeal have

6   held an act in violation of a trust agreement, such as a PSA, is voidable, not void, under New York

7   law." *Jacinto v. Ditech Fin. LLC*, 2016 WL 6248901, at *3 (N.D. Cal. Oct. 26, 2016) (citing

8   *Morgan v. Aurora Loan Servs., LLC*, 646 F. App'x 546, 550 (9th Cir. 2016) (holding "act in

9   violation of a trust agreement is voidable—not void—under New York law"); *Yhudai*, 1 Cal. App.

10  5th at 1259 (holding "a post-closing assignment of a loan into an investment trust that violates the

11  terms of the trust renders the assignment voidable, not void, under New York law"); *Saterbak*, 245

12  Cal. App. 4th at 815 (holding assignment of loan to securitized trust after closing date was

13  "merely voidable" under New York law)).

14          While Plaintiff argues beneficiaries of the trust refuse to ratify the agreement or that it is

15  impossible for them to do so, his allegations do not plausibly support this argument.  The SAC

16  itself does not offer specific details as to this theory.  Moreover, where Plaintiff's Opposition

17  purports to explain why ratification is impossible, the Opposition presents a series of seemingly

18  disconnected events that Plaintiff contends makes the Assignment void.  *See* Pl.'s Opp'n at 4.  The

19  Court has tried to understand Plaintiff's arguments and connect them with actual allegations in

20  Plaintiff's SAC, but is unable to do so.  Plaintiff's proposed TAC also provides allegations about

21  two lawsuits apparently brought by the federal government against HSBC and Wells Fargo that

22  somehow resulted in selling loans to Bank of New York Mellon, which Plaintiff alleges makes it

23  "too late for anyone to ratify the actions[.]"  Prop. TAC ¶¶ 8-11[9], 188-90.  It is unclear which

24  lawsuits Plaintiff is referring to as he does not provide citations or copies of pleadings, but in any

25  event Plaintiff does not adequately explain how those lawsuits in any way make the Assignment

26  and transfer of Plaintiff's loan void.  Ultimately, neither Plaintiff's SAC nor proposed TAC has

27  _____

28  [9] The proposed TAC mis-numbers several paragraphs; these paragraphs are available on ECF
    pages 3 and 4.

United States District Court
Northern District of California

1    alleged plausible facts to support this theory of failure to ratify or impossibility of ratification, and

2    his Opposition does not indicate he will be able to do so if granted leave to amend.  Plaintiff's

3    Opposition instead indicates he is attempting to ask this Court to re-interpret New York law on

4    this subject, rather than allege facts demonstrating that the Assignment is actually void.  *See id.* at

5    23-25; *see also Yvanova*, 62 Cal. 4th at 935 ("When an assignment is merely voidable, the power

6    to ratify or avoid the transaction lies solely with the parties to the assignment; the transaction is

7    not void *unless and until one of the parties takes steps to make it so*." (emphasis added)).  The

8    Court has reviewed the authorities Defendants cite, including the recent *Rajamin*, and finds no

9    reason to deviate from these authorities based on any of the arguments raised by Plaintiff's

10   Opposition, SAC, or proposed TAC.  Plaintiff has not alleged facts that, if true, demonstrate the

11   assignment of his Loan is void.

12         Similarly, Plaintiff's contention that Defendants lack authority because they cannot

13   provide all endorsements of the Note or because the Note and Deed of Trust were split during the

14   securitization process (*see* SAC ¶¶ 29-33) is not a viable theory of recovery.  California's non-

15   judicial foreclosure framework does not require the note and the deed of trust to be held by the

16   same party.  *See Jacinto*, 2016 WL 6248901, at *4 ("[T]he procedures to be followed under

17   California's nonjudicial foreclosure law 'do not require that the note be in the possession of the

18   party initiating the foreclosure.'" (quoting *Debrunner v. Deutsche Bank Nat'l Tr. Co.*, 204 Cal.

19   App. 4th 433, 440 (2012)); *Orcilla v. Big Sur, Inc.*, 244 Cal. App. 4th 982, 1004 (2016) *reh'g*

20   *denied* (Mar. 11, 2016), *as modified* (Mar. 11, 2016) ("Given the exhaustive nature of the non-

21   judicial foreclosure scheme, we decline to read additional requirements into the non-judicial

22   foreclosure statute requiring the note and the deed of trust to be held by the same party. . . .

23   Accordingly, there is no legal basis for the [plaintiffs'] contention that the separation of the Note

24   and Deed of Trust prevented [the defendant] from foreclosing on their property.")); *see also*

25   *Sepehry-Fard v. Nationstar Mortg. LLC*, 2015 WL 332202, at *17 (N.D. Cal. Jan. 26, 2015) ("It is

26   well-established that under California law, there is no requirement that the trustee have possession

27   of the physical promissory note before initiating foreclosure proceedings. Indeed. . . . a 'produce

28   the note' theory of liability has been consistently rejected by district courts in California."

(collecting cases)).

Accordingly, while several of Plaintiff's claims discuss defects related the Assignment and transfer of Plaintiff's loan, ultimately the Court has no grounds for finding Plaintiff has standing to challenge those actions. To the extent Plaintiff's claims against any of the Defendants rely on those allegations, they are dismissed. *See Yhudai*, 1 Cal. App. 4th at 1261. The Court will address those specific claims below. *See Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (stating that a Rule 12(b)(6) dismissal is proper if there is "the absence of sufficient facts alleged under a cognizable legal theory" (quotation omitted)).

