UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAYODE POWELL, <br><br> Plaintiff, <br><br> v. <br><br> WELLS FARGO HOME MORTGAGE, et al., <br><br> Defendants. | Case No. 14-cv-04248-TSH <br><br> **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. No. 180 |

## I.   INTRODUCTION

Kayode Powell brings this action against Wells Fargo Bank, N.A., for alleged servicing violations related to his home loan. Pending before the Court is Wells Fargo's Motion for Summary Judgment. ECF No. 180. The Court finds this motion suitable for disposition without oral argument and **VACATES** the June 20, 2019 hearing. *See* Civ. L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** Wells Fargo's motion for the following reasons.

## II.   REQUEST FOR JUDICIAL NOTICE

As a preliminary matter, Wells Fargo requests the Court take judicial notice of ten public records in support of its motion: (1) Deed of Trust recorded with the Alameda County Recorder's Office as document number 2005447163 on October 17, 2005; (2) Grant Deed recorded with the Alameda County Recorder's Office as document number 2005447162 on October 17, 2005; (3) Stipulation and Order Amending Judgment Regarding Real Property entered on July 16, 2012 in the Superior Court of California, County of Alameda, case number RF08380232; (4) Grant Deed recorded with the Alameda County Recorder's Office as document number 2012296860 on September 11, 2012; (5) Voluntary Chapter 7 Bankruptcy Petition Docket in the United States

Bankruptcy Court, Northern District of California Case No. 08-42856, as of October 26, 2018; (6) Notice of Default and Election to Sell Under Deed of Trust recorded with the Alameda County Recorder's Office as document number 2008342907 on December 3, 2008; (7) Trustee's Deed Upon Sale recorded with the Alameda County Recorder's Office as document number 2010091485 on April 1, 2010; (8) Voluntary Chapter 7 Bankruptcy Petition Docket in the United States Bankruptcy Court, Northern District of California Case No. 10-43283, as of October 26, 2018; (9) Notice of Rescission of Declaration of Default and Demand for Sale and of Notice of Breach and Election to Cause Sale recorded with the Alameda County Recorder's Office as document number 2011354436 on December 6, 2011; and (10) Notice of Default and Election to Sell Under Deed of Trust recorded with the Alameda County Recorder's Office as document number 2010353346 on December 1, 2010.  Request for Judicial Notice ("RJN"), ECF No. 184.

The Court may take judicial notice of facts not subject to reasonable dispute that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  "[M]atters of public record" are the appropriate subjects of judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002).  As Wells Fargo's request consists entirely of public records, and Powell does not oppose the request, the Court **GRANTS** Wells Fargo's request for judicial notice.

### III.   BACKGROUND

**A.   Background on the Property and Loan**

Around October 17, 2005, Kayode and Charlene Powell (together, the "Powells") obtained a loan from Wells Fargo in the amount of $473,400 to purchase a duplex commonly known as 4770-4776 Tompkins Avenue, Oakland, California (the "Property").  Fourth Am. Compl. ("FAC") ¶¶ 4, 6, ECF No. 149; Smith Decl., Exs. A (Adjustable Rate Note and Addendum to Note) & B (Deed of Trust), ECF No. 182.

The Powells divorced on October 31, 2009.  FAC ¶ 7; RJN, Ex. C (Stipulation and Order Am. J. Re: Real Property).  On September 11, 2012, they recorded a grant deed transferring the Property to Kayode Powell.  FAC ¶ 7; RJN, Ex. D (Interspousal Grant Deed).

**B.     Default on the Loan and Foreclosure Proceedings**

The Powells were late on their Loan payment obligations on November 1, 2006, and the Loan is currently past due for the payment that would have due on February 1, 2008 and all payments due after that date. Smith Decl., ¶ 4 & Ex. C (letters sent to the Powells dated December 7, 2006, September 24, 2007, and September 19, 2008); Ladi Decl., Ex. A (Powell Dep.) at 152:20-22, ECF No. 181 ("Q: Mr. Powell, when's the last time you made a payment on your loan? A: It was June 2008, I believe.").