### 2.    Negligence Claim (First Cause of Action)

All Defendants challenge Plaintiff's negligence claim. To state a claim for negligence, a plaintiff must allege: (1) the defendant's legal duty of care to the plaintiff, (2) breach of that duty, (3) causation, and (4) resulting injury to the plaintiff. *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 500 (2001).[10]

### i.    Claim against Wells Fargo/HSBC

The Court previously held Plaintiff's FAC adequately details how Wells Fargo mishandled the servicing of his Loan and his loan modification, which was sufficient to state a negligence claim. Indeed, "[i]n cases where courts have found a plaintiff stated a claim for negligence, the allegations showed that a defendant did more than deny a request to modify a loan. Rather, the plaintiffs alleged that defendants mishandled documents or engaged in some other form of misconduct." *Aquino*, 2016 WL 324373, at *4 (citing *Alvarez*, 228 Cal. App. 4th at 945 (plaintiff alleged that defendants relied on inaccurate information about plaintiff's income and alleged

---

[10] Wells Fargo previously challenged whether it owed Plaintiff a duty. As the Court previously found, in California, the test for determining whether a financial institution exceeded its role as money lender and thus owes a duty of care to a borrower-client involves "the balancing of various factors," among which are: (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm. *Id.* at 1098 (quotations omitted); *see also Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958) (establishing the factors above, referred to as the "*Biakanja* factors"). The *Biakanja* factors weigh in Plaintiff's favor of finding Wells Fargo owed Plaintiff a duty—nothing in the SAC changes this analysis.

United States District Court
Northern District of California

defendants falsely advised him that documents had not been submitted); *Rijhwani v. Wells Fargo Home Mortg., Inc.*, 2014 WL 890016, at *17 (N.D. Cal. Mar. 3, 2014) (plaintiffs alleged that the defendant tricked them into defaulting on a loan and instructed them to ignore notices, while the defendant sold their home at a foreclosure sale); *Shapiro v. Sage Point Lender Servs.*, 2014 WL 5419721, at *9 (C.D. Cal. Oct. 24, 2014) (plaintiff alleged that defendant provided contradictory information about status of application and that defendant advised him application had been received but denied application on basis that documents were missing)).  In dismissing the FAC, the Court found:

> Among other things, [Wells Fargo] repeatedly changed Plaintiff's single point of contact[11] or "SPOC" with Wells Fargo for his loan modification[]and failed to respond to Plaintiff or give him clear instructions about the modification process.  FAC ¶¶ 86-93.  The repeated change in SPOCs made it more difficult for Plaintiff to communicate with them and caused Plaintiff to have to escalate his file and request case management assistance from his congresswoman.  *Id.* ¶¶ 86, 89.  Additionally, Plaintiff alleges Wells Fargo repeatedly asked Plaintiff to re-send documents he had already submitted, such as his divorce documents and deeds, and indicates Wells Fargo delayed in processing his request and supporting documents.  *Id.* ¶¶ 87-98.  Plaintiff alleges this harmed him by depriving him of the opportunity to obtain loan modifications and depriving him the opportunity to seek relief elsewhere.  *Id.* ¶¶ 84, 117; *see Alvarez*, 228 Cal. App. 4th at 951 (Plaintiffs "alleged that the improper handling of their applications deprived them of the opportunity to obtain loan modifications, which they allege[d] they were qualified to receive and would have received had their applications be properly reviewed, and alternatively, that the delay in processing deprived them of the opportunity to seek relief elsewhere.").  Consequently, the Court finds Plaintiff has alleged plausible facts that Wells Fargo breached

---

[11] This footnote was in the FAC Order:

> California Civil Code section 2923.7 provides that, when a borrower requests a foreclosure-prevention alternative, such as a loan modification, the servicer must promptly designate a "single point of contact" to communicate directly with the borrower.  Cal. Civ. Code § 2923.7(a).  The SPOC can be an individual or a team, but must (among other things) possess sufficient knowledge about foreclosure alternatives and have access to individuals who have the ability and authority to stop foreclosure proceedings.  *See id.* § 2923.7(b)-(d).  Moreover, "[t]he mortgage servicer shall ensure that each member of the [SPOC] team is knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process."  *Id.* § 2923.7(e).

1               its duty of care in handling his loan modification and he was harmed
              as a result.

2

3 FAC Order at 30-31.

4      Wells Fargo again challenges the sufficiency of Plaintiff's negligence claim, arguing

5 Plaintiff fails to allege "either a clear breach of the duty of care, or clear damages that are caused

6 by the alleged breach."  WF Mot. at 4.  Specifically, it now contends: (1) "Plaintiff alleges no facts

7 establishing how the change in his SPOC would have changed the outcome" of his loan

8 modifications and his assertion "that he was deprived of the opportunity to seek other relief is

9 implausible, as no foreclosure has occurred" (WF Mot. at 5); (2) "there is no causative

10 connection" Wells Fargo asked Plaintiff to resubmit documents "and Plaintiff's alleged damages

11 (a denial of his loan modification applications)" (*id.* at 6); and (3) "Plaintiff does not allege an

12 actionable dual tracking violation of the HBOR that caused him damages" (*id.* at 6-7).  None of

13 these arguments is persuasive.

14      As to the first and second arguments, the Court finds Plaintiff has plausibly alleged

15 causation and damages.  Plaintiff alleges facts demonstrating Wells Fargo mishandled his loan

16 modification by repeatedly asking him to send in documents he had already sent and causing

17 delays, as well as by revolving SPOCs and depriving Plaintiff of access to SPOCs at various

18 points, "making it more difficult for [him] to communicate with [Wells Fargo]" and leading to an

19 "inability to get clear instructions" about his loan modification.  SAC ¶¶ 60, 64-78, 80-87, 92, 94-

20 95.  The SAC additionally alleges Wells Fargo's "improper handling of Plaintiff's applications

21 deprived him of the opportunity to obtain loan modifications, which he was qualified to receive

22 and would have received had his applications been properly and timely reviewed; the delay in

23 processing also deprived Plaintiff of the opportunity to seek relief elsewhere."  *Id.* ¶ 96.