In March 2008, Wells Fargo approved the Powells for a special forbearance plan. Smith Decl. ¶ 5 & Ex. D (special forbearance agreement, dated March 6, 2008). That agreement required the Powells to make four payments, each in the amount of $4,996.79, through July 1, 2008, and upon completion they would continue to be reviewed for a loan modification. *Id.*, Ex. D. The Powells initially made payments but breached the agreement by failing to make all required payments. *Id.* ¶ 6, Powell Dep. at 152:20-25. On June 5, 2008, Powell filed a Voluntary Chapter 7 Bankruptcy in the Northern District of California, Case No. 08-42856. RJN, Ex. E (bankruptcy case docket).

In a March 19, 2009 letter of hardship to Wells Fargo, Powell explained the reason for his inability to make his mortgage payments was a combination of factors: (1) he was laid off from his full-time job in December 2006 and was only working intermittently afterwards; (2) he was unable to keep the Property consistently rented due to his household financial and emotional instability during the three years before the letter and due to the volatile housing market; (3) he and his wife had a number of family members who suffered significant medical events in 2005, 2007, and early 2008, which took a financial toll on the household; and (4) he and his wife separated in September 2007, which led to additional financial costs and burdens. Powell Dep. at 272:21-273:7 & Ex. 21 (March 19, 2019 hardship letter); *see also id.* at 136:6-137:11 (explaining he began asking for modification assistance because of unexpected expenses and decreased income); *id.* at 273:11-19 & Ex. 22 (April 1, 2013 hardship letter).

Wells Fargo subsequently offered the Powells a loan modification on August 11, 2009, but they did not accept the offer. Smith Decl. ¶¶ 7-8 & Ex. F; Ladi Decl., Ex. C (Pl.'s Interrog.

3

1    Resps.), Resp. to Interrog. No. 13; Powell Dep. at 183:23-185:1.  Powell testified he would have
2    accepted the loan modification, but Charlene Powell "refused it because she had stated that we
3    were no longer married and she wanted to sell the property."  Powell Dep. at 184:21-24.
4         As a result of the default on the Loan, a Notice of Default was recorded on December 3,
5    2008.  RJN, Ex. F.  A trustee's sale followed on March 25, 2010, but it was rescinded because
6    Powell filed a bankruptcy on the date of the sale, triggering an automatic stay.  RJN, Exs. G
7    (Trustees Deed Upon Sale), H (docket for Voluntary Ch. 7 Bankr. in the N. Dist. of Cal., Case No.
8    10-43283), I (Not. of Rescission).  A second Notice of Default was recorded on December 1, 2010
9    for the same default dating back to February 1, 2008.  RJN, Ex. J.

### C.  Loan Modification Reviews

Since the time of the second notice of default, Powell has sought a loan modification on numerous occasions and alleges Wells Fargo was negligent in its handling of four applications: (1) an application submitted on or around July 17, 2012; (2) an application submitted on or around October 19, 2012; (3) an application submitted on or about April 8, 2013; (4) and an application submitted on or about May 27, 2015.  FAC ¶¶ 18-44.

#### 1.  The July 17, 2012 Application

Sometime in May 2012, Powell inquired about the process for submitting a request for mortgage assistance ("RMA").  *Id.* ¶ 18; Smith Decl., Ex. G.  Wells Fargo initially denied the request because it sought further documentation, namely the Powells' divorce decree and the quit claim deed that awarded him the Property.  Smith Decl., Exs. G (denial letter from Wells Fargo) & H (Wells Fargo's loss mitigation notes reflecting a phone call with Powell on May 17, 2012 in which he was told that Wells Fargo needed both a divorce decree and quit claim deed).