24 Furthermore, as a result of Wells Fargo's conduct, Plaintiff alleges he was "damaged by losing

25 tenant income, stress, emotional distress, employment, and related income" (*id.* ¶ 97); Wells

26 Fargo's "deliberate actions (and inactions) have directly prevented Plaintiff of the opportunity to

27 modify his loan" (*id.* ¶ 62).  *See also* Pl.'s Opp'n at 10-11.  In response, Wells Fargo attempts to

28 use its own past rejections of Plaintiff's loan modification applications as evidence that Plaintiff is

*United States District Court*
*Northern District of California*

16

1    speculating that had Wells Fargo used reasonable care, there would have been a different outcome

2    with his loan modification.  This argument is circular.  That Wells Fargo denied Plaintiff's loan

3    modification applications in the past does not undermine the plausibility of Plaintiff's allegations

4    that there would have been a different result if Wells Fargo had used reasonable care.  This is an

5    issue for a later stage in the proceedings.  Finally, while Wells Fargo argues it only needs to give

6    Plaintiff an opportunity for a loan modification, which it has done (WF Mot. at 8), Plaintiff's

7    allegations indicate that Wells Fargo made it so that he never had a "meaningful opportunity" to

8    obtain a "foreclosure alternative," which is contrary to California law.  *See Gonzales v.*

9    *Citimortgage, Inc*, 2015 WL 3505533, at *4-5 (N.D. Cal. June 3, 2015) (California's Home

10   Owner's Bill of Rights ("HBOR") "ensure[s] that homeowners that *might* qualify have a

11   "meaningful *opportunity* to obtain" "foreclosure alternative[s]." (emphasis in original)); *see also*

12   *Alvarez*, 228 Cal. App. 4th at 951 (while HBOR was enacted in 2013 and does not have

13   retroactive effect, courts have nonetheless recognized it "sets forth policy considerations that

14   should affect the assessment whether a duty of care was owed to [plaintiffs] at that time." (quoting

15   *Jolley*, 213 Cal. App. 4th at 905)).

16        Wells Fargo next challenges Plaintiff's allegations that Wells Fargo engaged in "dual

17   tracking" (WF Mot. at 7)—i.e., where a financial institution "continue[s] to pursue foreclosure

18   even while evaluating a borrower's loan modification application."  *Rockridge Tr. v. Wells Fargo,*

19   *N.A.*, 985 F. Supp. 2d 1110, 1149 (N.D. Cal. 2013) (citing *Jolley*, 213 Cal. App. 4th at 904); Cal.

20   Civ. Code § 2923.6(e) ("[t]he mortgage servicer, mortgagee, trustee, beneficiary, or authorized

21   agent shall not record a notice of default or, if a notice of default has already been recorded, record

22   a notice of sale or conduct a trustee's sale" while evaluating a borrower's loan application).

23   Although Wells Fargo asserts on Reply that HBOR does not apply to Plaintiffs allegations pre-

24   2013, it nonetheless contends it did not violate that law because Plaintiff only alleges Wells Fargo

25   scheduled the sale, but a defendant only violates the dual tracking provision "if a trustee's deed is

26   recorded."  WF Mot. at 7.  As this Court previously noted, in *Foronda v. Wells Fargo Home*

27   *Mortgage, Inc.*, Judge Lucy Koh ruled against Wells Fargo on this same argument, finding the

28   plaintiffs "plausibly alleged that Defendant continued to 'conduct a trustee's sale'" where

United States District Court
Northern District of California

plaintiffs alleged Wells Fargo *scheduled* a trustee's sale and refused to postpone it.  2014 WL 6706815, at *6 (N.D. Cal. Nov. 26, 2014).  She declined to adopt Wells Fargo's "narrow" view that the dual-tracking prohibitions are violated only where it recorded a notice of default, notice of sale, or actually sold the property at a trustee sale.  *Id.*  Rather, Judge Koh pointed out that "[a]s the legislative history suggests, section 2923.6(c)'s ban on dual tracking was enacted to force mortgage servicers to 'give a borrower a clear answer on an application before the servicer may proceed with foreclosure.'"  *Id.* (quotation omitted).  The Court agrees with Judge Koh's reasoning and finds her conclusion the most likely one to be adopted by the California Supreme Court on this issue.  *See* FAC Order at 28, 32 (discussing interpretation of California law). Finally, while Wells Fargo argues Plaintiff suffered no damages as a result of the dual-tracking, Plaintiff has plausibly alleged that the threat of foreclosure caused him to lose a viable and long-term tenant and the tenant's income, as well as a co-signer to the loan modification application. SAC ¶ 100.

In sum, the Court finds Plaintiff states a negligence claim against Wells Fargo; however, as Wells Fargo and HSBC point out in a footnote, Plaintiff makes no allegations against HSBC, and therefore, "[a]t a minimum, the cause of action should be dismissed against HSBC[.]"  WF Mot. at 4.  The Court agrees Plaintiff has alleged no plausible facts against HSBC, and Plaintiff's Opposition does not address HSBC's negligence; accordingly, Plaintiff's negligence claim against HSBC is DISMISSED WITHOUT LEAVE TO AMEND.

ii.      *Claim against First American*

The Court previously dismissed Plaintiff's negligence claim against First American based on its issuance of foreclosure related documents, which "are subject to a qualified privilege under California Civil Code section 47, made applicable to nonjudicial foreclosures by California Civil Code section 2924(d)."  Order re: First Mots. to Dismiss at 11-12 (citing *Gonzalez on Behalf of Estate of Perez v. JP Morgan Chase Bank, N.A.*, 2014 WL 5462550, at *7 (N.D. Cal. Oct. 28, 2014)).  The privilege applies to communications made without malice by a person who has an interest in the communications to another person with an interest in the communications.  *Id.* Malice requires that the publication was motivated by hatred or ill will towards the plaintiff or by

a showing that the defendant lacked reasonable grounds for belief in the truth of the publication. *Id.* (citations omitted).  The section 47 privilege now applies to all torts other than malicious prosecution.  *Id.*; *Edwards v. Centex Real Estate Corp.*, 53 Cal. App. 4th 15, 29 (1997) (discussing section 47's expansion); *see also Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 339 (2008) ("Th[e] privilege is a natural fit for nonjudicial foreclosure.  The trustee's statutory duties in effectuating the foreclosure are designed, in major part, to communicate relevant information about the foreclosure to other interested persons.").  Moreover, California Civil Code section 2924(b), which deals with transfers and sales of deeds of trust, states: "the trustee shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage."