Powell alleges he submitted an RMA on July 17, 2012.  FAC ¶ 18.  Wells Fargo states that it has no record of an RMA from that time, but it did receive an RMA from Powell on August 21, 2012 that was dated August 17, 2012.  Smith Decl. ¶ 10 & Ex. I.  After reviewing the RMA, Wells Fargo sent the Powells a letter dated September 5, 2012, requesting their 2011 tax return by September 20, 2012.  *Id.* ¶ 11 & Ex. J.  Thereafter, Wells Fargo spoke with Powell on September 11, 2012, at which time Powell indicated his tax returns were stolen from his vehicle, but he

4

subsequently provided his 2006 tax return. *Id.* ¶ 12 & Ex. K (loss mitigation notes). Because Powell did not provide the requested information from 2011, Wells Fargo denied his RMA application on October 17, 2012. *Id.* ¶ 13 & Ex. L (Oct. 12, 2012 decision letter).

### 2. The October 19, 2012 Application

Wells Fargo received another RMA from Powell on or about October 22, 2012. *Id.* ¶ 14 & Ex. M. In this RMA, Powell listed his total monthly gross income as $2,330.05 and his total debt/expenses as $4,338.17. *Id.*, Ex. M. Around that same time, Wells Fargo received an escalated inquiry from the Office of Congresswoman Barbara Lee regarding Powell's RMA. *Id.* ¶ 16. Thereafter, Sean Meier from Wells Fargo's Office of Executive Complaints communicated with both Congresswoman Lee's office and Powell regarding the items still needed to complete the RMA application. *Id.* & Ex. O (letters dated October 29, November 7, and November 13, 2012 from Sean Meier to the Powells and Congresswoman Lee's office). Powell submitted his 2011 tax return on October 30, 2012. *Id.* ¶ 18 & Ex. P; FAC ¶ 25.

After Wells Fargo collected the documentation it deemed necessary to review Powell's application, it calculated Powell's gross monthly income as $2,293. Smith Decl. ¶ 20 & Exs. M-Q; *see also* Powell Dep. at 191:24–192:13 & Ex. 7. Wells Fargo determined it could not create an affordable loan modification for Powell because the proposed modified payments under the federal government's Home Affordable Modification Program ("HAMP") exceeded the acceptable housing to income ratio ("HTI") that is the limit for HAMP. Smith Decl. ¶ 20 & Ex. Q. Wells Fargo also determined it could not create an affordable payment under a non-HAMP program based on Powell's income. *Id.* ¶ 21 & Ex. R. Wells Fargo denied the application on December 18, 2012. *Id.* ¶¶ 19, 21 & Exs. Q, R; Powell Dep. at 197:21–198:14, 199:10–20 & Exs. 9-10.

### 3. The April 8, 2013 Application

Wells Fargo received another RMA from Powell, dated April 7, 2013, in which he listed his monthly income as $4,888 and his monthly expenses as $3,541. Smith Decl. ¶ 22 & Ex. S. In response, Wells Fargo sent a letter dated April 8, 2013, requesting additional items and information. *Id.* ¶ 23 & Ex. T. On May 6, 2013, Wells Fargo sent a follow-up letter requesting

information from Powell regarding his application. *Id.* ¶ 24 & Ex. V. After receiving the requested documentation, Wells Fargo denied Powell's April 2013 application because it still could not, based on Powell's income, create an affordable payment under either HAMP or a non-HAMP program. *Id.* ¶¶ 25-27 & Exs. W, X; Powell Dep. at 217:2-218:18, 221:7-222:23 & Exs. 13-14. This time Wells Fargo calculated Powell's gross monthly income as $4,579, but the HTI still exceeded the acceptable limit under HAMP. Smith Decl. ¶ 26. Powell attempted to appeal this decision by telephone and by submitting a pay stub showing new income. FAC ¶¶ 36-37. However, Wells Fargo denied the appeal because the new income was from a contract position and was not permanent in nature. Smith Decl. ¶ 28 & Exs. Y, Z. Powell alleges a foreclosure sale was then scheduled on July 22, 2013, FAC ¶ 39, but Wells Fargo states no such foreclosure sale took place then or any time since. Smith Decl. ¶ 29.