The SAC's new negligence claim is based on the premise that First American recorded a notice of sale at a time when it "knew or should have known that Plaintiff had a loan modification pending with HSBC's servicer, WELLS FARGO, because as the purported trustee appointed by WELLS an independent and fair third party, they were informed via constructive notice, or should have investigated the same, that Plaintiff had submitted another loan modification application." SAC ¶ 99.  First American challenges this allegation again on California Civil Code section 2924(b) grounds, as well as Plaintiff's attempt to create a "new duty on the part of a trustee under a deed of trust to *investigate* whether or not a borrower is in the process of negotiating a loan modification as an alternative to a foreclosure," which First American contends is a duty that does not exist under California law.  FA Mot. at 6-7.

Plaintiff does not address First American's challenge to his negligence claim, which First American argues "should be treated by the court as an acknowledgement that First American's argument has merit, and that Plaintiff fails to adequately allege a claim for negligence."  FA Reply at 2.  The Court is inclined to agree, particularly in light of its prior finding that "to the extent First American's conduct occurred in reliance on the lender's information as provided under section 2924(b), First American is immune to Plaintiff's state law claims arising from recording of the notice of default and related acts."  Order re: First Mots. to Dismiss (footnote omitted; citing

1    cases).  Consequently, Plaintiff's negligence claim against First American is DISMISSED

2    WITHOUT LEAVE TO AMEND.

3           3.      Rosenthal Act Claim (Second Cause of Action)

4           Defendants also challenge Plaintiff's Rosenthal Act claim.  The Rosenthal Act, also known

5    as California's Fair Debt Collection Practices Act, is intended "to prohibit debt collectors from

6    engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require

7    debtors to act fairly in entering into and honoring such debts[.]"  Cal. Civ. Code § 1788.1(b).[12]

8    Numerous courts, however, have held that "the mere allegation that a defendant foreclosed on a

9    deed of trust does not implicate the Rosenthal Act—provided the lender's conduct falls within the

10   scope of an ordinary foreclosure proceeding."  *Petrovich v. Ocwen Loan Servicing, LLC*, 2015 WL

11   3561821, at *7 (N.D. Cal. June 8, 2015) (citing *Reyes v. Wells Fargo Bank, N.A.*, 2011 WL 30759

12   at *19 (N.D. Cal. Jan. 3, 2011) (collecting cases)).  That said, "[w]here the claim arises out of debt

13   collection activities beyond the scope of the ordinary foreclosure process, . . . a remedy may be

14   available under the Rosenthal Act."  *Reyes*, 2011 WL 30759, at *19 (quotation omitted)).

15   Furthermore, as the Court noted in its previous Order, if Plaintiff intends to assert a Rosenthal Act

16   claim that sounds in fraud, he must comply with Rule 9(b)'s heightened pleading standards.  Order

17   re: First Mots. to Dismiss at 23; FAC Order at 34.

18           i.      *Claim against Wells Fargo/HSBC*

19           Wells Fargo challenges Plaintiff's Rosenthal Act claim primarily on the basis that the SAC

20   "continues to rely on conclusory allegations of purported misrepresentations that fail to meet the

21   heightened pleading standard of Rule 9(b)."  WF Mot. at 10.  It points out that Plaintiff alleges that

22   Wells Fargo violated the Rosenthal Act by (1) placing foreclosure related fees on the account that

23   Plaintiff disputes and (2) failing to provide an accurate response to Plaintiff's debt validation

24   request.  WF Mot. at 8; *see* SAC ¶¶ 107-08.

25

26   _____

27   [12] In addition to providing its own standards governing debt-collection practices, the Rosenthal
     Act also provides that, with limited exceptions, "every debt collector collecting or attempting to
     collect a consumer debt shall comply with the provisions of" the Federal Fair Debt Collections

28   Practices Act ("FDCPA"), 15 U.S.C. §§ 1692b-1692j.  *See* Cal. Civ. Code § 1788.17.  Plaintiff
     does not appear to base his Rosenthal Act claim on FDCPA violations.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    As an initial matter, to the extent Plaintiff's Rosenthal Act claim relies on allegations about

2    defects in the Assignment of Plaintiff's loan, the Court has already found Plaintiff lacks standing

3    to pursue.  Additionally, Plaintiff's Rosenthal Act claim against Wells Fargo has been a moving

4    target, with Plaintiff alleging in his FAC that Wells Fargo made false representations when an

5    unnamed employee promised Plaintiff that the foreclosure would be postponed if he made three

6    trial payments, yet Wells Fargo still foreclosed.  FAC ¶ 122.  There are no further allegations

7    about this in his SAC.  Moreover, while Plaintiff continues to assert that "[t]o date Plaintiff's

8    payments have not been credited to his account, nor returned to him[,]" FAC ¶ 123, SAC ¶ 106—

9    despite the Court's prior warning—Plaintiff still has not adequately alleged the "the who, what,

10   when, where, and how" of the alleged misrepresentations.  FAC Order at 17 (citing *Yess v. Ciba-*

11   *Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation omitted))).  The Court has

12   repeatedly warned Plaintiff of this basic pleading requirement.  *Id.*; Order re: First Mots. to

13   Dismiss at 22-23.  Plaintiff's new claims about the fees and Wells Fargo's alleged failure to

14   provide an accurate validation of debt again fail to provide this information and as such lack

15   plausibility and are too vague to state a claim.