### 4. The May 27, 2015 Application

Powell submitted another RMA application on May 27, 2015. FAC ¶ 40; Smith Decl. ¶ 30. In response, on June 15, 2015, Wells Fargo requested further items by July 15, 2015 to complete his application. Smith Decl. ¶ 30 & Ex. AA. Because Wells Fargo did not receive the requested materials by the deadline, it denied the application on August 20, 2015. *Id.* ¶ 31 & Ex. AB.

### D. Procedural Background

Powell filed this action in Alameda County Superior Court on September 3, 2014, seeking "equitable relief and damages precipitated by the events and acts of Defendants resulting in an imminent threat of wrongful foreclosure." Compl. ¶ 2, ECF No. 1-1.[1] He asserted 17 claims: (1) Negligence; (2) Declaratory Relief; (3) Temporary Restraining Order and Preliminary Injunction; (4) Intentional Infliction of Emotional Distress ("IIED"); (5) Breach of Good Faith and Fair Dealing; (6) Quiet Title; (7) Accounting; (8) violation of California's Rosenthal Act; (9) Fraud;

---

[1] In addition to Wells Fargo, Powell also named as defendants HSBC USA, N.A., First American Loanstar Trustee Services, Fidelity National Title Insurance Company, Doe Credit Reporting Agencies, Nicole Miles-Todd (a Wells Fargo agent), Recorder Patrick O'Connell, John Kennerty (a Wells Fargo agent), Chet Sconyers (a Wells Fargo agent), and Hank Duong (a First American Agent). *Id.* ¶ 4.

(10) Specific Performance by Promissory or Equitable Estoppel; (11) Breach of Written and Oral Contract; (12) Quia Timet; (13) Racketeering Influenced Corrupt Organizations Act; (14) Rescission of Note and Deed of Trust and Restitution; (15) violation of California Civil Code section 789.3; (16) violation of the Fair Credit Reporting Act; and (17) Discrimination. *Id.* ¶¶ 35-182.

On September 19, 2014, Wells Fargo removed the action to this Court. Not. of Removal, ECF. No. 1. The case was assigned to Magistrate Judge Maria-Elena James, who presided over the case through several motions to dismiss.[2] *See* ECF Nos. 8, 12, 71, 79, 85, 100, 107, 109, 131, 148. A more detailed procedural background can be found in Judge James's previous orders. *See* ECF Nos. 131, 148. By the time Powell filed the operative Fourth Amended Complaint on July 14, 2017, Wells Fargo was the sole remaining defendant and Powell alleged only two causes of action: (1) Negligence; and (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.

Wells Fargo filed the present motion on October 29, 2018, seeking summary judgment as to both remaining claims. Powell filed his opposition on May 23, 2019. ECF No. 211.[3]

### IV.  LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the

---

[2] Judge James retired on August 31, 2018, after which the case was reassigned to the undersigned. ECF No. 169.

[3] Powell does not address the merits of Wells Fargo's motion in his opposition. Instead, he requests a stay to locate an attorney to represent him. Opp'n at 3. However, on February 12, 2019 (over three months ago), Powell requested that he be permitted to represent himself (ECF No. 193), and the Court subsequently granted his former counsel's motion to withdraw based on Powell's request. ECF Nos. 197, 200. Prior to his opposition, Powell made no indication that he would seek new counsel despite his stated intention to represent himself. Regardless, he has had ample time to find new counsel and further delay is not warranted. Accordingly, Powell's request for a stay to locate new counsel is **DENIED**. Powell also requests additional time to review discovery in this case, despite the fact that discovery closed on July 31, 2018. Opp'n at 2-3; Case Management Order, ECF No. 158. Powell's request is **DENIED** because, as discussed below, his remaining claims fail as a matter of law and further discovery would not remedy this failure.

1   absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

2   Material facts are those that may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*,

3   477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence

4   for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

5         Where the moving party will have the burden of proof on an issue at trial, it must

6   affirmatively demonstrate that no reasonable trier of fact could find other than for the moving

7   party.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where

8   the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by

9   pointing out to the district court that there is an absence of evidence to support the nonmoving

10  party's case.  *Celotex*, 477 U.S. at 324-25.