16   While Plaintiff attempts to add new theories of liability, he still fails to plead a valid

17   Rosenthal Act claim.  The Court previously admonished Plaintiff that its "grant of leave to amend

18   and to add specificity is not an invitation to add new claims or more prolix allegations."  FAC

19   Order at 35 n.26.  Plaintiff ignores this admonishment.  *See* Pl.'s Opp'n at 11-14.  While the Court

20   has reviewed Plaintiff's various theories, it finds they still are too vague, undeveloped, and

21   unclear.  Plaintiff has had several opportunities to state a claim against Wells Fargo and HSBC

22   and he has not done so.  Accordingly, Plaintiff's Rosenthal Act claim is DISMISSED WITHOUT

23   LEAVE TO AMEND.

24              ii.    *Claim against First American*

25   First American points out that "Plaintiff alleges First American is liable as a debt collector

26   under the Fair Debt Collection Practices Act[] and California's Rosenthal Act"[13] but "Plaintiff

27

28   _____
[13] Plaintiff does not assert a claim under the Fair Debt Collection Practices Act, however.

21

1    makes no allegations of any conduct by First American that allegedly violated the Rosenthal Act."

2    FA Mot. at 7; *see* SAC ¶¶ 101-12.  Additionally, it notes "foreclosure pursuant to a deed of trust

3    does not constitute debt collection under the Rosenthal Act."  *Id.* (citing *Gardner v. Am. Home*

4    *Mortg. Servicing, Inc.*, 691 F. Supp. 2d 1192, 1198-99 (collecting cases)).

5         First American is correct that Plaintiff does not allege facts as to that it violated the

6    Rosenthal Act.  *See* FAC ¶¶ 110-11.  The SAC again references problems connected to the

7    Assignment, but it does not explain how First American engaged in unfair or deceptive acts or

8    practices.  At this point, Plaintiff has had several opportunities to amend and clarify his Rosenthal

9    Act and his has been unable to do so.  Even if Plaintiff can ultimately show the Assignment of his

10   Loan is void, Plaintiff's SAC still lacks the requisite specificity under Rule 9(b) to maintain his

11   Rosenthal Act claim.  *See Gardner*, 691 F. Supp. 2d at 1198 (dismissing Rosenthal Act claims that

12   were too vague).  Accordingly, the Court DISMISSES Plaintiff's Rosenthal Act claim against

13   First American WITHOUT LEAVE TO AMEND.

14        4.    Breach of Contract (Third Cause of Action)

15        Wells Fargo and HSBC urge the Court to dismiss Plaintiff's breach of contract claim based

16   on alleged violations of the DOT.  WF Mot. at 10-11.  The elements of a claim for breach of

17   contract are (1) existence of the contract; (2) performance by the plaintiff or excuse for

18   nonperformance; (3) breach by the defendant; and (4) damages.  *Petrovich*, 2015 WL 3561821, at

19   *3 (citing *First Commercial Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001)); *see also*

20   *Harris v. Wells Fargo Bank, N.A.*, 2013 WL 1820003, at *8 (N.D. Cal. Apr. 30, 2013) ("The deed

21   of trust constitutes a contract between the trustor and the beneficiary, with the trustee acting as

22   agent for both." (citing *Hatch v. Collins*, 225 Cal. App. 3d 1104, 1111 (1990)).  Wells Fargo and

23   HSBC challenge Plaintiff's two theories underlying his breach of contract claim, contending

24   Plaintiff alleges no breach of the DOT or any resulting damages under any of his theories.  WF

25   Mot. at 10.[14]

26        Plaintiff first alleges Wells Fargo breached the DOT by failing to provide a copy of the

27   ─────────────────────

28   [14] They also challenge Plaintiff's standing related to his securitization theory, but as the Court has
     already addressed that issue above, the Court does not discuss it again here.

United States District Court
Northern District of California

1      Note to Plaintiff despite Plaintiff's qualified written requests ("QWR") sent in November 2012,

2      December 2013, May 2014, and August 2014.  SAC ¶¶ 120, 121.  Wells Fargo argues, however,

3      that Plaintiff's alleged request was not timely.  WF Mot. at 10.  Under Civil Code section 2943(b),

4      a beneficiary must provide a copy of the note or other evidence of indebtedness with any

5      modification, along with a beneficiary statement, within 21 days of receipt of a written demand.

6      Cal. Civ. Code § 2943(b)(1).  Such a request may only be made before the recording of a notice of

7      default or within two months afterwards.  Cal. Civ. Code § 2943(b)(2).  Wells Fargo points out

8      that "[h]ere, a notice of default was first recorded in 2008, and the operative notice of default was

9      recorded in 2010."  WF Mot. at 10 (citing RJN, Exs. A, C).  "Meanwhile, Plaintiff did not make a

10     written request until 2012. Therefore, Plaintiff is not entitled to a copy of the note under section

11     2943."  *Id.*  WF Mot. at 13.[15]  Additionally, Wells Fargo points out that nothing in the DOT or

12     Note entitles Plaintiff to request a copy of the Note.  *Id.*  The Court previously found that it is

13     "unclear what specific contractual provision Plaintiff alleges Wells Fargo has breached or how

14     Wells Fargo's actions have deprived Plaintiff of the benefits of the contract" or how he is harmed

15     a result of this particular alleged breach of the DOT or frustration of its terms.  FAC Order at 38.

16     Plaintiff does not respond to Wells Fargo's new argument nor does his SAC address the concerns

17     the Court previously raised.  Under other circumstances there might be a basis for alleging a

18     breach of contract claim based on a violation of section 2943(b); however, Plaintiff has not

19     provided adequate factual allegations to state a claim based on this theory.

20            Second, Plaintiff contends Defendants breached section 22 of the DOT by failing to

21     provide an acceleration notice.  SAC ¶¶ 115, 124-25.  Section 22 of the DOT provides that the

22     "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any

23     covenant or agreement in this Security Instrument."  *Id.* ¶ 115.  Wells Fargo points out that

24     Plaintiff does not allege facts establishing the Loan was accelerated or any resulting damages from

25

26     _____

27     [15] "[A]ll contracts necessarily and implicitly incorporate all applicable laws in existence when the contract is entered."  *Builders Bank v. Oreland, LLC*, 2015 WL 1383308, at *3 n.1 (C.D. Cal. Mar. 23, 2015) (quoting *300 DeHaro St. Investors v. Dep't of Hous. & Cmty. Dev.*, 161 Cal. App. 4th 1240, 1256 (2008)).