11        If the moving party meets its initial burden, the opposing party must then set forth specific

12  facts showing that there is some genuine issue for trial in order to defeat the motion.  Fed. R. Civ.

13  P. 56(c)(1); *Anderson*, 477 U.S. at 250.  All reasonable inferences must be drawn in the light most

14  favorable to the nonmoving party.  *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir.

15  2004).  However, it is not the task of the Court to scour the record in search of a genuine issue of

16  triable fact.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The Court "rel[ies] on the

17  nonmoving party to identify with reasonable particularity the evidence that precludes summary

18  judgment." *Id.*; *see also Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

19  Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine

20  issue of fact, where the evidence is not set forth in the opposing papers with adequate references

21  so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031

22  (9th Cir. 2001).  If the nonmoving party fails to make this showing, "the moving party is entitled

23  to a judgment as a matter of law." *Celotex*, 477 U.S. at 322 (internal quotations omitted).

24        Finally, "[w]hile the evidence presented at the summary judgment stage does not yet need

25  to be in a form that would be admissible at trial, the proponent must set out facts that it will be

26  able to prove through admissible evidence." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th

27  Cir. 2010) (citations omitted).  Accordingly, "[t]o survive summary judgment, a party does not

28  necessarily have to produce evidence in a form that would be admissible at trial, as long as the

1  party satisfies the requirements of Federal Rules of Civil Procedure 56." *Block v. City of L.A.*, 253
2  F.3d 410, 418-19 (9th Cir. 2001); *Celotex*, 477 U.S. at 324 (a party need not "produce evidence in
3  a form that would be admissible at trial in order to avoid summary judgment."); *see also* Fed. R.
4  Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on
5  personal knowledge, set out facts that would be admissible in evidence, and show that the affiant
6  or declarant is competent to testify on the matters stated.").

### V.   DISCUSSION

**A.   Negligence**

Wells Fargo first argues Powell's negligence claim should be dismissed because it owed him no duty of care in the loan modification process. Mot. at 6.

To prevail on his negligence claim, Powell must show Wells Fargo owed him a legal duty, that it breached the duty, and that the breach was a proximate or legal cause of his injuries. *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 477 (2001); *see also* Cal. Civ. Code § 1714. The California Supreme Court has identified six factors, known as the *Biakanja* factors, to determine whether there is a duty of care:

> (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to [the plaintiff], (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm.

*Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958). "Whether a duty of care exists is a question of law to be determined on a case-by-case basis." *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 944 (2014) (citing *Lueras v. BAC Home Loans Serv.*, *LP*, 221 Cal. App. 4th 49, 62 (2013)).

"As a general rule in California, a 'financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Alvarez*, 228 Cal. App. 4th at 944 (citing *Lueras*, 221 Cal. App. 4th at 62. However, in applying this general rule, California courts are divided on whether a loan servicer owes a duty of care in the residential loan modification context. *Compare*

*Lueras*, 221 Cal. App. 4th at 67 (holding loan service providers do not owe a plaintiff a duty of care when considering a loan modification application) with *Alvarez*, 228 Cal. App. 4th at 948 (concluding that "because defendants allegedly agreed to consider modification of the plaintiffs' loans, the *Biakanja* factors clearly weight in favor of a duty [of care]."). Wells Fargo urges the Court to follow *Lueras*. Mot. at 6-7.