28

United States District Court
Northern District of California

the alleged lack of acceleration notice, and when "[a]ddressing similar allegations, the court in *Gomez v. Bayview Loan Servicing, LLC*, 2015 WL 433669[, at *3] (N.D. Cal. Feb. 2, 2015)[,] found the plaintiff there failed to allege a breach because he did not allege an acceleration and he did not allege any damages." WF Mot. at 11.  The Court agrees with Wells Fargo and the *Gomez* Court.  Plaintiff does not allege facts giving rise to a breach of the Deed of Trust, i.e., that the Loan was accelerated, or that Plaintiff suffered any damages resulting from the alleged lack of acceleration notice.  In his Opposition, Plaintiff states Wells Fargo "accelerated the note between February 2008, and no later than July 2008 (in their petition for Relief from the bankruptcy Automatic Stay" (Pl.'s Opp'n at 20), but the SAC lacks such allegations.  Even if Plaintiff could allege such an acceleration took place, Plaintiff has not explained how he was damaged.  Plaintiff asserts damages based on his inability to obtain a loan modification or his alleged inability to contact the "true note holder" (SAC ¶ 127), but he has not shown how the lack of acceleration notice caused those damages.  *See* FAC Order at 38 (admonishing Plaintiff that he did "not explain how that harm is connected to a particular breach of the DOT or frustration of its terms").  Ultimately, Plaintiff has not provided the requisite factual matter to support the elements of his breach of contract claim under this theory.  *See Gomez*, 2015 WL 433669, at *3.

Plaintiff has had several opportunities to cure the defects in his breach of contract claims but has been unable to do so.  In light of the foregoing, the Court DISMISSES Plaintiff's breach of contract claim WITHOUT LEAVE TO AMEND.

### 5.   Fraud (Fourth Cause of Action)

Wells Fargo and HSBC again challenge Plaintiff's fraud claim, which is still primarily based on his "botched securitization" allegations.  Plaintiff alleges Wells Fargo and HSBC knew of the flaws in the securitization process, yet all Defendants continued to represent themselves as the proper trustee, mortgagee, beneficiary, or authorized agent.[16]  *See* SAC ¶¶ 129-52.

The elements of fraud under California law are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of the statement's falsity (scienter); (c) intent to

---

[16] Plaintiff does not expressly name First American to his fraud claim.

24

defraud (i.e., to induce action in reliance on the misrepresentation); (d) justifiable reliance; and (e) resulting damage. *Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995).[17] "The absence of any one of these required elements will preclude recovery." *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324, 1332 (1986) (citation omitted). Moreover, allegations of fraud must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054-55 (9th Cir. 2011). To satisfy Rule 9(b)'s heightened pleading standard, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Yess*, 317 F.3d at 1106 (quotation omitted)). Wells Fargo argues Plaintiff "does not allege his reliance and resulting damages from his claims with the required particularity." WF Mot. at 15 (citing SAC ¶¶ 143, 145, 149).

    As the Court has already found that Plaintiff does not have standing to challenge the Assignment and transfer of his Loan, he consequently lacks standing to pursue his fraud claim based on theories related to defects in the Assignment and transfer. *See Yhudai*, 1 Cal. App. 4th at 1261; *Peay v. Midland Mortg. Co.*, 2010 WL 476677, at *2 (E.D. Cal. Feb. 3, 2010) (dismissing fraud claim where plaintiffs failed to state why defendant did not have the right to service their loan); *see also Sepehry-Fard v. MB Fin. Servs.*, 2015 WL 903364, at *4 (N.D. Cal. Mar. 2, 2015) ("District courts routinely reject [] allegations that a servicer commits fraud in collecting on a note that it does not own or physically hold." (collecting cases)).

    Even if Plaintiff could establish standing, he still has not alleged facts that he detrimentally relied on any of Wells Fargo's or HSBC's statements. A fraud claim is premised on the idea that a defendant induces a plaintiff to behave in a certain way based on false information, or that a defendant omits critical information that would have caused a plaintiff to act differently had he or she had the full information. *Saldate v. Wilshire Credit Corp.*, 711 F. Supp. 2d 1126, 1134-35 (E.D. Cal. 2010) ("There must be a showing that the defendant thereby intended to induce the

---

[17] "The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance." *Saldate v. Wilshire Credit Corp.*, 711 F. Supp. 2d 1126, 1134 (E.D. Cal. 2010) (citing *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004)).

plaintiff to act to his detriment in reliance upon the false representation and that the plaintiff actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment." (internal quotation marks omitted)).  The only relevant allegations in the SAC suggest Plaintiff *relied* on and was consequently harmed by Defendants' alleged misrepresentations are that he has been paying the wrong party for an undetermined amount of time.  *See* Pl.'s Opp'n at 16.  These facts are insufficient to show Plaintiff relied upon any misrepresentations.

Plaintiff alleges Wells Fargo "was not the proper servicer" of his loan as a result of the defects in the Assignment and transfer (SAC ¶ 134); however, earlier in the SAC he alleges Wells Fargo "owed Plaintiff a duty of care to service the loan" (*id.* ¶ 56).  In his Opposition, Plaintiff contends he "has alleged that [Wells Fargo], as a purported servicer (and Securities Administrator, and Master and Special Servicers for the said Trust), owed him a duty of care to service the loan[.]"  Pl.'s Opp'n at 9; *id.* at 22 (arguing that pursuant to Wells Fargo's servicer participation agreement with the federal government it has certain duties).  Plaintiff is attempting to use Wells Fargo's servicing role as both a sword and shield.  In any event, Wells Fargo points out that (1) the DOT provides that Wells Fargo may remain loan servicer even if the Loan is sold, *see* RJN, Ex. A at § 20; and (2) Plaintiff does not allege any other entity claimed to be servicer.  WF Mot. at 15.  Consequently, even if Plaintiff is able to show the Assignment of his Loan was void, he has not alleged plausible facts that Wells Fargo is not the proper servicer of his loan.