Federal courts, even within this district, have disagreed as to whether *Lueras* or *Alvarez* is more persuasive. *Compare Romo v. Wells Fargo Bank, N.A.*, 2016 WL 324286, at *9 (N.D. Cal. Jan. 27, 2016) (stating that "most federal district courts have followed *Alvarez*") *with Marques v. Wells Fargo Bank, N.A.*, 2016 WL 5942329, at *7 (N.D. Cal. Oct. 13, 2016) ("A growing number of courts that have addressed this issue since *Lueras* and *Alvarez* have adopted the holding in *Lueras* in finding that a mortgage servicer does not owe borrowers a duty of care in processing a residential loan modification"). Although there does not appear to be a published Ninth Circuit decision addressing this split, there are several unpublished decisions in which the Ninth Circuit addresses the question and agrees with the reasoning set forth in *Lueras*. *See Anderson v. Deutsche Bank Nat'l Tr. Co. Americas*, 649 Fed. App'x. 550, 552 (9th Cir. 2016) ("[W]hen 'the lender did not place the borrower in a position creating a need for a loan modification no moral blame . . . attaches to the lender's conduct.'") (quoting *Lueras*, 221 Cal. App. 4th at 67); *Badame v. J.P. Morgan Chase Bank, N.A.*, 641 Fed. App'x. 707, 709-10 (9th Cir. 2016) ("Chase did not owe Plaintiffs a duty of care when considering their loan modification application because 'a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money.") (quoting *Lueras*, 221 Cal. App. 4th at 67); *Deschaine v. IndyMac Morg. Servs.*, 617 Fed. App'x. 690, 692 (9th Cir. 2015) ("IndyMac had no duty to offer Deschaine a loan modification based on an income determined by Deschaine or to handle Deschaine's loan 'in such a way to prevent foreclosure and forfeiture of his property'") (citing *Lueras*, 221 Cal. App. 4th at 68); *Benson v. Ocwen Loan Servicing, LLC*, 562 Fed. App'x. 567, 569-70 (9th Cir. 2014) (citing *Lueras* for the proposition that a loan servicer did not owe a borrower "a common law duty of care"); *see also Galindo v. Ocwen Loan Servicing, LLC*, 282 F. Supp. 3d 1193, 1200 (N.D. Cal. 2017) ("'[T]he Ninth Circuit has repeatedly relied on *Lueras* to

10

find there is no duty of care in the loan modification process.'") (quoting *Newman v. Bank of N.Y. Mellon*, 2017 WL 1831940, at *11 (E.D. Cal. May 8, 2017)).

Moreover, numerous district courts in the Ninth Circuit have similarly found the reasoning of the *Lueras* court persuasive. *See Saldana v. Wells Fargo Bank, N.A.*, 367 F. Supp. 3d 1063 (N.D. Cal. 2019) ("And where, as here, 'the lender did not place the borrower in a position creating a need for a loan modification, no moral blame attaches to the lender's conduct.'") (quoting *Anderson*, 649 Fed. App'x at 551-52); *Haynish v. Bank of Am., N.A.*, 284 F. Supp. 3d 1037, 1051 (N.D. Cal. 2018) ("This Court has repeatedly considered the issue and concluded that lenders owe no duty of care in the loan modification context, even when the lender apparently agreed to consider a borrower's modification application.") (citation omitted); *Forster v. Wells Fargo Bank, N.A.*, 2018 WL 509967, at *4 (N.D. Cal. Jan. 23, 2018) ("This Court finds the *Lueras* line of cases to be more persuasive and therefore concludes that, were it to address the issue, the California Supreme Court most likely would find that a mortgage servicer does not owe a borrower a duty of care in processing an application for a residential loan modification."); *Galindo*, 282 F. Supp. 3d at 1200 ("Because the weight of Ninth Circuit authority, albeit unpublished, follows *Lueras*, this Court does the same."); *Nikoopour v. Ocwen Loan Servicing, LLC*, 2018 WL 1035210, at *6 (S.D. Cal. Feb. 23, 2018) ("Here, the Court finds the *Lueras* line of cases to be more persuasive and concludes that pursuant to *Lueras*, Plaintiff cannot establish that Ocwen owed Plaintiff a duty of care in the loan modification process."); *Shupe v. Nationstar Mortgage LLC*, 231 F. Supp. 3d 597, 605 (E.D. Cal. 2017) ("This Court agrees that the *Lueras* court is more persuasive[.]").