While Plaintiff alleges HSBC concealed the true beneficiary of the Loan (SAC ¶ 142), Defendants contend that Plaintiff has failed to plead this claim with the particularity required by Rule 9.  The Court agrees that Plaintiff's fraud claim lacks the requisite specificity about what alleged misrepresentations HSBC made to Plaintiff (and when and by whom), how Plaintiff relied on them, and was injured by them.  *See* FAC Order at 19-20 (warning Plaintiff that the allegations supporting his fraud claim against HSBC "were too conclusory and seem to arbitrarily attempt to lump HSBC together with Wells Fargo's acts."); *see also* WF Mot. at 15 ("Plaintiff's claim that Defendants' conduct allowed them to commence foreclosure proceedings does not establish how Plaintiff relied on this alleged misrepresentations.  *See* SAC ¶ 143.").  While Plaintiff alleges that HSBC's "concealment" gave him "a false sense of security, causing him to forego hiring an

attorney or taking any legal action to stop a pending foreclosure sale" (SAC ¶ 142), these statements lack plausibility given that Plaintiff has taken action to stop the foreclosure sale on multiple occasions.

In sum, Plaintiff has not alleged plausible facts that Wells Fargo or HSBC made misrepresentations that Plaintiff relied on to his detriment.  As Plaintiff has had multiple opportunities to amend, the Court DISMISSES his fraud claim WITHOUT LEAVE TO AMEND.

### 6.  Declaratory Relief (Fifth Cause of Action)

Wells Fargo and HSBC next challenge Plaintiff's sixth cause of action for declaratory relief, contending that since Plaintiff's "theory challenging the Assignment fails, and Plaintiff alleges no other facts establishing the [foreclosure] documents as void, his claim for declaratory relief fails."  WF Mot. at 16.  The Court agrees.  Plaintiff's declaratory judgment claim is premised the Assignment being void, which he argues means all documents resulting from the Assignment (such as the Substitution of Trustee, Notice of Default, and the notices of sale) are all also void and that Defendants have no standing to institute a foreclosure on the Property.  SAC ¶¶ 156-70.  But as discussed above, Plaintiff has not presented this as viable theory and therefore has not alleged "a specific factual basis for challenging enforcement of a note and subsequent foreclosure declaratory relief claims may be viable."  FAC Order at 21 (citations omitted).  Where "no present legal controversy exists, a cause of action for declaratory relief is not stated." *Ephraim v. Metro. Trust Co.*, 28 Cal. 2d 824, 836 (1946).  Consequently, the Court must DISMISS Plaintiff's Declaratory Judgment claim WITHOUT LEAVE TO AMEND.

### 6.  Restitution (Sixth Cause of Action)

In Plaintiff's final cause of action in the SAC, he asserts a claim for restitution, which also appears to seek cancellation of the Assignment and all foreclosure notices.  SAC ¶¶ 171-76.  Wells Fargo and HSBC again argue "this claim fails because Plaintiff fails to allege facts establishing the documents are void."  WF Mot. at 17.  Again, the Court agrees for the same reasons discussed above.  Plaintiff has not otherwise shown how he is entitled to restitution aside from his claims related to the securitization theory.  As the securitization defects theory is not viable, Plaintiff has not stated a claim for restitution as he has not otherwise alleged how Defendants have been

United States District Court
Northern District of California

1   unjustly enriched.  *See Park v. Welch Foods, Inc.*, 2013 WL 5405318, at *5 (N.D. Cal. Sept. 26,

2   2013) (restitution is generally only viable as an independent claim where a plaintiff "has properly

3   plead a claim for quasi-contract, or that the defendant has been unjustly enriched at the expense of

4   another, and that it would frustrate public policy concerns to allow the defendant [t]o retain that

5   benefit." (citations and footnote omitted)).   The Court accordingly DISMISSES Plaintiff's

6   restitution claim WITHOUT LEAVE TO AMEND.

7          7.     Summary

8          In sum, the Court DISMISSES all claims against First American and HSBC as well as all

9   claims against Wells Fargo except for Plaintiff's negligence claim (first cause of action).

**C.     Motion to Amend**

11          Plaintiff's proposed TAC adds causes of action for (1) Wrongful Foreclosure based on the

12   "wrong entity foreclosing" and "invalid substitution of trustee"; (2) a violation of California's

13   UCL; and (3) a violation of the RESPA.  Defendants challenge Plaintiff's Motion for Leave to

14   Amend to file his proposed TAC on several grounds, including the delay and timing of his request

15   as well as on futility grounds.  *See* WF Opp'n; *see also* FA Opp'n (focusing solely on delay and

16   prejudice).

17          First, as to Plaintiff's wrongful foreclosure claims, the Court agrees with Wells Fargo and

18   HSBC when they explain "[i]t is clear that in new causes of action that Plaintiff seeks to add in the

19   proposed third amended complaint, he relies on this same theory" that the Assignment of his Loan

20   is void.  WF Opp'n at 4.  Having reviewed Plaintiff's proposed wrongful foreclosure claims (*see*

21   Proposed TAC ¶¶ 183-203), the Court finds granting leave to amend would be futile, as these

22   claims are based entirely on the botched securitization theory already rejected above.  *See supra*

23   Part A.  Plaintiff's proposed TAC does not otherwise add allegations that make this theory viable.

24   Consequently, the Court finds no grounds to allowing Plaintiff leave to add these claims.

25          Second, as to Plaintiff's RESPA claim, Plaintiff's allegations are unclear and fail to allege

26   how Plaintiff was actually damaged.  Plaintiff contends that "on three occasions [he] sent

27   Qualified Written Requests (QWR) to [Wells Fargo] within the one-year period immediately

28   preceding filing of this lawsuit" and "[p]ursuant to 12 U.S.C. § 2605, [Wells Fargo] has a duty to

United States District Court
Northern District of California

1    respond within 5 days acknowledging receipt of the correspondence" and "[a] substantive

2    response is due within 30 days of its receipt of the QWR."  Proposed TAC ¶¶ 214-15.  In