Here, the Court agrees that the *Lueras* line of cases is more persuasive and therefore finds that mortgage servicers do not owe borrowers a duty of care in the processing of loan modification applications because such activities "are indistinguishable from the process of providing an original loan, and therefore, fall within the lender's conventional role as a lender of money." *Marques*, 2016 WL 5942329, at *8 (citations and quotation marks omitted). There is also sound policy reason to find no duty of care because "financial institutions would be less likely to assist borrowers with defaulted loans if the financial institution would be held to a higher duty of care

11

for exercising leniency." *Casault v. Fannie Mae*, 915 F. Supp. 2d 1113, 1131 (C.D. Cal. 2012). Thus, the Court concludes that Powell cannot, as a matter of law, establish Wells Fargo owed him a duty of care in the loan modification process and his negligence claim is therefore subject to dismissal. Accordingly, the Court **GRANTS** Wells Fargo's motion as to Powell's negligence claim.

**B.     Unfair Competition Law**

In his claim under the UCL, Powell alleges Wells Fargo engaged in "unlawful, unfair, fraudulent or deceptive business act[s] or practice[s]" by "the unlawful foreclosure, damage to credit, losing viable long-term tenants, difficulty in renting out the Subject Property (due to the legal requirement that homeowners facing foreclosure disclose the same to their tenants), and other damages." FAC ¶¶ 50, 52. He further alleges "the complained of actions by Wells Fargo is part of a pattern and practice of unlawful activities which are regularly and routinely carried out by this Defendants [sic] in the course of their business with California consumers." *Id.* ¶ 53. Wells Fargo argues Powell's UCL is solely predicated on his negligence claim and therefore must fail. Mot. at 21. The Court agrees.

California's Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each of these three adjectives captures 'a separate and distinct theory of liability.'" *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009)). The unlawful category of the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). "To state a claim based on an unlawful business act or practice, a plaintiff must allege facts sufficient to show a violation of some underlying law." *Johnson v. PNC Mortg.*, 2014 WL 3962662, at *11 (N.D. Cal. Aug. 12, 2014) (citations omitted). With respect to the unfair prong, an act or practice is unfair if the practice "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Lueras*, 221 Cal. App. 4th at 81. With respect to the fraudulent prong, the UCL requires "only a showing that members of the

12

1   public are likely to be deceived" by the allegedly fraudulent practice.  *Id.*  Additionally, to sustain

2   a claim under the fraudulent prong of the UCL, plaintiffs must plead "with particularity the

3   circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); *see also Hutson v. Am. Home*

4   *Mortg. Servicing, Inc.*, 2009 WL 3353312, at *16 (N.D. Cal. Oct. 16, 2009).

5         Powell focuses on the unlawful prong of the UCL, alleging Wells Fargo engaged in

6   "unlawful foreclosure."  FAC ¶ 52.  However, the only other claim in his FAC is for negligence.

7   And, since Powell's negligence claim fails, his UCL claim must also fail to the extent he relies on

8   it as his predicate claim.  *Newsom v. Countrywide Home Loans, Inc.*, 714 F. Supp. 2d. 1000, 1010

9   (N.D. Cal. 2010) ("Where a plaintiff cannot state a claim under the 'borrowed law', he or she

10  cannot state a UCL claim either"); *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d

11  1177, 1190 (N.D. Cal. 2009) ("In this case, since the Court has dismissed all of Plaintiff's

12  predicate violations, Plaintiff cannot state a claim under the unlawful business practices prong of

13  the UCL."); *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1095 (C.D. Cal. 2015) ("Where the

14  predicate claims on which a plaintiff's UCL claim are based fail, the UCL claim fails as well.")

15  (citing *Khan v. CitiMortgage, Inc.*, 975 F. Supp. 2d 1127, 1146 (E.D. Cal. 2013)); *Bejou v. Bank*

16  *of Am., N.A.*, 2013 WL 1759126, at *5 (E.D. Cal. Apr. 24, 2013)).

17        As part of his UCL claim, Powell also alleges "[t]he Declaration of Compliance to Cal.

18  Civ. Code § 2923.5 by Wells Fargo that was attached to the Notices of Default contained the

19  following false statement: 'Due Diligence to contact the borrower was exercised pursuant to Cal.