3    response, Wells Fargo argues

> In the proposed third amended complaint, Plaintiff contends that
> Wells Fargo did not timely respond to three qualified written
> requests ("QWR") sent in January 2014, May 30, 2014, and August
> 30, 2014. Proposed Third Amended Complaint, ¶¶ 216–218.
> However, Plaintiff admits that Wells Fargo acknowledged each
> QWR and sent a written response within 30 days. *Id.* Therefore, he
> alleges no violation of RESPA. Even if Plaintiff did allege a
> violation for failure to acknowledge the QWR within 5 days, he
> specifically admits he received an ultimate response to each QWR
> between 10 to 27 days. *Id.* Plaintiff does not allege any damages
> from the slight delay, if any, and it is difficult to see how a delay of
> a few days caused any harm. *See* Proposed Third Amended
> Complaint, ¶¶ 213–220. To state a claim for violation of RESPA,
> Plaintiff must allege actual damages resulting from the violation.
> *See Tamburri v. Suntrust Mortgage, Inc*., 875 F. Supp. 2d 1009,
> 1014, 1015 (N.D. Cal. 2012); *Obot v. Wells Fargo Bank, N.A*., 2011
> WL 5243773, at *3 (N.D. Cal. Nov. 2, 2011). He does not and this
> claim fails.

14   WF Opp'n at 5.

15          The Court agrees with Wells Fargo's arguments above to the extent it argues Plaintiff does

16   not explicitly make clear that Wells Fargo was later than 5 days in acknowledging Plaintiff's

17   requests, and that Plaintiff seems to acknowledge Wells Fargo did provide a substantive response

18   within the 30 day time period.  Plaintiff has not alleged how Wells Fargo's responses were not

19   substantive in nature, and significantly, he also has not alleged how he was damaged by Wells

20   Fargo's alleged violations.  Wells Fargo is correct that Plaintiff must plausibly allege how he was

21   actually damaged to be able to recover under this section of RESPA.  *See* 12 U.S.C. § 2605(f)(1);

22   *Tamburri*, 875 F. Supp. 2d at 1013.  Plaintiff has had multiple opportunities to allege such facts,

23   yet he has repeatedly failed to do so.  At this point, it would be futile to give Plaintiff leave to

24   amend on this claim as alleged.

25          Finally, as to Plaintiff's UCL claim, it purports to incorporate by reference all other

26   allegations of unlawful activities, including wrongful foreclosure and violations of California's

27   HBOR.  Proposed TAC ¶¶ 204-12.  Most of Plaintiff's claims have been dismissed by the Court,

28   except for his negligence claim against Wells Fargo.  "To bring a UCL claim, a plaintiff must

United States District Court
Northern District of California

29

show either an (1) unlawful, unfair or fraudulent business act or practice, or (2) unfair, deceptive, untrue or misleading advertising.  Because section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair or fraudulent. A practice is prohibited as unfair or deceptive even if not unlawful or vice versa." *Lippitt v. Raymond James Fin. Servs. Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003) (quotations and citations omitted).  "[A]n action based on [the UCL] to redress an unlawful business practice 'borrows' violations of other laws and treats these violations . . . as unlawful practices, independently actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder." *Farmers Ins. Exch. v. Superior Ct.*, 2 Cal. 4th 377, 383 (1992) (quotations and citations omitted).  As Plaintiff's negligence allegations survive Wells Fargo's dismissal motion, these "allegations of unlawful conduct . . . provide predicate violations to support Plaintiff's UCL claim.  *Gardner*, 691 F. Supp. 2d at 1201.  Thus, it would not be futile to allow Plaintiff leave to amend to add a UCL cause of action against Wells Fargo.  Additionally, the Court perceives no prejudice against Wells Fargo or meaningful delay in adding this claim based on the fact it is predicated on Plaintiff's long-standing negligence claims.

## CONCLUSION

Based on the foregoing analysis, the Court **ORDERS** as follows:

(1) All claims against HSBC are DISMISSED WITHOUT LEAVE TO AMEND;

(2) All claims against FIRST AMERICAN are DISMISSED WITHOUT LEAVE TO AMEND;

(3) All claims alleged in the SAC against Wells Fargo, except for Plaintiff's negligence claim (first cause of action), are DISMISSED WITHOUT LEAVE TO AMEND;

(4) Plaintiff is DENIED leave to amend as to his wrongful foreclosure claims and his RESPA claim, but GRANTED leave to amend as to his UCL claim.

(5) Plaintiff shall file an amended complaint by March 24, 2017.  In his amended complaint, Plaintiff may only assert claims against Wells Fargo for negligence and a violation of the UCL; the Court does not grant Plaintiff leave to amend as to any of the other Defendants or to add any other claims against Wells Fargo.  The Court will strike

United States District Court
Northern District of California

1    any pleading that does not comply with this Order.

2    (6) Pursuant to Federal Rule of Civil Procedure 16(b) and Civil Local Rule 16-10, a Case

3         Management Conference will be held in this case before the Honorable Maria-Elena

4         James on April 20, 2017, at 10:00 a.m. in Courtroom B, 15th Floor, 450 Golden Gate

5         Avenue, San Francisco, CA 94102.  This conference shall be attended by lead trial

6         counsel, and Plaintiff, if still proceeding pro se, must appear personally.  No later than

7         seven calendar days before the Case Management Conference, the parties shall file a

8         Joint Case Management Statement containing the information in the Standing Order for

9         All Judges in the Northern District of California, available at:

10        http://cand.uscourts.gov/mejorders.  The Joint Case Management Statement form may

11        be obtained at: http://cand.uscourts.gov/civilforms.  If the statement is e-filed, no

12        chambers copy is required.

13    (7) The parties shall attend a settlement conference before the Honorable Jacqueline Scott

14        Corley.

15        **IT IS SO ORDERED.**

16

17    Dated: March 3, 2017

18                                    _____

19                                    MARIA-ELENA JAMES
                                      United States Magistrate Judge

20

21

22

23

24

25

26

27

28