20  Civ. Code § 2923.5(g)(2) by the Beneficiary.'"  FAC ¶ 51.  Section 2923.5 requires that before a

21  notice of default is filed, a servicer must contact the borrower in person or by telephone to assess

22  the borrower's financial situation and options to prevent foreclosure.  Cal. Civ. Code § 2923.5;

23  *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 213-14 (2010) ("Civil Code section 2923.5

24  requires, before a notice of default may be filed, that a lender contact the borrower in person or by

25  phone to 'assess' the borrower's financial situation and 'explore' options to prevent foreclosure").

26  However, when a plaintiff pleads a cause of action for violation of section 2923.5, the only

27  remedy available is postponement of the foreclosure sale.  *Mabry*, 185 Cal. App. 4th at 235 ("We

28  would merely note that under the plain language of section 2923.5, read in conjunction with

13

1  section 2924g, the only remedy provided is a postponement of the sale before it happens"). Thus,

2  where a violation of section 2923.5 is the predicate for a claim under the UCL's unlawful prong,

3  the available remedy is an injunction against conducting the foreclosure sale until the lender

4  assesses the borrower's financial status and explores options to avoid foreclosure. *See Rivac v.*

5  *NDEX West LLC*, 2013 WL 3476659, at *9 (N.D. Cal. July 10, 2013) (concluding that "plaintiffs

6  cannot base a UCL claim on a violation of the due diligence requirements of Civil Code § 2923.5,

7  as the remedy for violation of § 2923.5 is limited to postponement of the foreclosure sale");

8  *Robinson v. Bank of America*, 2012 WL 1932842, at *10 (N.D. Cal. May 29, 2012) ("As discussed

9  above, the court finds that plaintiff has stated a claim under both [sections 2923.5 and 2924.] The

10 court therefore denies the motion to dismiss the UCL claim insofar as it seeks injunctive relief.

11 However, because the only remedy available under Sections 2923.5 and 2924 is the postponement

12 of the foreclosure sale, plaintiff's prayer for restitution under the UCL is dismissed").

13 The problem with Powell's invocation of section 2923.5 is that there is no trustee's sale to

14 postpone. Smith Decl. ¶ 29 ("No foreclosure sale took place on the Loan on July 22, 2013 or

15 since then."); FAC ¶ 4 ("At all material times, Plaintiff was, and remains, the owner of the Subject

16 Property."). Consequently, he cannot base a UCL claim on Wells Fargo's purported failure to

17 comply with the statute. *See, e.g., Crane v. Fargo*, 2014 WL 1285177, at *7 (N.D. Cal. Mar. 24,

18 2014) ("Although Plaintiff identifies §§ 2923.4 and 2923.5 as the underlying statutes [that support

19 his UCL claim], this Court finds that since the notice of default has been rescinded and there is no

20 sale pending, Plaintiff's claims that Wells Fargo violated those statutes must be dismissed with

21 prejudice"); *Croshal v. Aurora Bank, F.S.B.*, 2014 WL 2796529, at *7 (N.D. Cal. June 19, 2014)

22 ("because there is no trustee's sale to postpone, Plaintiff's claim is unripe. Accordingly,

23 Plaintiff's third claim for relief is DISMISSED"); *Tamburri v. Suntrust Mortgage, Inc.*, 2013 WL

24 4528447, at *4 (N.D. Cal. Aug 26, 2013) ("Here, no sale has occurred and none is pending

25 because the second notice of default, which gave rise to this action, has been rescinded. Section

26 2923.5 does not provide any relief beyond that which Plaintiff has already obtained.

27 Consequently, Defendants' motions for summary judgment on Plaintiff's first cause of action will

28 be granted and judgment entered in their favor on Plaintiff's section 2923.5 claim"). Accordingly,

14

the Court **GRANTS** Wells Fargo's motion as to Powell's UCL claim.

## VI.   CONCLUSION

Based on the analysis above, the Court hereby **GRANTS** Well's Fargo's motion for summary judgment.  The Court shall enter a separate judgment, after which the Clerk of Court shall terminate this case.

**IT IS SO ORDERED.**

Dated: May 29, 2019

THOMAS S. HIXSON
United States Magistrate Judge